IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ISRAEL VALDEZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SCOTTSBLUFF OPERATIONS LLC, a<br>Nebraska limited liability corporation;<br>WILLIAM PACKARD, M.D., ABDEL KADER<br>LAQUEL KADER, M.D., and COMMUNITY<br>ACTION PARTNERSHIP OF WESTERN<br>NEBRASKA, a Nebraska non-profit<br>corporation,<br><br>                    Defendants.<br>————————————————————<br><br>SCOTTSBLUFF OPERATIONS LLC, a<br>Nebraska limited liability corporation;<br><br>                    Third-Party Plaintiff,<br>        vs.<br><br>MEDICAL CENTER OF THE ROCKIES,<br><br>                    Third-Party Defendant. | **8:22–CV–289**<br><br><br>**MEMORANDUM AND ORDER ON<br>THIRD-PARTY DEFENDANT MEDICAL<br>CENTER OF THE ROCKIES' MOTION<br>TO DISMISS PURSUANT TO FED. R.<br>CIV. P. 12(b)(2)** |

Medical Center of the Rockies (MCR), a third-party defendant, has moved to dismiss the third-party complaint that Scottsbluff Operations, LLC, (Scottsbluff) filed against it in this case. MCR moves for dismissal pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Filing 36; Filing 37. Scottsbluff opposes the Motion. Filing 38.[1] The Court grants MCR's Motion in full.

---

[1] The parties alternatively refer to Scottsbluff Operations, LLC, as both "Scottsbluff" and "Monument." The parties also alternatively refer to Medical Center of the Rockies as both "MCR" and "UCHealth." The Court will refer to Scottsbluff Operations, LLC, as "Scottsbluff" and will refer to Medical Center of the Rockies as "MCR."

# I.  BACKGROUND

## A.  Factual Background

The substantive dispute underlying this case involves medical care that Plaintiff Israel Valdez received at various health care facilities located in both Nebraska and Colorado. *See generally* Filing 38-1. Valdez alleges that in January 2020, he became ill and was seen at Regional West Medical Center (Regional West) in Scotts Bluff County, Nebraska. Filing 38-1 at 2–3 (¶¶9–10).[2] However, after his condition deteriorated, Valdez avers that he "was transferred to [MCR] in Loveland, Colorado, where he was sedated and intubated." Filing 38-1 at 3 (¶11). Valdez claims that after spending several weeks in a medically induced coma, he began to develop "multiple pressure ulcers." Filing 38-1 at 3 (¶¶12–13).

Despite these injuries, Valdez alleges that MCR and Scottsbluff "engaged in discussions regarding plans to transfer [him] to" Scottsbluff—a nursing home located in Scotts Bluff County, Nebraska. Filing 38-1 at 1 (¶(2); Filing 38-1 at 3 (¶14); Filing 13-1 at 1 (¶2); Filing 13-1 at 3 (¶14). Scottsbluff likewise admits "that discussions were had in order for [Valdez] to be transferred to [Scottsbluff] after he had been treated at [MCR]." Filing 13-1 at 3 (¶14). According to both Valdez and Scottsbluff, MCR ultimately "transferred [Valdez] by ground ambulance to [Scottsbluff]" on February 11, 2020. Filing 38-1 at 3 (¶15); Filing 13-1 at 3 (¶15). However, Valdez alleges that after he arrived at Scottsbluff, Scottsbluff staff "knew or should have known that [his] wounds were severe and required a much higher level of care than [Scottsbluff] was capable of providing." Filing 38-1 at 4 (¶20). Valdez further avers that Scottsbluff's staff "should have recognized that [Scottsbluff] lacked the skill and equipment to care for [him], given the severity of his wounds."

---

[2] Regional West has not been named as a defendant in this suit. *See* Filing 38-1 at 1; Filing 19 at 1. Indeed, according to Scottsbluff's third-party complaint, Regional West has not been named as a defendant in any suit filed by Valdez. *See* Filing 19 at 2 (¶6) (alleging that Valdez "did not bring any suit against Regional West").

Filing 38-1 at 4 (¶21). As such, Valdez claims that Scottsbluff "should have refused to accept [him] as a patient and, instead, ordered his immediate and emergent transfer to a capable facility such as Regional West Medical Center." Filing 38-1 at 4 (¶22).

