IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ISRAEL VALDEZ,<br><br>              Plaintiff,<br><br>    vs.<br><br>SCOTTSBLUFF OPERATIONS LLC, a<br>Nebraska limited liability corporation; ABDEL<br>KADER LAQUEL KADER, M.D., and the<br>UNITED STATES OF AMERICA,<br><br>              Defendants. | **8:22–CV–289**<br><br>**MEMORANDUM AND ORDER ON<br>MOTION FOR SUMMARY JUDGMENT<br>BY THE UNITED STATES** |

Plaintiff Israel Valdez filed a lawsuit in Nebraska state court alleging medical negligence after he developed a decubitus ulcer while in the hospital. Filing 1. The Complaint sought damages for medical expenses, pain and suffering, disfigurement, and lost income and earning capacity. Filing 1 at 23–24 (¶¶ 36–43), 25 (¶ 45). The United States substituted itself for two of the originally named defendants, Filing 4; Filing 72, and removed the action to this Court, Filing 1. Presently before the Court is a Motion for Summary Judgment by defendant United States on all Valdez's claims against it. Filing 136. The United States contends that the two-year statute of limitations for claims pursuant to the Federal Tort Claims Act (FTCA) applies and bars Valdez's suit against the United States. Filing 142 at 1. The U.S. Department of Health and Human Services (DHHS) similarly concluded in an administrative proceeding that Valdez's claims against the United States are untimely. Filing 157-16. Valdez contends that his claim accrued within the two-year statute of limitations period, Filing 156 at 4, or alternatively, that his claim was tolled and is thus timely.

Filing 156 at 6. Because the United States is correct that the statute of limitations bars Valdez's suit, the Court grants the United States's Motion for Summary Judgment.

## I.   BACKGROUND

### A.   Factual Background

Valdez and the United States have submitted Statements of Facts related to the Motion for Summary Judgment by the United States. Filing 141; Filing 154; Filing 155; Filing 160. The facts are drawn from these statements, as well as Valdez's administrative claim. Filing 157-8. Unless otherwise indicated, the facts set out here are undisputed. Valdez sued defendants "Scottsbluff Operations LLC d/b/a Monument Rehabilitation & Care Center (Monument), [Dr. Kader], Dr. William Packard (Dr. Packard), and Community Action Partnership of Western Nebraska (CAPWN) in Scotts Bluff County, Nebraska on February 11, 2022." Filing 141 at 1 (¶ 1). The Court will limit its discussion to material facts "that might affect the outcome of the suit under the governing law." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (internal quotations and citations omitted). Only facts related to the dispositive issue for summary judgment—the timeliness of Valdez's claim against the United States—are included.

Because the United States only substituted for Dr. Packard and CAPWN, Filing 72, only the facts concerning Dr. Packard and CAPWN are relevant to the Motion for Summary Judgment. "CAPWN is a non-profit community based [Federally Qualified Health Center (FQHC)] located in Scottsbluff, Nebraska." Filing 141 at 1 (¶ 3). At the time of the alleged negligence, Dr. Packard was employed by CAPWN. Filing 141 at 2 (¶ 8). There is no dispute that both Dr. Packard and CAPWN were "deemed" to be employees of the United States for purposes of the Federally Supported Health Centers Assistance Act (FSHCAA): CAPWN is a FQHC, and Dr. Packard is a

qualified staff member for purposes of the FSHCAA.[1] Filing 141 at 1–2 (¶¶ 3–4, 9). Because Dr.

Packard and CAPWN are "deemed" federal employees, only the United States can be liable for

their alleged negligence under the FTCA. 28 U.S.C. § 2679. The FTCA has a two-year statute of

limitations. 28 U.S.C. § 2401(b)). The alleged negligence of Dr. Packard and CAPWN all occurred

between February 11 and February 17, 2020, Filing 157-8 at 2, yet Valdez did not file an

administrative claim under the FTCA until March 16, 2022. Filing 157-8.[2]

1.  *The Alleged Medical Negligence*

On February 11, 2020, Valdez was transferred from UC Health-Medical Center of the

Rockies (MCR) to Monument, a nursing home in Scottsbluff, Nebraska.[3] Filing 155 at 1 (¶ 1);