Valdez goes on to allege in his Complaint that rather than being immediately transferred to an appropriate facility, Scottsbluff accepted him as a resident. Filing 38-1 at 4 (¶23). He claims that, as a result, he went on to suffer "severe and uncontrollable pain" that intensified as "his decubitus wounds grew" during the days he spent at Scottsbluff. Filing 38-1 at 5–6 (¶¶24–25, 32). Both Scottsbluff and Valdez agree that on February 16, 2020—five days after Valdez was admitted to Scottsbluff—"his wounds were cultured and determined to be infected with *E coli*." Filing 38-1 at 6 (¶33); Filing 13-1 at 6 (¶33). Valdez alleges that he was then transferred to Regional West Medical Center the following day on February 17, 2020—a total of six days after Scottsbluff accepted him from MCR. *See* Filing 38-1 at 6 (¶34). Valdez claims that by this time he "had a necrotizing infection that was substantially worse than the already-serious decubitus ulcers with which he arrived at [Scottsbluff] on February 11, 2020." Filing 38-1 at 6 (¶35).

## B. Procedural Background

Valdez filed suit against several defendants on February 11, 2022, in Nebraska state court. Filing 38-1 at 1. The case was subsequently removed to this Court. *See* Filing 1 at 3. According to MCR, Valdez separately filed suit against it in Colorado state court. *See* Filing 51 at 7.[3] After Valdez's suit against Scottsbluff was removed to this Court, Scottsbluff filed a third-party complaint against MCR in this Court. *See generally* Filing 19.

---

[3] Scottsbluff likewise acknowledges that Valdez "file[d] a separate suit against [MCR] in Colorado." Filing 19 at 2–3 (¶6). Scottsbluff alleges in its third-party complaint that Valdez's "suit against [MCR] is based on its care and treatment of [Valdez] alleging multiples ways in which [MCR's] negligence caused the injuries and damages to [Valdez] prior to [Valdez's] transfer to Scottsbluff." Filing 19 at 2–3 (¶6).

Scottsbluff alleges in its third-party complaint that "[j]urisdiction and venue are proper in this Court as the issues in controversy in this case arise out of a chain of alleged injuries to [Valdez] that allegedly involve tortious conduct arising from . . . care and treatment in both Nebraska and Colorado." Filing 19 at 2 (¶3). As Scottsbluff further notes in its third-party complaint,

> Valdez alleges that he was originally under the care and treatment of [Regional West], was subsequently transferred for further care and treatment to the State of Colorado at [MCR] where he developed injuries, was subsequently transferred to Scottsbluff [in Nebraska], and then transferred again for further care to Regional West also located in . . . Nebraska.

Filing 19 at 2 (¶4).

Scottsbluff alleges a single count of "contribution" against MCR in its third-party complaint. Filing 19 at 4–5 (¶¶13–17). Consistent with this claim, Scottsbluff maintains that it is not "liable to [Valdez] in any amount, but if [Scottsbluff] is found liable to [Valdez] for damages as a result of the incident, then a judgment should also be entered against Third-Party Defendant [MCR] jointly and severally in an amount to be determined by" Nebraska law. Filing 19 at 4–5 (¶17). Scottsbluff further contends that in such an event, MCR should also "be responsible for its proportionate share of any liability as allowable under Nebraska law." Filing 19 at 5 (¶17).

MCR's present motion asserting a lack of personal jurisdiction followed thereafter. Filing 36; Filing 37; Filing 38. MCR argues that this Court has neither general nor specific personal jurisdiction over MCR. *See generally* Filing 37, Filing 51. MCR supports its Motion by citing Valdez's Complaint, an affidavit completed by MCR's Chief Operating Officer, and information available on the Colorado Secretary of State's website. *See generally* Filing 38-1; Filing 38-2; Filing 52-1. Scottsbluff opposes the Motion, contends that this Court has both general and specific personal jurisdiction over MCR, and cites two different online press releases to support its argument. *See generally* Filing 45; Filing 45-1; Filing 45-2. The Court now considers the matter.

4

## II.  LEGAL ANALYSIS

### A.  Rule 12(b)(2) Standards

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (internal quotation marks and alteration omitted). A plaintiff bears "the burden of establishing a prima facie showing of jurisdiction, and [courts] view the evidence in the light most favorable to the plaintiff[ ]." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (internal quotation marks omitted). However, this "prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (internal quotation marks omitted). "The evidentiary showing required at the prima facie stage is minimal." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 951.

"Federal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 474, 142 S. Ct. 758 (2022) (internal quotation marks omitted). Nebraska's "long-arm statute," Neb. Rev. Stat. § 25–536, permits jurisdiction to the maximum extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Hand Cut Steaks Acquisitions, Inc. v. Lone Star Steakhouse & Saloon of Nebraska, Inc.,* 723, 905 N.W.2d 644, 661 (Neb. 2018); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, "the traditional due process analysis is dispositive[.]" *Kaliannan*, 2 F.4th at 733. "The relevant conduct and connections for the due process analysis depend on whether personal

jurisdiction is alleged to be general or specific." *Bros & Sisters in Christ, LLC*, 42 F.4th at 951–52 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).