Filing 141 at 1 (¶ 3). CAPWN and Dr. Packard provide medical services at Monument. Filing 1

at 9 (¶¶ 5, 8) (providing that Dr. Packard "provided medical evaluation and treatment for residents

of MONUMENT" and was "employed by CAPWN"). When Valdez was transferred from MCR

to Monument, he already had a decubitus ulcer. Filing 157-8 at 2. The basis for Valdez's claims

against the United States is that Valdez's ulcer worsened while in Dr. Packard's and CAPWN's

care due to their failure to timely transfer him to a hospital for treatment. *See* Filing 157-8 at 2

(alleging that Dr. Packard "failed to timely transfer [Valdez] to a hospital for 6 days while the

ulcers progressed"). Late at night on February 16, 2020, Dr. Packard ordered Valdez's transfer to

the local hospital, Regional West Medical Center, where Valdez was hospitalized until March

---

[1] The FSHCAA authorizes the Secretary of DHHS to "deem" a qualified health center and its employees "to be an employee of the Public Health Service" for liability purposes. 42 U.S.C. § 233(g)(1)(A).

[2] FTCA claims are "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b). Presentment to an agency is a prerequisite to filing suit. 28 U.S.C. § 2675(a). Thus, the material date is not when Valdez initially filed suit on February 11, 2022, but when Valdez filed an administrative claim on March 16, 2022.

[3] MCR was named a third-party defendant by Monument, but the Court granted MCR's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Filing 54.

2020. Filing 155 at 6 (¶ 39–40, 43). After Valdez was released from the hospital, Dr. Packard and

CAPWN continued to care for him, Filing 155 at 6 (¶ 43), but Valdez never alleged that any of the

subsequent care he received from Dr. Packard or CAPWN was negligent. Filing 157-8 at 2.

    *2.  Dr. Packard's and CAPWN's Statuses as Federal Employees*

    The parties dispute whether Valdez knew or should have known that Dr. Packard and

CAPWN were deemed to be federal employees under the FSHCAA. As discussed below, whether

Valdez knew or should have known the federal employee statuses of Dr. Packard and CAPWN is

material to determining the date on which Valdez's claim accrued. Valdez avers that he did not

know that CAPWN was a Federally Qualified Health Center until the United States substituted

itself for CAPWN and Dr. Packard. Filing 154 at 9–10 (¶ 21–22). However, Valdez failed to

respond to several statements of fact by the United States related to CAPWN's status as a Federally

Qualified Health Center. Filing 141 at 5–6 (¶¶ 23–29); *see also* Filing 154 (only addressing the

United States's first 22 statements of fact). Valdez's failure to respond "precludes [him] from

contesting the [pertinent parts of the] statement of facts." NECivR 7.1(b)(1)(C). Thus, Valdez does

not dispute the following statements:

> 23. CAPWN's website indicates on its homepage that "Community Action Health
> Center is a Federally Qualified Health Center . . . ." https://capwn.org/ (last visited
> February 5, 2024).
>
> 24. Additionally, at least as of May 25, 2020 and October 17, 2020, CAPWN's
> website indicated that "Community Action Partnership of Western Nebraska is a
> Federally Qualified Center…[and] receives funding from Health and Human
> Services and has Federal Public Health Services 'Deemed Status' with respect to
> certain health or health-related claims, including medical malpractice claims, for
> itself and its covered individuals."[4]

---

[4] The United States asks "the Court to take judicial notice of WayBack Machine pursuant to Fed. R. Evid. 201."
Filing 141 at 5 (¶ 24 n.2). The United States explains, "The 'Wayback Machine' is a tool on the Archive.org website
that archives web pages to allow users to historically view those websites at different points in time." Filing 141 at 5

25. The Health Resources and Services Administration (HRSA) / Bureau of Primary Health Care (BPHC) has maintained a Health Center Program website since 1999 (http://bphc.hrsa.gov). Since at least 2002, this website has incorporated linked policy documents explaining that health centers funded under section 330 of the Public Health Service Act, 42 U.S.C. § 254b, may be deemed federal employees under the FSHCAA for purposes of FTCA coverage.