### B. Scottsbluff's Assertion of General Jurisdiction

*1. The Parties' Arguments*

Scottsbluff argues that "MCR has the requisite minimum contacts needed for this Court to exercise general jurisdiction over it." Filing 45 at 4. Specifically, it notes that "UCHealth and Regional West launched MCR as a joint venture with the intention of purposefully directing MCR's medical services to residents in Scottsbluff, Nebraska." Filing 45 at 5. Accordingly, Scottsbluff asserts that "MCR's contacts with Nebraska are so 'continuous and systematic as to render [it] essentially at home' in Nebraska." Filing 45 at 5 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

MCR disagrees. It argues that finding general jurisdiction here "would violate the due process clause because the complaint is devoid of any allegation that MCR had any, let alone sufficient[,] minimum contacts with Nebraska such that it could reasonably anticipate being hailed [sic] into a Nebraska court." Filing 37 at 10. Relying on an affidavit completed by its Chief Operating Officer, MCR emphasizes that it (a) is incorporated under Colorado law; (b) maintains its principal place of business in Colorado; (c) has never been organized under Nebraska law; (d) is not registered under Nebraska law; (e) does not have a registered agent for service of process in Nebraska; (f) does not hold a license to operate as a hospital in Nebraska; (g) does not maintain an office, warehouse, or other physical structure in Nebraska; (h) does not maintain any banking, savings, or investment accounts in Nebraska; (i) does not generate any revenue in Nebraska; (j) does not have an ownership interest in any medical facility or any other business based in Nebraska; (k) has no employees, officers, or directors in Nebraska; and (l) does not pay any taxes to Nebraska. Filing 37 at 10 (citing Filing 38-2 at 2).

6

2.   *General Jurisdiction Standards*

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original). However, "[a] state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co.*, 141 S. Ct. at 1024. "Only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." *Id.* (internal quotation marks omitted). The "paradigm" case where an individual will be deemed subject to general jurisdiction is in their domicile. *Id.* "And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." *Id.* The Supreme Court has expressly rejected the notion that general jurisdiction may be exercised "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" because that formulation would be "unacceptably grasping." *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).

Accordingly, the exercise of general jurisdiction over a corporate defendant is not necessarily restricted to forums where it is incorporated or conducts its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Yet, it does remain limited to forums where the corporate defendant has "affiliations with the [forum] State [that] are so continuous and systematic 'as to render [the defendant] essentially at home in the forum State.'" *See Creative Calling Sols., Inc. v. LF Beauty Ltd.,* 799 F.3d 975, 979 (8th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 122). The Supreme Court has described such a situation where general jurisdiction would apply to a corporate defendant outside of its state of incorporation or principal place of business as presenting an "exceptional case." *See Daimler AG*, 571 U.S. at 139 n.19.

The Supreme Court has further suggested that its decision in *Perkins v. Beneguet Consol. Mining Co.*, 342 U.S. 437 (1952) "exemplifie[s] such a case." *BNSF Ry. Co.*, 581 U.S. at 413

7

(citing *Daimler AG*, 571 U.S. at 139 n.19). "In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio. Because Ohio then became 'the center of the corporation's wartime activities,' suit was proper there[.]" *BNSF Ry. Co.*, 581 U.S. at 413 (internal citations omitted). This was because, "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 571 U.S. at 134 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 780 n.11 (1984)).

   *3.   Discussion*

   Scottsbluff cannot establish the "paradigm" case of general jurisdiction because MCR's principal place of business and state of incorporation are Colorado—not Nebraska. *See* Filing 38-2 at 2 (¶2); Filing 52-1 at 1; *Ford Motor Co.*, 141 S. Ct. at 1024. The unrebutted evidence in this case plainly establishes that "MCR has never been organized under the laws of the State of Nebraska nor had its principal place of business in the State of Nebraska." Filing 38-2 (¶3). Scottsbluff likewise acknowledges in its third-party complaint that MCR "is a non-profit entity formed and authorized to do business in Loveland, Larimer County, Colorado." Filing 19 at 2 (¶2). Although the Supreme Court has left open "the possibility that in an exceptional case a corporation's operations in a forum other than its formal place of incorporation of principal place of business may be so substantial and of such a nature as to render the corporation at home in that State[,]" this case "presents no occasion to explore that question, because [MCR's] activities in [Nebraska] plainly do not approach that level." *See Daimler AG*, 571 U.S. at 139 n.19.