26. In addition, the website (http://bphc.hrsa.gov) and linked policy documents list the Department of Health and Human Services as the appropriate federal agency for the filing of administrative tort claims pursuant to the FTCA and include the agency's contact information and telephone number.

27. Additionally, at all relevant times hereto, HRSA/BPHC maintained a linked website (http://findahealthcenter.hrsa.gov) to assist individuals in identifying health centers funded under 42 U.S.C. § 254b.

28. DHHS has a Claims Office that maintains a computer database of administrative tort claims filed with DHHS, including those filed regarding FQHCs that have been deemed eligible for FTCA malpractice coverage.

29. Mr. Valdez presented an administrative tort claim to the DHHS on March 21, 2022 relating to CAPWN and Dr. Packard's treatment of his decubitus ulcers in February 2020. DHHS denied Mr. Valdez's tort claim on September 30, 2022.

Filing 141 at 5–6 (¶¶ 23–29) (record citations omitted).

## B. Procedural Background

Valdez filed a Complaint on February 11, 2022, in Nebraska state court. Filing 1. The

Complaint alleged negligence and sought damages for medical expenses, pain and suffering,

---

(¶ 24 n.2) (citing *United States v. Cottom*, No. 8:13CR108, 2015 WL 9308226, at *3 (D. Neb. Dec. 22, 2015), *aff'd*, 679 F. App'x 518 (8th Cir. 2017)). "The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

The Court takes judicial notice that the WayBack Machine on the archive.org website allows user to see a website's content from an earlier date, and that the words "Community Action Partnership of Western Nebraska is a Federally Qualified Health Center" appeared on the website both before and after Valdez was treated by CAPWN and Dr. Packard. This was "accurately and readily determined" by entering the CAPWN website address into https://archive.gov and then viewing results from January 16, 2019, https://web.archive.org/web/20190116221952/https://capwn.org/, and May 25, 2020, https://web.archive.org/web/20200525070628/https://capwn.org/. Fed. R. Evid. 201(b)(2). Nor can the "accuracy" of this source "reasonably be questioned": the WayBack Machine has a catalogued "history of over 866 billion web pages on the internet," https://archive.org/, and there is no reason to think the entries related to CAPWN are inauthentic or adulterated.

disfigurement, and lost income and earning capacity. Filing 1 at 23–24 (¶¶ 36–43), 25 (¶ 45). The case was subsequently removed to this Court on August 11, 2022, pursuant to 42 U.S.C. § 233 (federal officer removal statute). *See* Filing 1 at 3. On August 11, 2022, the United States filed a Notice of Substitution substituting itself for CAPWN and Dr. Packard. Filing 4. On May 18, 2023, the Court granted that Notice of Substitution. Filing 72. The United States moved for summary judgment on February 13, 2024, seeking dismissal of all claims against it on statute of limitations grounds. Filing 136.

Not long after filing suit, Valdez began to pursue administrative remedies. On March 16, 2022, Valdez filed an FTCA Standard Form 95 Claim for Damage, Injury or Death with the U.S. Department of Health and Human Services (DHHS). Filing 157-8. The asserted basis for Valdez's claim was as follows:

> From February 11-17, 2020, Dr. William Packard and CAPWN, whom we believe were agents of a private Nebraska nursing home (Monument Rehabilitation & Care Center), knew that Mr. Valdez had been admitted to that nursing home from an out-of-state facility with decubitus ulcers, and failed to timely transfer him to a hospital for 6 days while the ulcers progressed. We were informed for the first time on February 22, 2022 that Dr. Packard and CAPWN may be federal contractors.

Filing 157-8 at 2. On September 30, 2022, DHHS sent Valdez's attorney a letter denying Valdez's claim because of untimeliness, explaining,

> You allege that from February 11, 2020 through February 17, 2020, [CAPWN] and Dr. William Packard knew that Mr. Valdez had been admitted to Monument Rehabilitation and Care Center from an out-of-state facility with decubitus ulcers, but they were negligent in failing to timely transfer him to a hospital for six days while the ulcers progressed.
>
> . . .
>
> Your claim was received on March 21, 2022, more than two years after the date on which it accrued and is, thus, untimely under the FTCA. . . . Accordingly, the claim is hereby denied.