   While Scottsbluff argues that MCR is "essentially home in Nebraska" based on its relationship with Regional West and its intent to attract patients from Nebraska, this is far from the "exceptional case" that would permit the Court to exercise general jurisdiction over a company that is neither incorporated in nor has its principal place of business in the forum State. *See Daimler AG*, 571 U.S. at 139 n.19. Unlike *Perkins*, there is no evidence—much less any averment—that

MCR ever temporarily relocated to Nebraska. *See BNSF Ry. Co.*, 581 U.S. at 413. Moreover, it is difficult to see how MCR could possibly be subject to general jurisdiction in Nebraska when the circumstances here differ so substantially from those in *Ford Motor Co.* There, the Supreme Court observed that "all parties agree[d]" that Ford was not subject to general jurisdiction in Montana or Minnesota even though Ford admitted to conducting "substantial business" in those States. *See Ford Motor Co.*, 141 S. Ct. at 1024, 1026. Indeed, the record in that case showed that Ford operated "36 dealerships in Montana and 84 in Minnesota." *Id.* at 1028. In contrast, MCR flatly denies holding a license to operate a hospital in Nebraska, maintaining an office, warehouse, or other physical structure in Nebraska, generating any revenue in Nebraska, and having any employees in Nebraska. Filing 37 at 10 (citing Filing 38-2 at 2). Given this significant lack of connection between MCR and Nebraska, MCR is not "essentially at home" in Nebraska. Even when viewing the facts in the light most favorable to Scottsbluff, it has failed to meet its burden to establish a prima facie showing of general jurisdiction. *See Whaley*, 946 F.3d at 451.

### C. Scottsbluff's Assertion of Specific Jurisdiction

#### 1. The Parties' Arguments

Irrespective of general jurisdiction, Scottsbluff maintains that this Court has specific jurisdiction over MCR "because MCR has purposefully availed itself of the privilege of conducting activities in Nebraska and has invoked the benefits and protections of its laws." Filing 45 at 5 (citing *Burger King Corp.*, 471 U.S. at 475). Scottsbluff asserts that "MCR was founded with the intention of serving residents in Nebraska by providing advanced medical care that they could not receive at Regional West." Filing 45 at 5. Therefore, in Scottsbluff's view, "MCR's contacts with Nebraska are intentional and not random, fortuitous, attenuated, or the result of the action of [a] third party." Filing 45 at 5 (citing *Burger King Corp.*, 471 U.S. at 475).

9

MCR argues that this Court lacks specific jurisdiction over it because "MCR's treatment of Mr. Valdez was 'localized and confined' to the state of Colorado." Filing 37 at 8. MCR notes that Valdez was the one who traveled to Loveland, Colorado to receive treatment; MCR did not travel outside of Colorado to treat Valdez. Filing 37 at 8. MCR also avers that it did not provide any treatment to Valdez "in Nebraska or anywhere else outside of Colorado." Filing 37 at 8. MCR therefore posits that "[b]ecause the treatment and care was provided by MCR in Loveland, Colorado, not in Nebraska, and because MCR did not purposefully avail itself of the privilege of conducting business in Nebraska, this litigation does not 'arise out of' any alleged contacts with Nebraska[.]" Filing 37 at 9.

### 2. Specific Jurisdiction Standards

"Specific jurisdiction is very different" from general jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1780. "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up) (emphasis in original). Put differently, specific jurisdiction requires there to "be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* at 1781 (quoting *Goodyear*, 564 U.S. at 919) (alteration omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. Thus, "[s]pecific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024.

"The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is, a defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (cleaned up). Moreover,

10

these "contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* at 1025 (internal quotation marks omitted). These contacts "must show that the defendant deliberately 'reached out beyond' its home—by for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (internal quotation marks and alteration omitted). "The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.*

"In determining whether specific jurisdiction exists, [the Eighth Circuit] consider[s] the totality of the circumstances using five factors to guide [the] analysis." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (internal quotation omitted). These five factors are: "(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.* (alteration in original) (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has further explained that the first three of these factors are of "primary importance" while the "fourth and fifth factors carry less weight." *Id.* (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has also noted that "[t]he third factor speaks to the particular question of specific jurisdiction." *Whaley*, 946 F.3d at 452.[4]

---

[4] The Eighth Circuit's five-factor standard predates a significant number of Supreme Court decisions dealing with personal jurisdiction. *See Electro-Craft Corp. v. Maxwell Elecs. Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) (observing that the Eighth Circuit previously outlined these five factors to be used in assessing personal jurisdiction in *Aftanse v. Economy Baler Company*, 343 F.2d 187 (1965)). Although this five-factor test originated before the Supreme Court more clearly distinguished general jurisdiction from specific jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984), the Eighth Circuit has continued to apply this same five-factor test in assessing specific jurisdiction as recently as 2022. *See Bros. & Sisters in Christ, LLC*, 42 F.4th at 952.