Filing 157-16.

## II.  LEGAL ANALYSIS

### A.  Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) provides, "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A factual dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Liberty Ins. Corp. v. HNTB Corp*., 87 F.4th 886, 888 (8th Cir. 2023) (quoting *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 248 (1986)); *see also Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) ("An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." (quotations omitted)). "The court determines materiality [of facts] from the substantive law governing the claim"; thus, only "[d]isputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC*, 76 F.4th 753, 757 (8th Cir. 2023) (quoting *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998)).

Both the moving and the non-moving party must support their assertions about the presence or absence of genuine factual disputes "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, the parties otherwise bear different burdens at summary judgment.

"The movant has the initial burden of establishing the basis for the motion by identifying 'those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Jones v. Wellpath, LLC*, 77 F.4th 658, 662 (8th Cir. 2023) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up)). "[T]he moving party may discharge its burden by 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'" *Washington v. City of St. Louis, Missouri*, 84 F.4th 770, 773 (8th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and citing Fed. R. Civ. P. 56(a)). "The movant is entitled to judgment as a matter of law 'when the [non-moving party] has failed to make a sufficient showing of the existence of an essential element of [its] case." *Whitworth v. Kling*, 90 F.4th 1215 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)).

In response to a motion for summary judgment, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Jones*, 77 F.4th at 662–63 (quoting *Torgerson*, 643 F.3d at 1042). Even though a "party's own testimony is often self-serving," that alone is not grounds for disregarding it entirely as the basis for a genuine issue of material fact. *Hall v. Higgins*, 77 F.4th 1171, 1182 (8th Cir. 2023) (citing *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013)). On the other hand, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Jones*, 77 F.4th at 663 (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)). Similarly, "[t]o create a genuine dispute of fact, 'the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Johnson v.*

*Midwest Div. - RBH, LLC*, 88 F.4th 731, 736 (8th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

In deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[A]t summary judgment, it is not the role of the district court to weigh competing evidence or 'attempt to discern the truth of any factual issue.'" *Hall*, 77 F.4th at 1182 (quoting *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008)). "Genuine disputes of material fact are for a factfinder to resolve." *Liberty Ins. Corp.*, 87 F.4th at 889. Instead, "[s]ummary judgment is available when there is 'no genuine issue of material fact' and 'the evidence, viewed in a light most favorable to the nonmoving party, shows . . . the [moving party] is entitled to judgment as a matter of law.'" *Liberty Ins. Corp.*, 87 F.4th at 888 (quoting *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020)); *Nieters v. Holtan*, 83 F.4th 1099, 1105 (8th Cir. 2023) ("Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute [as to] those facts." *Johnson*, 88 F.4th at 736 (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

## B. Preliminary Matter

Valdez states, "Even if this Court grants the Government's [M]otion [for Summary Judgment], the evidence of Packard's negligence remains relevant to Plaintiff's claims against Monument," due to Valdez's assertion that Dr. Packard was also an agent of Monument. Filing 156 at 13. Valdez argues that "there is a genuine issue of material fact as to whether Packard was

an apparent agent of Monument, while also an agent of CAPWN." Filing 156 at 15. Valdez contends that he "should not be left without a remedy for Packard's negligence due to the chaotic arrangements between CAPWN, Packard and Monument." Filing 156 at 16. The United States contends that whether Dr. Packard could also have been Monument's agent "is immaterial and has nothing to do with whether the United States should be dismissed." Filing 161 at 10. The Court agrees with the United States. Only Valdez's claims against the United States are presently before the Court on the Motion for Summary Judgment by the United States. Filing 136. Accordingly, the Court does not presently consider Valdez's claims against other defendants, and Valdez's arguments concerning Dr. Packard's alleged relationship with Monument are irrelevant to ruling on the present Motion.