3. *Discussion*

    a.  The First Factor Weighs Against Jurisdiction

Viewing the facts in the light most favorable to Scottsbluff, the first factor—the nature and quality of the contacts between MCR and Nebraska, *see id.*—weighs against finding personal jurisdiction. In its brief, Scottsbluff relies very heavily on MCR's relationship with Regional West to support its specific jurisdiction argument. *See* Filing 45 at 5–6; Filing 45-1 at 1; Filing 45-2 at 1–2. However, these contacts between MCR and Regional West do little to support this contention because "a defendant's relationship with . . . a third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1781 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). It is appropriate to characterize Regional West as a "third party" in this affair. Regional West is not a party to this case. Indeed, there is no evidence before the Court indicating that Regional West is a party to any suit involving Valdez before any court. Even if MCR has extensive contacts with Regional West—as Scottsbluff contends—the existence of this third-party relationship is not by itself enough to establish specific jurisdiction over MCR in Nebraska in this particular case. *Bristol-Myers*, 137 S. Ct. at 1781.

    Moreover, unlike a case in which a defendant attempts to serve a particular market in the forum state by selling products there, MCR—a hospital—does not operate "in" Nebraska. *See* Filing 38-2 at 2 (MCR's Chief Operating Officer averring that "MCR does not hold a license to operate as a hospital in the State of Nebraska"). Even if MCR was intentionally targeting Nebraska residents through its relationship with Regional West, the very nature of its business model only permitted it to target the Nebraska market to the extent that Nebraska residents travelled across state lines to receive its services. "Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath,* Inc., 760 F.3d at 821 (internal

quotation marks omitted). MCR may have generally intended to serve patients residing in Nebraska, but there is no evidence that it "invok[ed] the benefits and protections of" Nebraska law by "conducting activities within" Nebraska. *Id.; see also Glover v. Wagner*, 462 F. Supp. 308, 311 (D. Neb. 1978) ("Most significantly, this case does not involve a product; it involves the rendering of personal services by a physician and a hospital. Neither defendant sought the benefits or protection of the laws of the State of Nebraska").[5] The nature and quality of MCR's contacts with the forum state are tempered by the fact that MCR does not serve Nebraska residents in Nebraska, but only serves Nebraska residents to the extent they cross state lines to where MCR is legally licensed to operate—Colorado. Thus, the first factor militates against finding jurisdiction.[6]

### b. The Second Factor Weighs Against Jurisdiction

Viewing the facts in the light most favorable to Scottsbluff, the second factor—the quantity of such contacts, *see Bros. & Sisters in Christ, LLC*, 42 F.4th at 952—weighs against finding jurisdiction. Apart from Valdez's transport via ambulance from MCR in Colorado to Scottsbluff in Nebraska on February 11, 2020 (and any pre-transport discussions that were had between these entities regarding the transport), there is no other connection between MCR's contacts with

---

[5] Both parties devote a fair portion of their respective briefs to the *Glover* decision. *See* Filing 37 at 7 (MCR's Opening Brief describing *Glover* as "the seminal case in this jurisdiction related to personal jurisdiction over an out-of-state health care providers such as MCR"); Filing 45 at 5 (Scottsbluff arguing in its Answer Brief that "[c]ontrary to MCR's assertions, the facts in this matter are completely dissimilar to the facts in" *Glover*); Filing 51 at 4 (MCR again addressing *Glover* in its Reply Brief). Although neither recent nor binding, the court in *Glover* applied the same five-factor test for assessing personal jurisdiction that the Eighth Circuit uses today. *See Glover*, 462 F. Supp. at 310 (citing the Eighth Circuit's test for assessing personal jurisdiction as articulated in *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir. 1969)).

[6] The Court recognizes that MCR's relationship with Regional West is not the only basis for Scottsbluff's specific jurisdiction argument, however. *See* Filing 45 at 6–7 (Scottsbluff positing that "[t]he chain of [Valdez's] alleged injuries clearly tie MCR's acts and omissions to Nebraska, and therefore MCR should be subject to this Court's jurisdiction"). Scottsbluff alleges in its third-party complaint that, "the issues in this case . . . involve [allegedly] tortious conduct arising from care and treatment in both Nebraska and Colorado." Filing 19 at 2 (¶3). This suit-specific argument relates to the third factor of the analysis—*i.e.*, "the relation of the cause of action to the contacts[.]" *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952. The Court will consider these contacts between MCR and Nebraska in relation to Scottsbluff's particular claim for contribution during the course of its analysis on the third factor.