### C.  The United States Is Entitled to Summary Judgment Because Valdez's Claim Is Untimely

*1.  The Parties' Arguments*

The United States argues that it is entitled to summary judgment because Valdez's FTCA claim is untimely. Filing 142 at 1. The United States contends that Valdez's filing of his administrative claims with DHHS on March 21, 2022, was outside the FTCA's two-year statute of limitations because Valdez's claim accrued no later than February 17, 2020. Filing 142 at 9. The United States explains that any potential liability against it stems from Dr. Packard's alleged negligence during the period of February 11, 2020, and February 17, 2020, when Valdez was at Monument after being transferred in from MCR and before being transferred out to Regional West Medical Center. Filing 142 at 9; *see also* Filing 157-8 (Valdez only alleging in his administrative claim that negligence occurred between February 11 and February 17, 2020). The United States further contends that Valdez's claim was not subject to equitable tolling, arguing that because "the status of the relevant actors and entities could have easily been found by a timely diligent inquiry[,]

10

Mr. Valdez cannot make the extraordinary showing necessary for equitable tolling." Filing 142 at 13.

In response, Valdez argues that his claim is timely under the "continuing treatment doctrine." Filing 156 at 4. Valdez contends that his administrative claim was filed with DHHS "within two years of his last appointment with Packard related to the injuries at issue herein, and within two years of the end of CAPWN's care for [Valdez] related to the injuries at issue herein." Filing 156 at 4. Valdez further argues that he is entitled to equitable tolling under the "discovery rule." Filing 156 at 6. Valdez explains that he "'discovered' that CAPWN and its physicians, William Packard and KADER, contributed to the cause of his injury via a telephone conversation between Plaintiff's counsel and Packard on May 29, 2020." Filing 156 at 7. Valdez further explains that he "did not 'discover' that Packard was a federal employee until February 17, 2022 despite reasonable diligence," noting that Dr. Packard himself did not know prior to this litigation that CAPWN was federally funded. Filing 156 at 9.

In reply, the United States argues that the continuous treatment doctrine does not apply because Valdez did not indicate any subsequent negligence beyond February 17, 2020, in his administrative claim filed with DHHS. Filing 161 at 2–3. The United States also contends that Valdez's "discovery rule" argument fails because "it cannot, nor does it appear to be, seriously disputed that Mr. Valdez was aware that Dr. Packard, his long-time physician from CAPWN, was providing him treatment while he was staying at Monument, which at one point included Dr. Packard draining and debriding Mr. Valdez's wound." Filing 161 at 4–5. "Nor can it be seriously disputed that Mr. Valdez was aware of his decubitus ulcers and the fact he was transferred to another facility for treatment." Filing 161 at 5. The United States further argues that Dr. Packard's

11

and CAPWN's statuses as "deemed" Public Health Employees "could have been found with timely, diligent inquiry," precluding equitable tolling. Filing 161 at 7.

### 2. Applicable Standards

Under the FSHCAA, "the United States has made itself liable for the medical malpractice of federally supported community health centers, their officers, [and] employees." *Carrizales v. United States*, No. 8:14CV3104, 2014 WL 4471602, at *1 (D. Neb. Sept. 10, 2014). The FSHCAA authorizes the Secretary of DHHS to "deem" a qualified health center and its employees "to be an employee of the Public Health Service." 42 U.S.C. § 233(g)(1)(A). It further provides that the "remedy" for a suit against an entity or employee of an entity that has been "deemed to be an employee of the Public Health Service" is "exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive." *Id.* The FTCA provides the exclusive remedy against the United States in tort actions. 28 U.S.C. § 2679.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "The FTCA serves as a limited waiver of sovereign immunity, opening the door to state-law liability claims against the federal government for harm caused by government employees." *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019). The FTCA "permits persons injured by federal employees to sue the United States for tort claims in federal district court." *Rollo-Carlson as Tr. for Flackus-Carlson v. United States*, 971 F.3d 768, 770 (8th Cir. 2020). The FTCA "provides that federal district courts have 'exclusive jurisdiction' over claims against the United States for money damages for 'personal injury or death caused by the negligent

12

or wrongful act or omission.'" *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)).