Nebraska and the underlying contribution claim brought by Scottsbluff. *See id.* at 953 ("Aside from the single t-shirt sale, [the plaintiff] fails to allege a connection between [the defendant's] contacts with [the forum state] and the underlying suit"). The Court acknowledges that Valdez was initially hospitalized at Regional West and was later transferred from Regional West to MCR, but those facts have no relation to the contribution claim that Scottsbluff has brought in its capacity as a third-party plaintiff. The Court's concern, for present purposes, is limited to Scottsbluff's contribution claim. *See Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) ("Personal jurisdiction must be determined on a claim-by-claim basis").

Aside from MCR's relationship with Regional West—which, again, is unrelated to the contribution claim presently at issue—Scottsbluff can only point to "a single suit-related contact with [Nebraska]." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 953. The only contact with Nebraska relevant to Scottsbluff's contribution claim is MCR's transportation of Valdez to Scottsbluff. MCR transported Valdez to Scottsbluff on a single occasion. Valdez was not routinely driven back and forth between Nebraska and Colorado in order to facilitate continued treatment at MCR. Nor is there any evidence that Valdez ever returned to MCR in Colorado after he was transported to Scottsbluff in Nebraska. This one-time transport across state lines thus reflects an isolated suit-related contact between MCR and Nebraska. The second factor, therefore, does not support the exercise of specific jurisdiction.

c.   The Third Factor Weighs Against Jurisdiction

Viewing the facts in the light most favorable to Scottsbluff, the third factor also weighs against finding personal jurisdiction. This factor considers "the relation of the cause of action to the contacts[.]" *Id.* at 952. While the five factors are considered in their totality, this third factor is arguably the most significant to the specific jurisdiction analysis because in order for Scottsbluff to meet its burden of establishing specific jurisdiction, its "*suit* must arise out of or relate to

[MCR's] contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up) (emphasis in original); *see also Whaley*, 946 F.3d at 452 (noting that "[t]he third factor speaks to the particular question of specific jurisdiction").

Much like the plaintiffs in *Bros. & Sisters in Christ, LLC*, Scottsbluff is asking this Court "to consider *all* of [MCR's] contacts with [Nebraska], even those unrelated to the instant [contribution] claim." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (emphasis in original). This is too broad because, "in assessing specific jurisdiction, [courts] look only to [the defendant's] contacts with [the forum state] related to the [plaintiff's] claims." *Id.* As the Supreme Court has explained in a related context, "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 931, n.6. Thus, in the absence of an affiliation between the forum and the underlying controversy, "'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (quoting *Bristol-Myers*, 137 S. Ct. at 1780–81); *see also Ford Motor Co.*, 141 S. Ct. at 1031 ("We found jurisdiction improper in *Bristol-Myers* because the forum State, and the defendants activities there, lacked any connection to the plaintiff's claims"). The Court will now consider the precise claim that Scottsbluff has brought in assessing this factor.

Scottsbluff alleges in its third-party Complaint that MCR "owed [Valdez] a duty to act with a degree of care, skill and knowledge ordinarily possessed by medical providers in similar communities." Filing 19 at 4 (¶14). Scottsbluff goes on to aver that MCR breached this duty through the following acts or omissions:

    a.  Failing to properly prevent and treat [Valdez's] allegedly severe decubitus ulcers;

    b.  Failing to test [Valdez's] decubitus ulcers for infection;

    c.   Failing to contact a wound specialist to evaluate [Valdez's] decubitus ulcers;

    d.   Failing to disclose the severity of [Valdez's] decubitus ulcers to Scottsbluff before transfer;

    e.   Failing to provide the history or relevant information regarding [Valdez's] decubitus ulcers to Scottsbluff before transfer.

Filing 19 at 4 (¶15).

These five breaches that Scottsbluff alleges in its third-party complaint are significant to the analysis because they each cite conduct that would have occurred in Colorado—not Nebraska. The first three breaches reference acts or omissions that allegedly would have or should have occurred at MCR and, thus, Colorado. Filing 19 at 4 (¶15(a)–(c)). The last two breaches do the same given that Scottsbluff specifically alleged that these negligent omissions occurred "before transfer." Filing 19 at 4 (¶15(d)–(e)); *see also* Filing 45 at 6 (Scottsbluff noting that Valdez claims "MCR committed a tortious omission by failing to treat [him] for his decubitus ulcers before transferring him back to Nebraska for treatment").