Among other procedural requirements, the FTCA "provides that a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues.'" *United States v. Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)). Regarding accrual under the FTCA, the Eighth Circuit has stated,

> When a claim accrues under the FTCA is a question of federal law. See *Brazzell v. United States,* 788 F.2d 1352, 1355 (8th Cir.1986). The general rule is that an FTCA claim accrues at the time of injury. But in medical malpractice cases, the claim accrues when the "plaintiff actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury." *Wehrman v. United States,* 830 F.2d 1480, 1483 (8th Cir.1987) (quotation omitted). Knowing the cause and existence of an injury is not the same as knowing that a legal right has been violated. Once a plaintiff knows or should know that he has been injured and who has inflicted the injury, "[t]here are others who can tell him if he has been wronged, and he need only ask." *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

*Motley v. United States*, 295 F.3d 820, 822 (8th Cir. 2002); see also *McCoy v. United States*, 264 F.3d 792, 794 (8th Cir. 2001) ("[A]n FTCA claim for medical malpractice accrues when a plaintiff becomes aware of his injury and its probable cause." (citing *Kubrick*, 444 U.S. at 122)). The Supreme Court has held "that the FTCA's time bars are nonjurisdictional and subject to equitable tolling." *Wong*, 575 U.S. at 420. "[E]quitable tolling 'is an exception to the rule, and should therefore be used only in exceptional circumstances.'" *Motley*, 295 F.3d at 824 (quoting *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995)).

In addition, plaintiffs in medical negligence cases can avail themselves of "the continuing treatment doctrine." *McCoy*, 264 F.3d at 794. This doctrine can likely be used either to delay the accrual of a claim or to equitably toll the statute of limitations. Compare *id.* ("[U]nder the continuing treatment doctrine, a plaintiff's cause of action does not accrue until the tortious

continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time."), and *id.* ("[T]he continuing treatment doctrine does not toll the statute of limitations until treatment is complete if 'the claimant is aware of the acts constituting negligence.'"), with *id.* (McMillian, J., dissenting) ("I think that there are two versions of the continuing treatment doctrine, one which postpones the accrual of the cause of action and a second which tolls the running of the statute of limitations."). The continuing treatment doctrine provides that "in certain cases, [ ] the statute of limitations [may toll] during the course of treatment." *McCoy*, 264 F.3d at 795. However, the Eighth Circuit requires "continuing negligent treatment," explaining that a "different version of the continuing treatment doctrine has been adopted in other circuits, although not in ours." *Id.* (emphasis omitted). An alternative version rejected by the *McCoy* court "do[es] not limit the continuous treatment doctrine to continuously negligent treatment," but instead provides that "statute[s] of limitations may be tolled during subsequent continuing treatment, even if non-negligent." *Id.* (emphasis omitted). Thus, the continuous treatment doctrine does not toll the statute of limitations on a medical malpractice claim where "only [ ] some portion of the ongoing treatment [was] negligent." *Id.*

   3.   *Application*

   As stated by Valdez in his March 16, 2022, administrative filing with DHHS, the basis for his claim is as follows:

> From February 11-17, 2020, Dr. William Packard and CAPWN, whom we believe were agents of a private Nebraska nursing home (Monument Rehabilitation & Care Center), knew that Mr. Valdez had been admitted to that nursing home from an out-of-state facility with decubitus ulcers, and failed to timely transfer him to a hospital for 6 days while the ulcers progressed. We were informed for the first time on February 22, 2022 that Dr. Packard and CAPWN may be federal contractors.

Filing 157-8. Because "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues,"

28 U.S.C. § 2401(b), Valdez's claim must have either accrued on or after March 16, 2020, two years before he filed his administrative claim, or have been the subject of equitable tolling. Otherwise, his claim against the United States is "forever barred" as untimely under the FTCA, 28 U.S.C. § 2401(b), and the United States is entitled to judgment as a matter of law. *In re Minn. Mut. Life Ins. Co. Sales Pracs. Litig.*, 346 F.3d 830, 835 (8th Cir. 2003) ("The issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage if there are no genuine issues of material fact in dispute." (citing *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 589 (8th Cir. 2003))).