Thus, Scottsbluff's own pleading exclusively references acts or omissions that MCR allegedly committed in Colorado—not Nebraska. This necessarily precludes Scottsbluff from showing that its contribution claim "arises out of" MCR's contacts with Nebraska given that the Supreme Court has recently equated "arise out of" with "causation." *See Ford Motor Co*., 141 S. Ct. at 1026. Put differently, the allegations in Scottsbluff's third-party complaint preclude it from establishing that the contribution claim "arises out of" conduct in Nebraska because that would require it to show that the "claim came about because of" MCR's conduct in Nebraska. *See id.* Scottsbluff's pleading alleges acts and omissions by MCR that occurred or should have occurred in Colorado before Valdez was transferred to Nebraska. *See* Filing 19 at 4 (¶15).

To be sure, the Supreme Court has "never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 141 S. Ct. at 1026. In *Ford Motor Co.*—the most recent Supreme Court case to substantively address personal jurisdiction—a five-justice majority agreed that the phrase "arise out of or relate to the defendant's contacts with the forum" encompasses more than just causation. *See id.* As the *Ford Motor Co.* majority explained, "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* Thus, the only remaining question here is whether Scottsbluff's contribution claim falls within the category of cases where the claim does not "arise out of" the forum state, but nevertheless still "relates to" it.[7]

The Supreme Court's decision in *Ford Motor Co.* does not provide a specific rule, test, or factors that are to be considered in answering this question—but it did admonish that this "does not mean anything goes" and further stated that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.*[8] However, given the Supreme Court found that the plaintiffs' claims in *Ford Motor Co.* did not "arise out of" the defendant's contacts with the forum states but still "related to" them such that there was specific jurisdiction, the reasoning of the *Ford Motor Co.* decision is instructive. There, the Supreme Court observed

---

[7] Although a unanimous, eight-justice Court concluded that the state courts had specific jurisdiction in *Ford Motor Co.*, Justice Alito authored a concurrence in which he noted that the majority was "unwise" to recognize "a new category of cases in which personal jurisdiction is permitted: those in which the claims do not 'arise out of' (*i.e.*, are not caused by) the defendant's contacts but nevertheless sufficiently 'relate to' those contacts in some undefined way[.]" *Ford Motor Co.*, 141 S. Ct. at 1033 (Alito, J., concurring in the judgment). Justice Gorsuch authored a separate concurrence (that was joined by Justice Thomas) in which he expressed similar sentiments. *See Ford Motor Co.*, 141 S. Ct. at 1036 (Gorsuch, J., concurring in the judgment) (contending that the majority's decision to parse "arise out of or relate to" into two different clauses meaning two different things will create uncertainty and add "new layers of confusion to our personal jurisdiction jurisprudence").

[8] The Eighth Circuit cases that have cited *Ford Motor Co.* since it was decided have not specifically elaborated on this distinction either. *See Kaliannan v. Liang*, 2 F.4th 727, 734 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 758 (2022); *Vallone*, 9 F.4th at 865; *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952.

that the defendant had "a veritable truckload of contacts with" the forum states; "[t]he only issue [was] whether those contacts related enough to the plaintiff's suits." *Id.* at 1031. In finding that they did, the Court noted that the "resident-plaintiffs alleg[ed] that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in" the forum states. *Id.* at 1032. By contrast, MCR's claim-specific contacts with Nebraska are far more limited and only involve transporting Valdez back to Nebraska after MCR had completed its services to him in Colorado. Unlike the situation in *Ford Motor Co.*, where the plaintiffs suffered injury in the forum states based on the very types of products that the defendant sold in the forum states, any injury that Scottsbluff might suffer due to the alleged contributory negligence of MCR would be based on negligent services that MCR neither offered in the forum State nor performed in the forum State. This case is materially different from that presented in *Ford Motor Co.* Accordingly, the Court does not find that Scottsbluff's contribution claim "relates to" MCR's contacts with Nebraska. For the foregoing reasons, the third factor does not support exercising specific jurisdiction.

### d.  The Fourth and Fifth Factors

Although the "fourth and fifth factors carry less weight" in the analysis, *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952, the Court notes that when viewing the facts in the light most favorable to Scottsbluff, the fourth factor supports the exercise of jurisdiction while the fifth factor does not. The fourth factor—the interest of the forum state in providing a forum for its residents, *see id.*, supports the exercise of jurisdiction given Scottsbluff's averment that it is "a Nebraska limited liability company organized and existing in . . . Scotts Bluff County, Nebraska." Filing 19 at 2 (¶1). *See Wells Dairy, Inc. v. Food Movers Int'l.*, 607 F.3d 515, 520 (8th Cir. 2010); *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595 (8th Cir. 2011) ("Missouri obviously has an

interest in providing a forum for resident corporations"). Thus, the fourth factor favors Scottsbluff's position.