### a. The Continuing Treatment Doctrine Does Not Apply to Valdez's Claim

The continuing treatment doctrine can either delay accrual or equitably toll a statute of limitations, but only where the continuing treatment is "tortious." *McCoy*, 264 F.3d at 795. The Eighth Circuit has expressly rejected a version of the continuing treatment theory that "do[es] not limit the continuous treatment doctrine to continuously *negligent* treatment." *Id.* (emphasis in original). However, Valdez seemingly wants the Court to apply a continuing treatment theory that does not require the subsequent treatment to be negligent in order to delay accrual or toll the statute of limitations. Despite properly reciting the law, Filing 156 at 1 ("Under the continuing treatment doctrine, a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time." (citing *Wehrman*, 830 F.2d at 1483)), Valdez failed to "cit[e] to particular parts of materials in the record . . . showing that the materials do not establish the . . . presence of a genuine dispute" regarding any subsequent negligence by Dr. Packard after February 17, 2020. Fed. R. Civ. P. 56(c). In lieu of evidence of subsequent negligence, Valdez merely states that he "filed [the] FTCA administrative claim on March 16, 2022 – still within two years of his last appointment with

Packard related to the injuries at issue herein, and within two years of the end of CAPWN's care for [Valdez] related to the injuries at issue herein." Filing 156 at 4. The Court cannot consider this evidence because "[a] litigant may not base any part of his tort action against the United States on claims that were not first presented to the proper administrative agency," *McCoy*, 264 F.3d at 795, and Valdez did not include allegations of any subsequent negligence in his administrative claim. *See* Filing 157-8. However, even if evidence that Dr. Packard provided subsequent medical care to Valdez were cognizable, the continuing treatment doctrine would not apply because Valdez does not allege that subsequent treatment was "tortious." *McCoy*, 264 F.3d at 795. Thus, the continuing treatment doctrine does not apply to delay accrual or to cause equitably tolling of Valdez's claim.

### b.   Valdez's Claim Accrued on February 17, 2020

Valdez's claim accrued when he "actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury." *Wehrman*, 830 F.2d at 1483. The parties agree, "No other doctor issued orders for [Valdez's] care, besides Packard and KADER, during his February 2020 admission to Monument." Filing 155 at 6 (¶ 41). There is no dispute that Valdez knew or should have known about the decubitus ulcer by February 17, 2020: his administrative claim alleged that he was admitted to the nursing home with the decubitus ulcer. Filing 157-8. There is also no dispute that Valdez was transferred from the nursing home to the local hospital on February 17, 2020, Filing 155 at 6 (¶ 40), after his "ulcers progressed," Filing 157-8. Despite this, Valdez argues that he did not learn "that CAPWN and its physicians, William Packard and KADER, contributed to the cause of his injury [until] a telephone conversation between Plaintiff's counsel and Packard on May 29, 2020." Filing 156 at 7.

Valdez's asserted ignorance is insufficient to delay the accrual date of his claim. The Eighth Circuit has stated, "Once aware of the injury, plaintiffs had a duty to exercise due diligence in investigating its cause." *Motley*, 295 F.3d at 823. Like in *Motley*, "[t]his is not a case where a doctor advised [Valdez] that [Dr. Packard] was not the cause of the injury." *Id.* "Nor is this a case where [Valdez] inquired and doctors repeatedly advised they could find no cause for the injury." *Id.* Instead, this is a case "where the plaintiff, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community." *Id.* (internal quotations and citation omitted). Accordingly, because Valdez "should have known [ ] the cause and existence of his injury" by February 17, 2020, *Wehrman*, 830 F.2d at 1483, his claim accrued no later than that date.

c. No Exceptional Circumstances Justify Equitable Tolling

As discussed above, the continuing treatment theory does not apply, so Valdez is not entitled to equitable tolling on that ground. Another possible avenue for equitable tolling is that there exist "exceptional circumstances." *Motley*, 295 F.3d at 824. Valdez's only argument not yet addressed is that equitable tolling applies to his claims because he "did not 'discover' that Packard was a federal employee until February 17, 2022 despite reasonable diligence." Filing 156 at 9. Supporting his assertion of "reasonable diligence, Valdez stated,

> The medical records that Plaintiff's counsel obtained from CAPWN before filing suit did not identify CAPWN as a federally qualified health center. Nor does CAPWN identify itself as a federally qualified health center in its corporate filings with the Nebraska Secretary of State. Throughout its pre-filing settlement overture to Monument, Plaintiff directly referenced the negligence of Packard; Monument's counsel responded, but did not clarify that Packard is a federal employee. This case was filed in Scotts Bluff County District Court on February 11, 2022, identifying CAPWN as CAPWN identifies itself with the Nebraska Secretary of State, *i.e.*, a Nebraska non-profit corporation.