The fifth factor—the convenience of the parties, *see Bros. & Sisters in Christ, LLC*, 42 F.4th at 952—does not favor the exercise of jurisdiction. MCR avers in its Opening Brief that it has "been sued by [Valdez] in Colorado[.]" Filing 37 at 3. Scottsbluff acknowledges this concurrent litigation against MCR in its third-party complaint. Filing 19 at 2 (¶6). MCR argues that the relevant witnesses to its treatment of Valdez "are all in Colorado." Filing 37 at 12. MCR further argues that if Scottsbluff's action against it were permitted to proceed in this Court, MCR would be "unduly burdened and would be forced to defend parallel lawsuits arising out of the same set of facts and circumstances in two jurisdictions, thus doubling the expenses and creating the risk of inconsistent verdicts." Filing 37 at 12. Although Scottsbluff generally posits that "it would be perfectly reasonable and just to subject MCR to personal jurisdiction in Nebraska" it does not directly address MCR's specific, convenience-related arguments. While this factor is not particularly weighty, it still suggests a lack of jurisdiction—even if only marginally so.

> e.   Considered in Their Totality, the Factors Do Not Support
>       Finding Personal Jurisdiction

The foregoing demonstrates that each of the three weightier factors militate against finding specific jurisdiction. Only the fourth factor—the interest of the forum state—supports finding jurisdiction. Viewing the facts in the light most favorable to Scottsbluff and considering these five factors together with the appropriate weight they are respectively entitled to, Scottsbluff has not met its burden of showing a prima facie case of personal jurisdiction. *Whaley*, 946 F.3d at 451.

### D.  Scottsbluff's Alternative Request to Conduct Tailored
### Discovery on Personal Jurisdiction

Scottsbluff takes the alternative position that "should this Court need additional information to assess the full nature and extent of MCR's contacts with Nebraska, [it] requests that

this Court allow personal jurisdiction discovery to be obtained and evaluated." Filing 45 at 8. Notably, Scottsbluff does not suggest that discovery will reveal any evidence relating to specific jurisdiction; it states "discovery is appropriate in lieu of dismissal in order to establish *general* personal jurisdiction." Filing 45 at 8 (emphasis added). For that matter, Scottsbluff never explains what exactly it hopes to uncover in discovery other than generally asserting it "will provide additional information for the Court to evaluate the merits of the motion to dismiss." Filing 45 at 8. While Scottsbluff argues that it "needs the opportunity to fully investigate personal jurisdiction[,]" Filing 45 at 9, it offers nothing in terms of what it believes investigation will likely accomplish.

The Eighth Circuit determined that the district court did not abuse its discretion in denying personal jurisdiction discovery in *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011). In doing so, the Eighth Circuit agreed with the district court's assessment that this was "not a case in which certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed." *Id.* (citation omitted). The same is true in this case, especially with regard to Scottsbluff's assertion of general jurisdiction. The fact that MCR is incorporated in Colorado and maintains its principal place of business there is not in dispute. Nor does Scottsbluff directly contest (or even address) any of the other averments that MCR's Chief Operating Officer has made in his affidavit. *See* Filing 38-2 at 1–2; Filing 45 at 1–9. In sum, Scottsbluff has not proffered anything in particular that it hopes to obtain in discovery—let alone anything that would place this matter within the "exceptional" class of cases where general jurisdiction may be exercised over a corporate defendant outside of its State of incorporation or principal place of business. *BNSF Ry. Co*, 581 U.S. at 413. Therefore, the Court will deny Scottsbluff's alternative request to permit discovery related to personal jurisdiction. *See Dever v.*

*Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery") (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir.2003)).[9]

### III.   CONCLUSION

Scottsbluff has failed to meet its burden to establish a prima facie case of personal jurisdiction and has likewise failed to point to any sufficient reason why this Court should allow for discovery on this matter before dismissing its third-party complaint. MCR did not specify in its Motion whether it was seeking dismissal with or without prejudice. *See* Filing 36. However, dismissal without prejudice is appropriate here because Scottsbluff may be able to bring its contribution claim against MCR in a court that does have personal jurisdiction over MCR.

Accordingly,

IT IS ORDERED that MCR's Motion to Dismiss Scottsbluff's Third-Party Complaint, Filing 36, is granted. Scottsbluff's contribution claim against MCR, as alleged in Filing 19, is dismissed without prejudice.

Dated this 24th day of February, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge

---

[9] Even if the Court were to construe Scottsbluff's discovery request to be seeking information relevant to specific jurisdiction as well—despite the exclusive reference to general jurisdiction in its brief—Scottsbluff has still not offered anything on the issue of specific jurisdiction that it believes will be obtained through the course of discovery.