Filing 156 at 12. The United States responds that "there is no evidence describing any of Plaintiff's efforts to ascertain the status of CAPWN or Dr. Packard and that the information could not be found. Such a search could have included reviewing CAPWN's website showing its FQHC status, or going to the CAPWN facility to view the signs informing of the FQHC status, or perhaps reviewing HRSA websites to see that CAPWN was a FQHC." Filing 161 at 8.

"To toll the statute because of a plaintiff's ignorance of the defendant's federal employee status, plaintiff 'must at the very least show that the information could not have been found by a timely diligent inquiry.'" *Motley*, 295 F.3d at 824 (quoting *Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir. 2002)). Valdez's assertion of equitable tolling is remarkably similar to the plaintiffs' arguments in *Motley*, which the Eighth Circuit rejected. 295 F.3d at 823–24. In *Motley*, the plaintiffs "argue[d] that the FTCA's two-year statute of limitations should be equitably tolled because [ ] they did not know and could not reasonably have known that [the FQHC] was a federal employee for FTCA purposes, as neither [the FQHC] nor the government made that coverage known." *Id.* The plaintiffs were "'lulled into a false sense of security' because [the FQHC was] a private not-for-profit corporation registered with the State of Missouri, and [plaintiffs were] never informed of its FTCA coverage." *Id.* at 824. The *Motley* court rejected this argument for equitable tolling, noting that "plaintiffs were not affirmatively misled by [the FQHC] or the government— they simply made no inquiry into [the FQHC's] status . . . during the two-year period after February 7, 1996, when an administrative FTCA claim could have been timely filed." *Id.* Because "plaintiffs had ample time . . . to find the Federally Supported Health Centers Assistance Act of 1992 and to inquire into its possible application to their claim[,] [t]heir failure to do so was a mistake of law that does not entitle them to equitable tolling." *Id.*

18

As in *Motley*, there is no indication that anyone "misled" Valdez about CAPWN's or Dr. Packard's statuses. Valdez had "ample time" in the two years after Dr. Packard's alleged negligence to determine that CAPWN was a FQHC and that his claims against it and Dr. Packard would implicate the FTCA. Indeed, a simple visit to CAPWN's website would have alerted Valdez. https://capwn.org/ (stating on the front page that CAPWN "is a Federally Qualified Health Center"). Under these circumstances, equitable tolling is not warranted because the "information could [ ] have been found by a timely diligent inquiry.'" *Motley*, 295 F.3d at 824.

> d.   The United States Is Entitled to Judgment as a Matter of Law

Valdez has failed to generate a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The only material facts—that is, the only "facts that might affect the outcome of the lawsuit," *Greater St. Louis Constr. Laborers Welfare Fund*, 76 F.4th at 757—concern (1) the date his claim accrued, which is when he knew or should have known the existence and cause of his injury, *Wehrman*, 830 F.2d at 1483; and (2) the applicability of equitable tolling, which hinges on whether information that CAPWN is a FQHC "could [ ] have been found by a timely diligent inquiry," *Motley*, 295 F.3d at 824. Valdez lacks "evidence [ ] sufficient to persuade a reasonable jury" on both of these issues. *Schilf*, 687 F.3d at 948. Accordingly, "[b]ecause [Valdez] is unable to toll the limitations period," which began on February 17, 2020," his untimely claim did not effectuate a waiver of the government's sovereign immunity," *McCoy*, 264 F.3d at 796, and the United States "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. CONCLUSION

Valdez's claims against the United States are untimely because they accrued over two years before Valdez filed an administrative claim, and equitable tolling does not apply. The United States is entitled to judgment as a matter of law. Accordingly,

IT IS ORDERED that the Motion for Summary Judgment by the United States, Filing 136, is granted.

Dated this 9th day of May, 2024.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge