IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ISRAEL VALDEZ,<br><br>      Plaintiff,<br><br>  vs.<br><br>SCOTTSBLUFF OPERATIONS LLC, a<br>Nebraska limited liability corporation, and<br>ABDEL KADER LAOUEL KADER, M.D.,[1]<br><br>      Defendants. | **8:22CV289**<br><br><br>**MEMORANDUM AND ORDER ON DEFENDANT KADER'S MOTION TO SUBSTITUTE, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Israel Valdez filed a lawsuit in Nebraska state court alleging medical negligence after he developed a decubitus ulcer while in the hospital. Filing 1. The Complaint sought damages for medical expenses, pain and suffering, disfigurement, and lost income and earning capacity. Filing 1 at 23–24 (¶¶ 36–43), 25 (¶ 45). Valdez's lawsuit triggered a rather convoluted series of motions and rulings leading to the motion now before the Court. That Motion is the Motion to Substitute, or in the Alternative, Motion for Summary Judgment by the remaining individual defendant, Abdel Kader Laouel Kader, M.D. Filing 182. Dr. Kader seeks substitution of the United States in his place or a determination that he is immune from suit under the Federally Supported Health Centers Assistance Act (FSHCAA), 42 U.S.C. § 233. For the reasons stated below, Dr. Kader's Motion is granted in part and denied in part as moot.

---

[1] The parties and the Court have sometimes identified Dr. Kader as Abdel Kader Laquel Kader. However, it appears that his middle name is in fact "Laouel." *See, e.g.*, Filing 182 (Motion to Substitute, or in the Alternative, Motion for Summary Judgment).

1

# I.  INTRODUCTION

On February 11, 2022, Valdez filed a medical malpractice action against Dr. Kader, Community Action Partnership of Western Nebraska (CAPWN), Dr. William Packard, and Scottsbluff Operations, LLC d/b/a Monument Rehabilitation & Care Center in the District Court of Scottsbluff County, Nebraska. Filing 1 at 8–16; Filing 186 at 1 (¶ 3). As mentioned above, Valdez's lawsuit triggered a series of motions and rulings leading to the Motion now before the Court. The Court finds the most efficient way to put the matters at issue in context is to begin with the procedural background, then turn to the disputed and undisputed facts at issue.

## A.  Procedural Background

After Valdez filed his medical malpractice action, the United States Attorney's Office for the District of Nebraska filed a Notice in state court pursuant to 42 U.S.C. § 233(*l*)(1) on March 17, 2022, indicating that a determination of the statuses of Dr. Packard, CAPWN, and Dr. Kader as employees of Public Health Service had not yet been made. Filing 186 at 2 (¶ 4); Filing 1 at 29. On August 11, 2022, CAPWN and Dr. Packard removed this action to this Court on the ground that they were deemed employees of the United States of America under the authority of the Federally Supported Health Centers Assistance Act (FSHCAA), 42 U.S.C. § 233. Filing 1 at 1 (¶ 2). CAPWN and Dr. Packard were represented on their Notice of Removal by the United States Attorney's Office for the District of Nebraska. Filing 1 at 3. The United States then filed in this Court a Notice of Substitution to substitute itself for CAPWN and Dr. Packard under the FSHCAA and the Federal Tort Claims Act (FTCA). Filing 4. A magistrate judge of this Court eventually granted the notice of substitution. Filing 72. The United States did not substitute itself for the remaining defendants.

Dr. Kader had previously requested that the Attorney General defend him against Valdez's claims on June 17, 2022. Filing 201 at 3 (¶ 11). Valdez alleges and Dr. Kader does not dispute that the United States responded as follows:

> On or about August 12, 2022, the United States Attorney for the District of Nebraska denied Dr. Kader's request. He explained that Dr. Kader was not covered by the FSHCAA because, despite having purported to contract personally with CAPWN, payment for Dr. Kader's services was made to a professional corporation, LK Health Services, P.C., an arrangement that took Dr. Kader outside of the limited statutory definition for covered contractors in 42 U.S.C. § 233(g)(5).

Filing 201 at 3 (¶ 12). The parties have not identified where in the record the United States Attorney's August 12, 2022, response can be found.

Dr. Kader filed his Answer to Valdez's Complaint on December 16, 2022. Filing 53. In addition to denying Valdez's claims, Dr. Kader asserted numerous affirmative defenses. The four most pertinent ones are the following:

> 62.    Dr. Kader affirmatively alleges that Plaintiff's claims against Dr. Kader are governed and limited by the provisions of 42 U.S. Code § 233 de jure and de facto and pursuant to the provisions of the Dr. Kader's October 16, 2016, Physician Services Agreement with Community Action Partnership of Western Nebraska and the December 20, 2018, Addendum to "Physicians Services Agreement" with Community Action Partnership of Western Nebraska.

> 63.    Dr. Kader affirmatively alleges that Plaintiff's alleged damages against Dr. Kader are governed and limited by the provisions of 42 U.S. Code § 233 de jure and de facto and pursuant to the provisions of the Dr. Kader's October 16, 2016, Physician Services Agreement with Community Action Partnership of Western Nebraska and the December 20, 2018, Addendum to "Physicians Services Agreement" with Community Action Partnership of Western Nebraska.

> 64.    Dr. Kader affirmatively alleges that the payment of any possible judgment or settlement in this matter as to Plaintiff's claims against Dr. Kader are governed and limited by the provisions of 42 U.S. Code § 233 de jure and de facto and pursuant to the provisions of the Dr. Kader's October 16, 2016, Physician Services Agreement with Community Action Partnership of Western Nebraska

3

and the December 20, 2018, Addendum to "Physicians Services Agreement" with Community Action Partnership of Western Nebraska.

* * *

69.    Dr. Kader affirmatively alleges that, pursuant to the provisions of 42 U.S. Code § 233 de jure and de facto, and pursuant to the provisions of the Dr. Kader's October 16, 2016, Physician Services Agreement with Community Action Partnership of Western Nebraska and the December 20, 2018, Addendum to "Physicians Services Agreement" with Community Action Partnership of Western Nebraska, Dr. Kader is deemed an employee of the Public Health Service and thus an employee of the United States of America and subject to the terms and provisions of that federal statute.

Filing 53 at 6–7 (¶¶ 62–64, 69); *see also* Filing 53 at 8 (¶¶ 77–78) (alleging that provisions of the 2016 Physician Services Agreement bind CAPWN and the United States to indemnify and defend Dr. Kader in this matter).

Dr. Kader, the only remaining individual defendant after the United States was substituted for Dr. Packard, also filed a Crossclaim seeking to compel the United States to defend and indemnify him against the underlying negligence claims in this case. Filing 104. He also filed a Third-Party Complaint against CAPWN. Filing 105. Sometime later, Dr. Kader moved to dismiss his Third-Party Complaint because Dr. Kader came to an agreement with CAPWN out of Court. Filing 134; Filing 201 at 5 (¶ 20); Filing 204 at 6 (¶ 20). The Court granted the voluntary dismissal of the Third-Party Complaint without prejudice. Filing 138.

The United States filed a Motion to Dismiss Crossclaim for lack of subject-matter jurisdiction. Filing 130. In a Memorandum and Order on that Motion to Dismiss, the Court considered only Dr. Kader's arguments that the Court has original jurisdiction over his Crossclaim because there is a private cause of action implied in 42 U.S.C. § 233 or because supplemental jurisdiction exists. Filing 159 at 9. However, the Court declined to recognize an implied private right of action under 42 U.S.C. § 233. Filing 159 at 12. The Court also rejected

4

subject-matter jurisdiction under 28 U.S.C. § 1346(b), 28 U.S.C. § 1367, and the Declaratory Judge Act. Filing 159 at 13–16. Dr. Kader did not seek certification under Federal Rule of Civil Procedure 54(b) for an interlocutory appeal to address the dismissal of his Crossclaim, file a petition with any court for a writ of mandamus that would direct the United States to defend and indemnify him, or file a suit under the Administrative Procedures Act (APA) seeking judicial review of the Attorney General's failure to deem him protected by FTCA coverage. Filing 201 at 5–6 (¶¶ 24–26); Filing 204 at 6–7 (¶¶ 24–26).

Subsequently, the United States filed a Motion for Summary Judgment on Valdez's FTCA claims originally brought against CAPWN and Dr. Packard. Filing 136. The Court granted that Motion because the applicable two-year statute of limitations for FTCA claims barred Valdez's suit against the United States. Filing 173 at 2.

Undaunted by the dismissal of his Crossclaim against the United States for lack of subject-matter jurisdiction, Dr. Kader has now filed a Motion to Substitute, or in the Alternative, Motion for Summary Judgment. Filing 182. Dr. Kader seeks an order substituting the United States as a party defendant in his place. Filing 182 at 1. In the alternative, he seeks summary judgment on the ground that he is a qualified contractor of a federally supported health center who is entitled to immunity from Valdez's claim pursuant to 42 U.S.C. § 233. Filing 182 at 1. Dr. Kader included with his Motion an index of evidence and affidavits, a statement of undisputed facts, and a supporting brief. Filings 183, 184, 185, 186, and 187. In a Text Order, the Court *inter alia* directed that because Dr. Kader's Motion to Substitute includes an alternative Motion for Summary Judgment, the deadlines for any opposition or reply to that motion are set out in NECivR 7.1(b)(1)(B) and (c)(1) and any opposition or reply would have to comply with

NECivR 56.1(b) and (c). After an enlargement of time to do so, Valdez filed his Opposition, response to Dr. Kader's statement of facts, his own statement of additional facts, and an index of supporting evidence. Filings 199, 200, 201, 202. Dr. Kader then filed a response to Valdez's statement of additional facts and a reply brief. Filings 204, 205.

With this procedural context in mind, the Court turns to a summary of the pertinent factual background.

## B. Factual Background

Because this case is before the Court on a Motion for Summary Judgment, at least in the alternative, the factual background set out here is drawn primarily from the parties' statements of undisputed material facts and responses to them.[2] However, the Court has at times substituted the language of documents for the parties' characterizations of the contents of those documents in their statements of fact. The Court has also supplemented the parties' statements of fact where necessary for context with allegations from Valdez's Complaint. Unless otherwise indicated, the following facts are undisputed. The Court will limit its discussion to material facts "that might affect the outcome of the suit under the governing law." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (internal quotations and citations omitted).

---

[2] The Court acknowledges Valdez's blanket objection to Dr. Kader's Motion and Statement of Facts on the ground that they constitute a collateral attack on the Court's prior Memorandum and Order finding that the Court lacks subject-matter jurisdiction over Dr. Kader's Crossclaim. Filing 200 at 1. The Court also acknowledges Valdez's objections to the materiality of Dr. Kader's Statement of Facts because it is an impermissible vehicle for review of the Attorney General's decision to deny FTCA coverage for Dr. Kader. Filing 200 at 1. The Court will address below in § II.A.2. whether Dr. Kader is mounting an impermissible collateral attack on the Court's Order or seeking an impermissible review of the Attorney General's decision.

## 1. The Parties

Israel Valdez is a resident of Scotts Bluff County, Nebraska. Filing 186 at 1 (¶ 1). According to Valdez's Complaint, Scottsbluff Operations, LLC, is a Nebraska limited liability corporation that, in February 2020, was doing business as a nursing home in Scottsbluff, Nebraska under the trade name "Monument Rehabilitation & Care Center" (Monument). Filing 1 at 8 (¶ 2). Dr. Kader denies this allegation for lack of information, but he also notes that it does not pertain to him. Filing 53 at 1 (¶ 2). CAPWN is a non-profit, community based Federally Qualified Health Center (FQHC) located in Scottsbluff, Nebraska. Filing 186 at 2 (¶ 7). Dr. Kader is a physician licensed to practice medicine in the state of Nebraska and actively practicing family and primary care medicine. Filing 186 at 1 (¶ 2). According to Valdez's Complaint, Dr. Kader was employed by CAPWN to provide medical evaluation and treatment for residents of Monument. Filing 1 at 9 (¶¶ 4, 6). However, Dr. Kader's Answer states that his 2016 Physician Services Agreement with CAPWN governs his applicable scope of practice relevant to Valdez's claim. Filing 53 at 2 (¶¶ 4, 6).

Since at least 2005, CAPWN has been a FQHC deemed eligible for FTCA malpractice coverage under the FSHCAA, 42 U.S.C. §§ 233(g)-(n), and CAPWN receives grant funds pursuant to 42 U.S.C. § 254b. Filing 186 at 2 (¶ 8). Since at least 2005, and pursuant to the FSHCAA, CAPWN has submitted applications to the Health Resources and Services Administration (HRSA), an agency of the United States Department of Health and Human Services (DHHS), for CAPWN and for its qualified staff to be deemed as Public Health Service (PHS) employees for the purposes of 42 U.S.C. § 233. Filing 186 at 2–3 (¶ 9). Since at least 2005, those applications have been approved by HRSA, which deems CAPWN and qualified

staff eligible for FTCA coverage. Filing 186 at 3 (¶ 9). CAPWN's eligibility for FTCA coverage has continued without interruption since at least 2005 and included coverage for the period of January 1, 2020, to December 31, 2020, during which time Valdez received the medical care and treatment provided by the various defendants at issue in this case. Filing 186 at 3 (¶ 10). Specifically, on February 14, 2020, Dr. Kader provided medical care and treatment to Valdez at Monument Rehabilitation & Care Center. Filing 186 at 3 (¶ 11).

    *2.   Dr. Kader's 2016 Physician Services Agreement*

    Dr. Kader provided care to Valdez pursuant to a 2016 Physician Services Agreement (the 2016 PSA) between Dr. Kader and CAPWN. Filing 186 at 3 (¶ 11). Pursuant to the PSA, Dr. Kader agreed to furnish a full range of primary and preventative health care services provided by private practitioners in family medicine practice for two 9.5-hour clinical sessions per week at CAPWN's clinic. Filing 186 at 3 (¶ 12). At all times relevant to the PSA period, Dr. Kader provided family practice and primary care medicine services as an independent contractor for CAPWN. Filing 186 at 3–4 (¶¶ 13–14).[3] It is undisputed that the 2016 PSA had a term of one year and renewed automatically for one-year terms absent a notice of intent to terminate by Dr. Kader or CAPWN. Filing 186 at 4 (¶ 16); Filing 200 at 6 (¶ 16). Dr. Kader did not bill privately for his CAPWN medical services provided to Valdez. Filing 186 at 4 (¶ 17). Dr. Kader also did not receive monetary compensation for the services he provided to Valdez

---

[3] The Court declines the parties' invitation to become mired in a dispute about whether Dr. Kader "at first" worked for CAPWN as an employee then later became an independent contractor. Filing 201 at 1–2 (¶¶ 4–5). The 2016 PSA establishes that Dr. Kader was an independent contractor at the pertinent time. *See* Filing 204 at 2 (¶¶ 4–5); *see also* Filing 184 at 5 (2016 PSA, § 1.2.3 stating, "Independent Contractor Status. Physician shall provide Services on Health Center's behalf as an independent contractor and shall not be considered an employee of Health Center. As such, Physician shall not be entitled to any of the rights and privileges established for employees of Health Center, such as paid vacation, paid sick leave, paid holiday, paid days off, life, accident, or health insurance, or severance pay upon termination of this Agreement.").

from any third-party payors, including Medicaid or any other source, other than his regular 1099 compensation pursuant to the PSA. Filing 186 at 4 (¶ 18).

It is undisputed that at the time Dr. Kader was treating Valdez, he directed CAPWN to pay LK Health Services, P.C., his eponymous corporation. Filing 186 at 4 (¶ 19); Filing 200 at 6 (¶ 19); Filing 201 at 2 (¶ 6); Filing 204 at 2 (¶ 6). The parties do not dispute that Dr. Kader was the sole director and president of LK Health Services, P.C., or that Dr. Kader received PSA 1099 wages and directed that they then be paid to LK Health Services. Filing 186 at 4 (¶¶ 19–20); Filing 200 at 7 (¶ 20). At the center of the parties' dispute is Valdez's contention that by directing payment to LK Health Services, P.C., Dr. Kader was not the provider of services under the PSA. Filing 200 at 5–6 (¶¶ 15–16). Valdez contends that the 2016 PSA was never revised to reflect that LK Health Services was the provider rather than Dr. Kader. Filing 200 at 6–7 (¶¶ 19–20); Filing 201 at 2 (¶ 8). Dr. Kader responds that there was no contractual relationship between LK Health Services and CAPWN until the 2021 PSA, discussed below. Filing 204 at 3 (¶ 8).

The 2016 PSA states that it is between Dr. Kader, identified as the "Physician," and CAPWN, identified as "Health Center." Filing 184 at 4. The 2016 PSA states in part,

> 3.1 <u>Federal Tort Claims Act Coverage</u>. Health Center and its employed and certain individually contracted health care practitioners have Federal Tort Claims Act ("FTCA") coverage for professional liability actions, claims, or proceedings arising out of acts or omissions committed while providing healthcare services within Health Center's scope of project. Physician shall be covered under Health Center's FTCA coverage for professional errors, omissions, negligence, incompetence and malfeasance with limits of liability equal to that of other professionals. Such coverage shall exclusively extend to Services furnished by Physician on behalf of the Health Center and pursuant to this Agreement. Health Center will give Physician thirty (30) days' advance written notice of any material change in such coverage.

*See* Filing 184 at 6; *seeHe  also* Filing 186 at 4 (¶ 15); Filing 201 at 4 (¶ 14) (quoting part of this provision); Filing 204 at 5 (¶ 14) (purporting to quote the same provision, but stating language not found in the copy of 2016 PSA found at Filing 184 at 6). Dr. Kader contends that it was his understanding that pursuant to the 2016 PSA he was qualified or deemed an employee of PHS for the treatment of patients and the provision of services pursuant to that PSA. Filing 186 at 4 (¶ 15). Valdez disputes whether these provisions provided Dr. Kader with FTCA coverage because Dr. Kader directed payment pursuant to the 2016 PSA to his corporation. Filing 200 at 5 (¶ 15). Valdez asserts further that there are no contracts between Dr. Kader and the United States. Filing 201 at 1 (¶ 3). Dr. Kader admits that there is no written contract between him and the United States, but he contends that the 2016 PSA contains the provision quoted above stating that he is covered under CAPWN's FTCA coverage. Filing 204 at 2 (¶ 3).

The parties agree that on December 20, 2018, Dr. Kader and CAPWN signed an Addendum to the 2016 PSA, which amended language in the 2016 PSA relating to "Scope" and "Compensation." Filing 201 at 4 (¶ 15) (citing no supporting evidence). Dr. Kader points out that the amendment states, "As compensation for the provision of Services to Health Center patients hereunder, Health Center shall pay Physician [redacted]." Filing 204 at 5 (¶ 15); Filing 184 at 19 (12/20/18 Addendum). The parties also agree that on January 16, 2019, Dr. Kader and CAPWN signed Addendum #3 to the PSA, which retroactively incorporated into the original 2016 PSA their agreement that the PSA went into effect on November 1, 2018. Filing 201 at 4 (¶ 16); Filing 184 at 20 (1/16/19 Addendum).

### 3. Dr. Kader's Other Insurance

The parties do not dispute that Dr. Kader carries a policy of medical professional liability insurance issued by Midwest Medical Insurance Company (MMIC). Filing 201 at 1 (¶ 1). Although Valdez contends that Dr. Kader's MMIC policy does not contain any exclusion of coverage for claims brought or that could have been brought under the FTC, Dr. Kader disputes that allegation. Filing 201 at 1 (¶ 2); Filing 204 at 1 (¶ 2). Dr. Kader points to § 10.E. of his MMIC policy concerning "Other Insurance or Risk Transfer Agreements," which states the following:

> If any other insurance, including risk transfer agreement, self-insurance, indemnification agreement, trust agreement or patient compensation fund, provides coverage to an insured for damages covered by this insurance, the insurance we provide will be excess and we will not make any payment of damages or legal expenses unless and until the limits of liability of any other insurance have been exhausted.

> It is the intent of this provision to ensure that the coverage afforded by this insurance is excess to any other insurance whether designated to be primary, excess, contingent or on any other basis. We will pay our share of any damages that exceed the damages covered by all other insurance. This provision does not apply to excess insurance purchased by the insured that lists this policy as scheduled underlying insurance.

Filing 202-8 at 15; see also Filing 204 at 1–2 (¶ 2).

### 4. The 2021 Provider Services Agreement

On April 20, 2021, after Valdez's medical treatment at issue in this case, CAPWN entered into a new "Provider Services Agreement" (2021 PSA)—replacing the prior 2016 PSA—this time with LK Health Services, P.C., instead of with Dr. Kader. Filing 186 at 5 (¶ 21); *see also* Filing 200 at 24 (¶ 25) (responding, "That KADER's care and treatment of ISRAEL pre-dated [the 2021 PSA] is undisputed"); Filing 201 at 4 (¶ 17); Filing 204 at 5 (¶ 17). Dr. Kader signed the 2021 PSA on behalf of LK Health Services, P.C. Filing 184 at 32. Pursuant to the

2021 PSA, Dr. Kader was to continue to provide family practice and primary care medicine services for CAPWN and its patients although the 2021 PSA was between LK Health Services and CAPWN. Filing 186 at 5 (¶ 22). Indeed, the 2021 PSA identified LK Health Services, P.C., as the "Provider," and identified CAPWN as the "Health Center." *Compare* Filing 184 at 21; Filing 200 at 7 (¶ 23), *with* Filing 184 at 4 (2016 PSA identifying Dr. Kader as the "Physician" and CAPWN as the "Health Center"). The 2021 PSA also expressly acknowledged that Dr. Kader was not protected by CAPWN's FTCA coverage. Filing 186 at 5 (¶ 23); *see also* Filing 184 at 23 (3.1 stating in part, "Provider acknowledges that he is not protected by the Health Center FTCA Program.").

### 5. *Dr. Kader's Relationship with Monument Rehabilitation & Care Center*

The parties agree that at no time during the care and treatment of Valdez did Dr. Kader have an employment relationship with Monument Rehabilitation & Care Center, but they dispute whether he had an agency relationship with Monument. Filing 186 at 5 (¶ 24); Filing 200 at 8 (¶ 24). During the time covered by the 2021 PSA, Dr. Kader was still providing family medicine and primary care services to CAPWN and its patients, including at Monument, for patients like Valdez. Filing 186 at 5 (¶ 26); Filing 200 at 9 (¶ 26).

## II. LEGAL ANALYSIS

### A. Preliminary Matters

Before considering the merits of Dr. Kader's Motion, the Court must clarify some preliminary matters. Those preliminary matters concern the Court's proper focus as between Dr. Kader's request for an order substituting the United States in his place and his alternative motion for summary judgment on immunity. They also include the permissibility or impermissibility of Dr. Kader's Motion as either a collateral attack on the Court's prior order

12

dismissing his Crossclaim or a judicial review of the Attorney General's decision on his § 233 immunity.

### 1. The Court Will Focus on Dr. Kader's Alternative Motion for Summary Judgment

In the Motion now before the Court, Dr. Kader seeks an order substituting the United States as a party defendant in his place. Filing 182 at 1. In the alternative, he seeks summary judgment on the ground that he is a qualified contractor of a federally supported health center who is entitled to FTCA immunity from Valdez's claim pursuant to 42 U.S.C. § 233. Filing 182 at 1. The Court recognizes that "[w]hen section 233 immunity applies, the United States is substituted as the defendant and the case proceeds as one brought under the FTCA." *Hale v. ARcare, Inc.*, No. 3:22-CV-00117-BSM, 2024 WL 1016361, at *1 (E.D. Ark. Mar. 8, 2024) (citing *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1118 (9th Cir. 2023)). Nevertheless, the Court finds it appropriate to consider only the alternative relief Dr. Kader seeks—the determination of his immunity—for the following reasons.

First, if Dr. Kader is not entitled to immunity under 42 U.S.C. § 233, there will be no reason to substitute the United States in his place. *See Hale*, 2024 WL 1016361, at *1 (explaining that if § 233 immunity applies, the United States is substituted for the defendant). In other words, § 233 immunity is a prerequisite to substitution of the United States. On the other hand, if Dr. Kader is entitled to immunity under 42 U.S.C. § 233, there will still be no reason to substitute the United States in his place, because any FTCA claim against him is barred by the two-year statute of limitations for FTCA claims, just as the FTCA claims against the United States in the place of Dr. Packard and CAPWN were barred by that statute of limitations. *See* Filing 173 at 2 (granting summary judgment in favor of the United States on the ground that

13

Valdez's FTCA claims against it were time-barred). In that situation, the proper disposition will be summary judgment in favor of Dr. Kader on his defenses of immunity from Valdez's claims. Whether Dr. Kader would have other recourse against the United States for indemnification is not properly before the Court where Dr. Kader's Crossclaim seeking such relief was dismissed for lack of subject-matter jurisdiction. Filing 159.

Consequently, the Court will focus on whether Dr. Kader is entitled to summary judgment on his affirmative defenses of FTCA immunity under § 233.

### 2. *Dr. Kader's Motion Is Not Impermissible*

#### a. Dr. Kader's Motion Is Not an Impermissible Collateral Attack on the Court's Order Dismissing Dr. Kader's Crossclaim Against the United States

Valdez's first response to Dr. Kader's Motion is that the Motion is an impermissible collateral attack on this Court's Memorandum and Order granting the Motion by the United States for dismissal of Dr. Kader's Crossclaim for lack of subject-matter jurisdiction. Filing 199 at 1. Valdez points out that the Court concluded that 42 U.S.C. § 233(b) does not provide a cause of action for Dr. Kader's Crossclaim and that Congress nowhere gave private plaintiffs the ability to enforce § 233. Filing 199 at 3. Valdez argues that in response to the Court's dismissal of Dr. Kader's Crossclaim, Dr. Kader could have sought certification for interlocutory appeal pursuant to Federal Rule of Civil Procedure 54(b), but he did not. Filing 199 at 2; *see also* Filing 199 at 3–5 (amplifying these arguments). Instead, Valdez contends, Dr. Kader waited until the United States was no longer a party to this action—and thus could not respond—to mount a collateral attack on the dismissal order. Filing 199 at 2.

14

In reply, Dr. Kader asserts that his Motion is not a "collateral attack" on the Court's dismissal order but a request that the Court determine in the first instance whether Dr. Kader is entitled to FSHCAA and FTCA immunity in the underlying lawsuit. Filing 205 at 1. Dr. Kader argues that he has continuously asserted that he is entitled to immunity in this lawsuit. Filing 205 at 1. It appears to the Court that Dr. Kader is referring to his request to the United States for a § 233 "scoping determination" after Valdez's suit was filed in state court and to his affirmative defenses asserting immunity in his Answer eventually filed in this Court.

Dr. Kader asserts further that under the unambiguous language of *Hui v. Castaneda*, 559 U.S. 799 (2010), his Motion is ripe for adjudication. Filing 205 at 2. Dr. Kader argues that Valdez's argument that this Motion is not the proper vehicle to seek a judicial ruling on immunity cannot be squared with the decision in *Hui.* Filing 205 at 2. Dr. Kader argues that he has cited decisions interpreting *Hui* to permit a defendant to show he is entitled to immunity under the FSHCAA and the FTCA by motion, even if the Attorney General or its designee had made a negative scope determination. Filing 205 at 3–4. He contends that Valdez's reliance on other decisions is misplaced. Filing 205 at 5. Dr. Kader argues that it is equally telling that his Motion does not seek review of the Court's prior decision and does not seek an order vacating, reversing, or modifying the Court's determination of lack of subject-matter jurisdiction over his Crossclaim. Filing 205 at 7. As he points out, the Court's prior decision never reached the merits of the immunity question, but that is the issue that he now raises. Filing 205 at 7.

As the Supreme Court has explained, "When a challenge to an order takes place in a separate 'proceeding that has an independent purpose,' such as a later criminal prosecution, it is a 'collateral attack.'" *United States v. Palomar-Santiago*, 593 U.S. 321, 328 (2021) (quoting

Black's Law Dictionary 261 (6th ed. 1990)). An earlier Supreme Court decision cites a later edition of Black's Law Dictionary to explain the meaning of "collateral attack," as follows:

> A "collateral attack" is "[a]n attack on a judgment in a proceeding *other than a direct appeal*." Black's Law Dictionary 298 (9th ed.2009) (emphasis added); *cf.* Wash. Rev.Code § 10.73.090(2) (2008) (defining "collateral attack" as "any form of post-conviction relief other than a direct appeal"). This usage buttresses the conclusion that "collateral review" means a form of review that is not part of the direct appeal process.

*Wall v. Kholi*, 562 U.S. 545, 552 (2011). Thus, to the extent that Dr. Kader's Motion attacks the Court's prior order dismissing his Crossclaim for lack of subject-matter jurisdiction other than by direct appeal, it would be a "collateral attack." *Id.*

That is not what Dr. Kader's Motion does, however. It is not an attack on the Court's prior order dismissing his Crossclaim at all. It does not seek reversal—or even reconsideration—of any part of that prior order. *See generally* Filing 182; Filing 187. It makes no attempt to establish that the Court does in fact have subject-matter jurisdiction over his Crossclaim. *See generally* Filing 182; Filing 187. Moreover, the Court's prior order stated that while the parties contested whether sovereign immunity barred Dr. Kader's Crossclaim, "the Court concludes that it lacks subject matter jurisdiction due to Dr. Kader's failure to identify a private cause of action against the United States," so that the Court never reached the question of sovereign immunity. Filing 159 at 6. Still more specifically, the Court explained that what was then before it was "strictly a challenge to subject matter jurisdiction," so the Court did not consider the merits of Dr. Kader's Crossclaim. Filing 159 at 6. The Court then made clear that its conclusion that it lacked subject-matter jurisdiction "is not tantamount to holding that individuals in Dr. Kader's position are entirely without a remedy; to the contrary, the Court expresses no opinion on that

16

matter." Filing 159 at 6. The Court then observed, "Whether any other provision of law authorizes such an action is not a question presently before the Court." Filing 159 at 7.

Instead of a collateral attack on the Court's prior dismissal of Dr. Kader's Crossclaim, Dr. Kader's present Motion is an attempt to rely on what this Court called "other provision[s] of law" as authorizing his assertion that he is entitled to immunity under the FSHCAA and the FTCA. The "other provision[s] of law" he relies on are the rules of evidence and procedure as identified in the Supreme Court's decision in *Hui*. Filing 187 at 10–11. Whether the decision in *Hui* authorizes his present attempt to invoke FSCHAA and FTCA immunity is entirely different from his attempt to enforce 42 U.S.C. § 233 through a private cause of action against the United States in his Crossclaim. The Court will reach the question that Dr. Kader's Motion now poses below.

### b. Dr. Kader's Motion Does Not Seek Review of the Attorney General's Decision Under § 233

Valdez also contends that the Attorney General's decision on § 233 immunity—by the Attorney General's designee the United States Attorney for the District of Nebraska—is not reviewable in this matter. Filing 199 at 5. Valdez argues that Dr. Kader could have sought a writ of mandamus requiring the United States to defend and indemnify him, or he could have brought a separate action under the Administrative Procedure Act (APA) to challenge the United States Attorney's denial of certification deeming him a PHS employee entitled to substitution of the United States in his place. Filing 199 at 2, 5–6. Valdez points out that Dr. Kader did neither. Filing 199 at 2. Valdez goes on to argue that Congress did not intend for the Government's forcible substitution under § 233(a). Filing 199 at 6. However, the Court finds that this argument goes to the merits of Dr. Kader's present Motion not to whether his present Motion is an

17

improper attempt to review the Attorney General's § 233 immunity decision. Valdez then argues that judicial review of § 233 immunity denials by the Attorney General is very limited even where the Attorney General makes a mistake. Filing 199 at 7. Valdez also argues that Dr. Kader has not cited any decision involving non-APA review of the Attorney General's denial of FTCA immunity in the underlying case and after the court had determined that it lacked subject-matter jurisdiction. Filing 199 at 8. The Court notes that these arguments assume that Dr. Kader's present Motion seeks judicial review of the Attorney General's decision.

Dr. Kader's reply is that he is not attacking or seeking review of the Attorney General's § 233 decision. Filing 205 at 10. Instead, he reiterates that what he seeks is a determination by the Court in the first instance of his immunity status pursuant to the ordinary rules of evidence and procedure—independent of the Attorney General's decision—as permitted in *Hui*. Filing 205 at 10.

Again, the Court concludes that Valdez's arguments are based on a misconception of the nature of Dr. Kader's present Motion. His Motion is no more an attempt to obtain judicial review of the Attorney General's decision via an impermissible means than it is a collateral attack on the Court's determination that it lacked subject-matter jurisdiction over Dr. Kader's Crossclaim. As Dr. Kader explains,

> Because the Attorney General has refused to certify Dr. Kader and defend him in this matter, Dr. Kader must now demonstrate to this Court that Dr. Kader is a qualified employee or contractor of Public Health Service and entitled to immunity under 42 U.S.C. § 233 and similarly the protections of the Federal Tort Claims Act.

Filing 187 at 2. Dr. Kader does not seek judicial review of the Attorney General's decision at all—even though he points to reasons that he believes the Court's determination should be

18

different from the Attorney General's. *See, e.g.*, Filing 187 at 11–13 (arguing that directing payment to his corporation did not take outside the scope of his contract with CAPWN or negate his § 233 immunity). Again, Dr. Kader relies on *Hui* as authorizing the Court's separate and independent determination. Filing 187 at 10–11. Whether *Hui* authorizes the Court's independent determination on Dr. Kader's § 233 immunity is a matter that Court will properly consider below.

### B. Standards for Summary Judgment

Dr. Kader' Motion, at least in the part on which the Court will focus, *see* § II.A.1., is for summary judgment on his affirmative defenses of § 233 immunity. Federal Rule of Civil Procedure 56(a) provides, "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A factual dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Liberty Ins. Corp. v. HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) ("An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." (quotations omitted)). "The court determines materiality [of facts] from the substantive law governing the claim"; thus, only "[d]isputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W.*

*Contracting, LLC*, 76 F.4th 753, 757 (8th Cir. 2023) (quoting *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998)).

Both the moving and the non-moving party must support their assertions about the presence or absence of genuine factual disputes "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, the parties otherwise bear different burdens at summary judgment.

"The movant has the initial burden of establishing the basis for the motion by identifying 'those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Jones v. Wellpath*, LLC, 77 F.4th 658, 662 (8th Cir. 2023) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up)). "[T]he moving party may discharge its burden by 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'" *Washington v. City of St. Louis, Missouri*, 84 F.4th 770, 773 (8th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and citing Fed. R. Civ. P. 56(a)). "The movant is entitled to judgment as a matter of law 'when the [non-moving party] has failed to make a sufficient showing of the existence of an essential element of [its] case.'" *Whitworth v. Kling*, 90 F.4th 1215, 1216 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)).

In response to a motion for summary judgment, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Jones*, 77 F.4th at

20

662–63 (quoting *Torgerson*, 643 F.3d at 1042). Even though a "party's own testimony is often self-serving," that alone is not grounds for disregarding it entirely as the basis for a genuine issue of material fact. *Hall v. Higgins*, 77 F.4th 1171, 1182 (8th Cir. 2023) (citing *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013)). On the other hand, "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Jones*, 77 F.4th at 663 (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)). Similarly, "[t]o create a genuine dispute of fact, 'the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Johnson v. Midwest Div. - RBH, LLC*, 88 F.4th 731, 736 (8th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

In deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[A]t summary judgment, it is not the role of the district court to weigh competing evidence or 'attempt to discern the truth of any factual issue.'" *Hall*, 77 F.4th at 1182 (quoting *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008)). "Genuine disputes of material fact are for a factfinder to resolve." *Liberty Ins. Corp.*, 87 F.4th at 889. Instead, "[s]ummary judgment is available when there is 'no genuine issue of material fact' and 'the evidence, viewed in a light most favorable to the nonmoving party, shows . . . the [moving party] is entitled to judgment as a matter of law.'" *Liberty Ins. Corp.*, 87 F.4th at 888 (quoting *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020)); *Nieters v. Holtan*, 83 F.4th 1099, 1105 (8th Cir. 2023) ("Summary judgment is proper if, after viewing the evidence and drawing all reasonable

inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute [as to] those facts." *Johnson*, 88 F.4th at 736 (quoting *Torgerson*, 643 F.3d at 1042).

### C. FSHCAA Immunity

#### 1. The FSHCAA Immunity Scheme

The governing law here first involves 42 U.S.C. § 233(a), which concerns lawsuits against U.S. Public Health Service (PHS) personnel. *See Greater St. Louis Constr. Laborers Welfare Fund*, 76 F.4th at 757 ("The court determines materiality [of facts] from the substantive law governing the claim"; thus, only "[d]isputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." (quoting *Liebe*, 157 F.3d at 578)). Section 233(a) of the Federally Supported Health Centers Assistance Act (FSHCAA), "extends immunity under the FTCA to federally funded community health centers that are deemed to be Public Health Service ('PHS') employees by the United States Department of Health and Human Services." *Hale v. ARcare, Inc.*, No. 3:22-CV-00117-BSM, 2024 WL 1016361, at *1 (E.D. Ark. Mar. 8, 2024) (citing 42 U.S.C. § 233(g)). As the Supreme Court explained further,

> When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States "exclusive of any other civil action or proceeding" for any personal injury caused by a PHS officer or employee performing a medical or related function "while acting within the scope of his office or employment."

*Hui v. Castaneda*, 559 U.S. 799, 801–02 (2010).

Section 233(a), entitled "Exclusiveness of remedy," provides as follows:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a). The Supreme Court explained this provision as follows:

Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. By its terms, § 233(a) limits recovery for such conduct to suits against the United States. The breadth of the words "exclusive" and "any" supports this reading, as does the provision's inclusive reference to all civil proceedings arising out of "the same subject-matter." We have previously cited § 233(a) to support the contention that "Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." *Carlson [v. Green]*, 446 U.S. [14,] 20, 100 S.Ct. 1468 [(1980)]. The meaning of § 233(a) has become no less explicit since we last made that observation.

*Hui*, 559 U.S. at 806.

Additional provisions of § 233 are also relevant here. Subsection 233(b) provides in pertinent part, "The Attorney General shall defend any civil action or proceeding brought in any court against any person referred to in subsection (a) of this section (or his estate) for any such damage or injury." 42 U.S.C. § 233(b). Subsection 233(c) provides in pertinent part,

Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto.

42 U.S.C. § 233(c). Subsection 233(g) concerns "entities deemed Public Health Service employees." 42 U.S.C. § 233(g). Subsection 233(g)(1)(A) provides in pertinent part,

> [A]n entity described in paragraph (4), and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner (subject to paragraph (5)), shall be deemed to be an employee of the Public Health Service for a calendar year that begins during a fiscal year for which a transfer was made under subsection (k)(3) (subject to paragraph (3)). The remedy against the United States for an entity described in paragraph (4) and any officer, governing board member, employee, or contractor (subject to paragraph (5)) of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to subsection (a).

42 U.S.C. § 233(g)(1)(A). Paragraphs (4) and (5) of § 233(g) referred to in § 233(g)(1)(A) define the entities and individuals deemed to be employees of the PHS as follows:

> (4) An entity described in this paragraph is a public or non-profit private entity receiving Federal funds under section 254b of this title.

> (5) For purposes of paragraph (1), an individual may be considered a contractor of an entity described in paragraph (4) only if--

>> (A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or

>> (B) in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

42 U.S.C. § 233(g)(4)–(5). Paragraph (B) of § 233(g)(1) states that deeming as a PHS employee applies to the following services:

> The deeming of any entity or officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service for purposes of this section shall apply with respect to services provided--

>> (i) to all patients of the entity[.]

24

42 U.S.C. § 233(g)(1)(B).

Subdivisions 233(g)(1)(E) and (F) state the timing and effect of deeming by the Secretary

as follows:

> (E) The Secretary shall make a determination of whether an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section within 30 days after the receipt of an application under subparagraph (D). The determination of the Secretary that an entity or an officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section shall apply for the period specified by the Secretary under subparagraph (A).

> (F) Once the Secretary makes a determination that an entity or an officer, governing board member, employee, or contractor of an entity is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding.

42 U.S.C. § 233(g)(1)(E), (F).

With this statutory scheme in mind, the Court turns next to the parties' dispute about the

Court's ability to determine whether a person or entity has § 233 immunity. The parties dispute

whether the Court has such power, at least in the present context of a Motion for Summary

Judgment.

### 2. *The Court's Power to Determine § 233 Immunity*

#### a. The Parties' Arguments

As explained above, Valdez argues that Dr. Kader could have filed either a petition for a

writ of mandamus requiring the United States to substitute itself for him or an action under the

Administrative Procedure Act (APA) to challenge the United States Attorney's denial of his

request for substitution and indemnity, but Dr. Kader did neither. Filing 199 at 2. Valdez

describes Dr. Kader's attempt to secure FTCA immunity via his present Motion as "novel,"

"unusual," but "not supportable." Filing 199 at 5. Valdez argues that Congress did not intend for the courts to force substitution of the United States for a defendant under § 233(a). Filing 199 at 6.

In reply, Dr. Kader argues that the Supreme Court's decision in *Hui v. Castaneda*, 559 U.S. 799 (2010), provides a procedural mechanism for him to make an independent showing of entitlement to immunity. Filing 205 at 10. He argues that although an APA action is possible, there is consistent authority that a court of competent jurisdiction can apply *Hui* and appropriately ascertain a litigant's FTCA immunity status under § 233 without the need for additional lawsuits or claims. Filing 205 at 10.

> b. *Hui v. Castaneda* and Its Progeny Permit Courts to Make § 233 Immunity Determinations

In *Hui*, the respondents argued that to be able to invoke § 233 immunity, an employee or contractor "must rely on the FTCA's scope certification procedure, set forth in [28 U.S.C.] § 2679(d)." 559 U.S. at 810. The Supreme Court explained the FTCA's "scope certification procedure" as follows:

> Under the FTCA, "certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose" transforms an action against an individual federal employee into one against the United States.

*Hui*, 559 U.S. at 810 (quoting 28 U.S.C. § 2679(d)(1)).

The Supreme Court rejected the argument that such a "scope certification" by the Attorney General was required to invoke § 233 immunity, however. *Id.* at 811. The Supreme Court explained,

> We agree with petitioners that there is no reason to think that scope certification by the Attorney General is a prerequisite to immunity under § 233(a). To be sure,

that immunity is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof pursuant to the ordinary rules of evidence and procedure. As petitioners observe, proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period. See Reply Brief for Petitioner Hui 6–7, and n. 1. Thus, while scope certification may provide a convenient mechanism for establishing that the alleged misconduct occurred within the scope of the employee's duties, the procedure authorized by § 2679(d) is not necessary to effect substitution of the United States. Finally, that the FTCA's scope certification procedure [under § 2679(d)] was enacted almost two decades after § 233(a) confirms that Congress did not intend to make that procedure the exclusive means for PHS personnel to invoke the official immunity provided by § 233(a).

*Hui*, 559 U.S. at 811. Thus, *Hui* provides a procedure for a court to make the key "scope of employment" determination required for § 233 immunity to be applicable: In such a procedure, "a defendant may make [the necessary] proof pursuant to the ordinary rules of evidence and procedure" independent of a "scope of employment" determination by the Attorney General. *Id.*

Similarly, there is no reason to think that a "deeming determination" by the Secretary or the Attorney General under § 233(g)(1)(E) and (F) is a prerequisite to immunity under § 233(a). *Cf. id.* (reaching this conclusion as to a "scoping determination"). Those provisions of § 233(g)(1)—set out in their entirety in § II.C. above—require the Secretary to make a determination of whether an individual or an entity "is deemed to be an employee of the [PHS]," 42 U.S.C. § 233(g)(1)(E), and once the Secretary determines that the person or entity is "deemed" to be a PHS employee, that determination is binding on the parties to the underlying litigation, 42 U.S.C. § 233(g)(1)(F). The Court notes that § 233(g)(1)(F) states only that the Secretary's determination that an employee or contractor is deemed to be an employee of PHS is final and binding on the parties to the underlying civil action or proceeding. 42 U.S.C. § 233(g)(1)(F). However, that provision does not make the Secretary's contrary determination—

27

that an employee or contractor is not deemed to be an employee of PHS—binding on anyone. Nothing in the text of either § 233(g)(1)(E) or § 233(g)(1)(F) suggests that the Secretary has the exclusive power to make a "deeming" determination or even that such a "deeming" determination is a prerequisite to immunity. To be sure, § 233 immunity is contingent upon the alleged misconduct having been done by a defendant deemed a PHS employee, but a defendant may likewise make that proof pursuant to the ordinary rules of evidence and procedure. *Cf. Hui*, 559 U.S. at 811 (reaching this same conclusion as to a "scoping determination").

Valdez asserts that *Hui* is not controlling because it "is limited in its application." Filing 199 at 12. Valdez amplifies this argument as follows:

> *Hui* did not address circumstances other than the United States seeking to effectuate its own substitution in a federal court action governed by 42 U.S.C. § 233. *Hui* held only that the absence of a formal "scope certification" procedure did not supervene the ordinary rules of evidence and procedure through which (1) an employee might prove his immunity, or (2) the United States might effectuate its own substitution via intervention.
>
> KADER does not have a "formal scope certification," because he violated the Federal Tort Claims Act Policy Manual by directing that payments be made to his corporation, when the Manual explicitly prohibits extending FTCA coverage to corporations. That he now says "but I can still be immune" falls into the category of "if you're explaining, you're losing." *Hui* does not stand for the proposition that KADER can both serve his financial interests with a corporate structure and enjoy FTCA coverage, when the Manual says otherwise.

Filing 199 at 12–13.

This argument is incorrect. *Hui* did not address circumstances in which the United States was seeking to effectuate its own substitution in a federal court action governed by § 233 as Valdez suggests. The main question presented in *Hui* was whether § 233(a) precluded *Bivens* actions against PHS officers and employees for harms arising out of conduct in the scope of their employment. 559 U.S. at 801–02. However, the issue in *Hui* of interest here is that the PHS

officers and employees moved to dismiss the claims against them contending that they were immune to *Bivens* claims under § 233(a). *Id.* at 804. There is no reference in *Hui* to the United States seeking to effectuate its own substitution for the PHS employees; the PHS employees attempted to raise § 233 immunity in the first instance. *Id.* The Supreme Court explained that the PHS employees' invocation of § 233 immunity meant that a key question in the case was whether that provision gave them immunity. *Id.* at 808. In answering that question, the Supreme Court concluded that there was no reason to think that scope certification by the Attorney General was a prerequisite to § 233 immunity and that a PHS employee "may make that proof pursuant to the ordinary rules of evidence and procedure." *Id.* at 811. Thus, *Hui* makes clear that even without a scope certification by the Attorney General, a PHS employee can say "but I can still be immune." Indeed, Valdez undercuts his own argument by asserting that *Hui* held that the absence of a formal "scope certification" procedure did not supervene the ordinary rules of evidence and procedure through which an employee might prove his immunity. Filing 199 at 12.

Dr. Kader argues that there are also decisions in which other courts have interpreted *Hui* to permit a defendant to show he is entitled to FSHCAA and FTCA immunity under § 233 by motion, even in the face of a negative determination by the Attorney General. Filing 205 at 2–3. One such decision is *Hale v. ARcare, Inc.*, No. 3:22-CV-00117-BSM, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024). The decision in *Hale* was in a putative class action by former patients of ARcare, a federally funded health clinic, for negligence or recklessness in maintaining records after a breach of the clinic's computer system. 2024 WL 1016361, at *1. The case was before the court on ARcare's motion to substitute the United States after the United States declined ARcare's request that the United States intervene and substitute itself as the defendant pursuant

to § 233. *Id.* The court recognized that the Eighth Circuit had not yet addressed the issue of the authority of a court to make a § 233 immunity determination and force the substitution of the United States. *Id.* at *2. Nevertheless, the court explained,

> Courts have repeatedly "rejected the argument that they lack authority to assess immunity under § 233 and substitute the United States as a defendant over its objection." *Moretti v. Letty Owings Ctr.*, No. 3:21-CV-1525-SI, 2023 WL 6216279, at *5 (D. Or. Sept. 25, 2023). *See also Kezer v. Penobscot Cmty. Health Ctr.*, No. 1:15-cv-00225-JAW, 2019 BL 141566, at *9 (D. Me. Mar. 21, 2019) ("the lack of a specific mechanism for substitution in § 233 does not prohibit the Court from ordering substitution as an exercise of its limited jurisdictional authority"); *C. K. v. United States*, No. 19-CV-2492 TWR (RBB), 2020 WL 6684921, at *4 (S.D. Cal. Nov. 12, 2020) (district court has the ability to effect substitution of the United States if necessary when § 233 immunity applies).

*Hale*, 2024 WL 1016361, at *2. Thus, *Hale* made the determination on § 233 immunity on a motion in the negligence action itself, which is the same footing on which Dr. Kader seeks such a determination in this action. However, *Hale* did not rely directly on *Hui* for its conclusion that courts could determine immunity under § 233.

One of the decisions cited in *Hale* and cited by Dr. Kader did rely squarely on *Hui* as the basis for a court's power to determine § 233 immunity. In *Moretti v. Letty Owings Ctr.*, No. 3:21-CV-1525-SI, 2023 WL 6216279 (D. Or. Sept. 25, 2023), as in *Hale*, the case was before the court on a motion by purportedly immune defendants to substitute the United States as the sole defendant under the FSHCAA and the FTCA made in a negligence action against them as employees of a federally supported health center. 2023 WL 6216279, at *1. Again, this is essentially the same footing as the case now before this Court. In *Moretti*, the court explained,

> [C]ourts repeatedly have rejected the argument that they lack authority to assess immunity under § 233 and substitute the United States as a defendant over its objection. See ECF 46 at 8-9 (citing cases). As explained by the Southern District of California:

30

Mixed in with its analysis of Section 233(l) is the United States' assertion that the Court lacks the authority to assess the applicability of Section 233(a)'s immunity provisions to the facts of this case. The United States fails to cite a single case to support that argument. To the contrary, in *Hui v. Castaneda*, the United States Supreme Court found that although immunity under Section 233(a) is "contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, ... *a defendant may make that proof pursuant to the ordinary rules of evidence and procedure*." 559 U.S. at 811 (emphasis added). If, as the United States claims, the Court does not have the ability to evaluate the applicability of Section 233(a)'s immunity provisions, then to whom would a defendant "make that proof pursuant to the ordinary rules of evidence and procedure?" The Court finds *Hui* to be controlling on the issue of the Court's ability to determine the applicability of Section 233(a)'s immunity protections and, if necessary, to "effect substitution of the United States." 559 U.S. at 811. That the Court must do so "based on the ordinary rules of evidence and procedure" is made simple in this case because, as set forth below, the operative facts are not in dispute.

*C. K. v. United States*, 2020 WL 6684921, at *4 (S.D. Cal. Nov. 12, 2020) (citations and footnote omitted) (alteration and emphasis in original); *see also Ford v. Sandhills Med. Found., Inc.*, 2022 WL 1810614, at *4 (D.S.C. June 2, 2022) (concluding that the defendant health entity "is entitled to immunity from suit and to substitution of the United States as the defendant if this suit concerns actions or omissions within the scope of its employment as a deemed federal employee" and that the procedure is appropriate under § 233(a)); *Kezer v. Penobscot Cmty. Health Ctr.*, 2019 BL 141566, at *9 (D. Me. Mar. 21, 2019) (analyzing the relevant statutes and caselaw and concluding that "the lack of a specific mechanism for substitution in § 233 does not prohibit the Court from ordering substitution as an exercise of its limited jurisdictional authority").

*Moretti*, 2023 WL 6216279, at *5. In *Moretti*, the court also discussed an unpublished decision of the Third Circuit Court of Appeals concluding that § 233 must permit a district court to make a determination of immunity and substitute the United States as a defendant under an implied grant of subject-matter jurisdiction or the purpose of the statute could be defeated. *Id.* (citing *Est. of Campbell by Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113, 116-17 (3d Cir. 2018)).

The court in *Moretti* then concluded as follows:

The Court rejects the government's arguments that the Court lacks the ability to consider the Center's motion or that the Court has no legal standards by which to consider the motion. The Court evaluates immunity as instructed by the Supreme Court—"based on the ordinary rules of evidence and procedure." *Hui*, 559 U.S. at 811. The Court uses those ordinary rules to determine whether the challenged conduct meets the requirements of 42 U.S.C. § 233(a) that the conduct was (1) "the performance of medical, surgical, dental, or related functions" (2) by an employee "acting within the scope of his office or employment." Additionally, to be eligible for immunity, the challenged conduct must relate to the grant supported activity on which the Center received its deemed status. *See* 42 C.F.R. § 6.6(d).

*Moretti*, 2023 WL 6216279, at *6.

The Court finds *Hui* to be controlling and *Hale*, *Moretti*, and the cases those decisions cite—including specifically *C.K.*—to be persuasive on the question of the Court's ability to make a § 233 immunity determination on Dr. Kader's Motion in these proceedings. In *Hui*, the Supreme Court made clear that a "scope certification" by the Attorney General was not required to invoke § 233 immunity. 559 U.S. at 811. The Supreme Court likewise set out a procedure for a court to make such a determination on a defendant's independent assertion, that is, that "a defendant may make that proof pursuant to the ordinary rules of evidence and procedure." 559 U.S. at 811. One such procedural rule is Federal Rule of Civil Procedure 56, which provides, "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Here, Dr. Kader has raised the issue of his immunity under § 233 as an affirmative defense, as well as in his dismissed Crossclaim. Filing 53 at 6–7 (¶¶ 62–64, 69). He may properly seek summary judgment on that affirmative defense under Fed. R. Civ. P. 56(a) and *Hui*.

For his part, Valdez cites *Hinds v. Cmty. Med. Ctrs., Inc.*, No. 2:22-CV-01207-JAM-AC, 2022 WL 17555525 (E.D. Cal. Dec. 9, 2022), for the proposition that "Congress did not intend

for the Government's forceful substitution under § 233(a)." Filing 199 at 6 (quoting *Hinds*, 2022 WL 17555525, at \*3). In *Hinds*, the court observed that 28 U.S.C. § 2679(d)(3) of the Westfall Act provides that a federal employee may petition a court to determine whether the employee was acting within the scope of his employment, but § 233 was not modified to include similar language, so that § 233 did not provide for an employee to petition the court for a determination of FTCA immunity under the FSHCAA. *Hinds*, 2022 WL 17555525, at \*3. The court added,

> Moreover, the Court's conclusion is supported by the fact the Westfall Act requires the United States to be served according to Rule 4 of the Federal Rules of Civil Procedure before its substitution occurs. See § 2679(d)(3). Section 233, in comparison, does not. Thus, if the court allowed CMC's § 233 interpretation to prevail, courts could force the United States' participation in lawsuits where jurisdiction over the Government is not established—an outcome that flies in the face of due process and will not be condoned by this Court.

*Hinds*, 2022 WL 17555525, at \*3.

This Court does not find *Hinds* persuasive. First, the Supreme Court held in *Hui* that there is a procedure for a court rather than the Attorney General to determine whether a person or entity is entitled to § 233 immunity using the ordinary rules of evidence and procedure. *Hui*, 559 U.S. at 811. Thus, *Hinds* is out of step with controlling precedent from the Supreme Court. Furthermore, *Hinds* overlooked the requirement in § 233(b) that a person identified in § 233(a) must notify the Attorney General and provide all pleadings in the lawsuit. *See* 42 U.S.C. § 233(b) (stating in part, "Any such person [referred to in § 233(a)] against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the Secretary to receive such papers and such person shall promptly furnish copies of the pleading and process therein to

the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary."). Thus, the due process concern raised by the court in *Hinds* is unfounded where § 233(b) requires notice to the United States.

### 3. The § 233 Immunity Determination

Because the Court has the power to make a § 233 immunity determination in this case, the Court turns next to that determination. The Court begins its consideration of that issue with a summary of the parties' arguments.

#### a. The Parties' Arguments

Dr. Kader contends that the undisputed facts demonstrate that he is entitled to § 233 immunity, so Valdez cannot maintain this lawsuit against him individually. Filing 187 at 4. He contends that he was deemed to be a PHS employee at the time he treated Valdez by virtue of his 2016 PSA with CAPWN. Filing 187 at 5. He points to undisputed evidence that CAPWN was a FQHC that received funds pursuant to 42 U.S.C. § 254b and had been deemed eligible for FTCA malpractice coverage since at least 2005. Filing 187 at 5. He also points to undisputed evidence that HRSA approved all CAPWN's applications for CAPWN and its qualified staff to be deemed PHS employees for purposes of § 233, including the application for 2020 encompassing the time Dr. Kader was treating Valdez. Filing 187 at 5.

Dr. Kader argues further that he meets the qualifications of an individual physician who can be considered a contractor of a covered entity under 42 U.S.C. § 233(g)(5). Filing 187 at 6–7. He also points out that he understood from provisions of his 2016 PSA that he was deemed an employee of PHS for the treatment of patients and the provision of services pursuant to the PSA. Filing 187 at 8. Dr. Kader argues that he can also establish beyond dispute that he was acting

34

within the scope of his 2016 PSA with CAPWN when he treated Valdez because a "scoping determination" by the Attorney General is not a prerequisite to § 233 immunity under *Hui*. Filing 187 at 9–10. He contends that "scope of employment" under § 233 is determined by the law of the place. Filing 187 at 13. Dr. Kader argues that he was acting within the scope of his employment under Nebraska law because he treated Valdez within the time and space limits of his 2016 PSA at Monument in furtherance of caring for a patient of CAPWN and that he did not separately bill for or receive payment for such services. Filing 187 at 14. Dr. Kader argues that the fact that he directed payment under his 2016 PSA to his corporation did not take him outside of the scope of his contract with CAPWN. Filing 187 at 11. He argues that he was still the individual contracting with CAPWN and that nothing in § 233(g)(5) or interpretive case law suggests that a provider is not an individual contractor if he directs payment to a corporation. Filing 187 at 11. He contends that a different suggestion in the FTCA Health Center Policy Manual is not controlling because it is not in mandatory terms. Filing 187 at 11. Instead, he argues that under both the language of § 233 and the Policy Manual, FTCA coverage is only barred when the contract is between the covered entity and the provider's corporation. Filing 187 at 12. In contrast to the situation under his 2016 PSA, Dr. Kader acknowledges that in 2021, after the period of Valdez's treatment, the 2021 PSA between his corporation as "Provider" and CAPWN as "Health Center" expressly stated that "Provider" did not have FTCA immunity. Filing 187 at 9.

In response, Valdez argues that there are consequences to Dr. Kader's financial decision to have payment under the 2016 PSA directed to his corporation. Filing 199 at 8. Valdez argues that the Policy Manual explains that such a financial arrangement takes the situation out of the

scope of § 233 coverage. Filing 199 at 8. Valdez argues that Dr. Kader directed CAPWN to pay his corporation instead of himself without revising the 2016 PSA to reflect that Dr. Kader was now practicing medicine under his own corporate structure. Filing 199 at 9. Valdez asserts that the Acting United States Attorney found that directing payment to a corporation rather than an individual meant that Dr. Kader was not a covered individual within the meaning of § 233(g)(5), so he was not entitled to § 233 immunity. Filing 199 at 10. Also, as mentioned above, Valdez argues that Dr. Kader lacks a "formal scope certification" because he violated the Policy Manual when he directed that payments be made to his corporation, contrary to what Valdez calls "explicit" prohibition in the Manual on extending FTCA coverage to corporations. Filing 199 at 13. Valdez argues that *Hui* does not stand for the proposition that Dr. Kader can both serve his financial interests with a corporate structure and enjoy FTCA coverage when the Manual says otherwise. Filing 199 at 13.

The essence of Dr. Kader's reply is that Valdez fails to set forth any genuine issue of material fact precluding a determination that he is entitled to § 233 immunity at this time. Filing 205 at 11–17.

> b.  The 2016 PSA Was Between CAPWN and Dr. Kader Individually for Qualifying Services

Valdez alleges and Dr. Kader does not dispute that the United States Attorney responded to Dr. Kader's request that the United States substitute for him in this case as follows:

> On or about August 12, 2022, the United States Attorney for the District of Nebraska denied Dr. Kader's request. He explained that Dr. Kader was not covered by the FSHCAA because, despite having purported to contract personally with CAPWN, payment for Dr. Kader's services was made to a professional corporation, LK Health Services, P.C., an arrangement that took Dr. Kader outside of the limited statutory definition for covered contractors in 42 U.S.C. § 233(g)(5).

Filing 201 at 3 (¶ 12). Valdez purports to quote the August 12, 2022, response of the United States Attorney as stating the following:

> [Y]our requests cannot be accommodated given the payment arrangement that existed between Community Action Partnership of Western Nebraska and you. For the period of at least 2016-2020, you directed payment to a corporation (LK Health Services P.C.), and not an individual. This course of conduct means you are not a covered individual within the meaning of 42 U.S.C. 233(g)(5). Thus, as discussed above, the United States will not intervene in the lawsuit on your behalf or issue a scope of employee certification to you.

Filing 199 at 10. The parties have not identified where in the record the United States Attorney's August 12, 2022, response can be found.

More importantly, the Court is not persuaded that the language of § 233 somehow bars immunity for Dr. Kader because he directed payment pursuant to the 2016 PSA to his corporation. Instead, Dr. Kader was an "individual" properly "considered a contractor" of CAPWN. Section 233(g)(5) provides,

> (5) For purposes of paragraph (1), an individual may be considered a contractor of an entity described in paragraph (4) only if--
>
> > (A) the individual normally performs on average at least 32 ½ hours of service per week for the entity for the period of the contract; or
> >
> > (B) in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract, the individual is a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology.

42 U.S.C. § 233(g)(5). The provision is admittedly cast in terms of "an individual" who can be considered a contractor with no reference to any other entity. Thus far, the plain language of the statutory provision excludes a contractor that is not an "individual."

In defining that "individual," the first alternative in subdivision (A) refers to an individual who performs "32 ½ hours of service per week for the entity for the period of the contract." 42

U.S.C. § 233(g)(5)(A). That provision is irrelevant here, where it is undisputed that Dr. Kader worked less than 32 ½ hours per week for CAPWN under the 2016 PSA. Filing 186 at 3 (¶ 12) (undisputed statement that pursuant to the 2016 PSA, Dr. Kader agreed to provide services for two 9.5-hour clinical sessions per week at CAPWN's clinic). Even so, the alternate definition in subdivision (B) still begins with the number of hours of service, specifically, "in the case of an individual who normally performs an average of less than 32 ½ hours of services per week for the entity for the period of the contract." This subdivision then defines the "individual" as "a licensed or certified provider of services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology." 42 U.S.C. § 233(g)(5)(B). Thus, what defines the covered "individual" under alternative (B) is whether that individual performs the specified services not how they are paid or to whom payment under the contract is directed. Valdez and the United States rely on a requirement that the individual also be the recipient of payment that simply cannot be found in the statute, as a matter of statutory construction and plain meaning. *See Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc*., 9 F.4th 803, 806 (8th Cir. 2021) (describing the interpretation of a statute as "a quintessential matter of law" beginning with the text of the statute). Valdez cannot generate a genuine issue of material fact on Dr. Kader's immunity by engrafting requirements not found in the plain language of the statute.

Here, the 2016 PSA expressly identified the parties as Dr. Kader, an individual, identified as the "Physician," and CAPWN, identified as "Health Center." Filing 184 at 4. It also expressly identified "Physician" as the individual providing specified services under the contract, as follows:

38

> 1.1  <u>Services</u>. Physician agrees to furnish the full range of primary and preventive health care services provided by private practitioners specializing in family practice medicine ("Services") during two nine and one half-hour (9.5) clinical sessions per week at Health Center's Clinic, or by an alternative, mutually agreeable schedule determined by the Parties.

Filing 184 at 4. Thus, the 2016 PSA complies with the statute because it is a contract for an individual "Physician" to provide "services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology." 42 U.S.C. § 233(g)(5)(B). Valdez points to no blackletter rule of contract law that an entity that receives payment due one party to a contract necessarily becomes a party to that contract. To the contrary, in that situation, the payee remains a stranger to the contract. An employee's or contractor's direction that his compensation be direct-deposited into a bank account does not make the bank or any other signatory on the bank account a party to the employee's or contractor's contract with the employer. Furthermore, the 2016 PSA expressly stated that Dr. Kader would have FTCA coverage. It states in pertinent part, "Physician shall be covered under Health Center's FTCA coverage for professional errors, omissions, negligence, incompetence and malfeasance with limits of liability equal to that of other professionals" and that "Health Center will give Physician thirty (30) days' advance written notice of any material change in such coverage." *See* Filing 184 at 6; *see also* Filing 186 at 4 (¶ 15); Filing 201 at 4 (¶ 14) (quoting part of this provision); Filing 204 at 5 (¶ 14) (purporting to quote the same provision, but stating language not found in the 2016 PSA).

Perhaps for that reason, Valdez asserts that Dr. Kader's decision to have his pay under the 2016 PSA made to his corporation "violated" the following provision of the Policy Manual:

> To ensure FTCA coverage for contract providers, there should be a documented contractual relationship (i.e., a written contract for the provision of health

services) between the covered entity and the individual provider. In addition, compensation that arises from this contract, such as contracted wages, should be paid by the covered entity directly to the individual contract provider. A contract between a covered entity and a provider's corporation does not confer FTCA coverage on the provider. Services provided strictly pursuant to a contract between a covered entity and any corporation, including eponymous professional corporations (defined as a professional corporation to which one has given one's name, e.g., John Doe, LLC, and consisting of only one health care provider), are not covered under FSHCAA and the FTCA.

FEDERAL TORT CLAIMS ACT Health Center Policy Manual 6 (updated 7/21/2014) (Policy Manual) (available at https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policy-manual.pdf); Filing 199 at 13 (asserting Dr. Kader "violated the Federal Tort Claims Act Policy Manual by directing that payments be made to his corporation, when the Manual explicitly prohibits extending FTCA coverage to corporations."). This argument is also unpersuasive.

First, even accepting for the sake of argument that the Policy Manual has the force of law—and no such showing has been made—there are only two mandatory statements, both of which express exclusions, in the quoted provision from the Policy Manual. One is, "A contract between a covered entity and a provider's corporation does not confer FTCA coverage on the provider." Dr. Kader does not argue otherwise. Rather, he argues that the 2016 PSA is between himself, an individual provider, and CAPWN, and the Court agrees as a matter of law. The second mandatory statement is, "Services provided strictly pursuant to a contract between a covered entity and any corporation, including eponymous professional corporations . . . are not covered under FSHCAA and the FTCA." Again, Dr. Kader does not argue otherwise, because he asserts that his services were provided strictly pursuant to the 2016 PSA between CAPWN as a covered entity and himself as an individual provider. Again, the Court agrees with Dr. Kader that

40

as a matter of law services were provided strictly pursuant to a contract between CAPWN and Dr. Kader individually.

The other two sentences of the quotation above are merely hortatory or precatory but not mandatory because they use "should" not "must." *See* Black's Law Dictionary 1423 (11th ed. 2019) (defining "precatory" to mean (of words) requesting, recommending, or expressing a desire rather than a command"). The first says, "To ensure FTCA coverage for contract providers, there should be a documented contractual relationship (i.e., a written contract for the provision of health services) between the covered entity and the individual provider." Again, Dr. Kader does not argue otherwise; instead, he argues that there is such a written contract between CAPWN and himself identified as the "Physician" in the form of the 2016 PSA. The other hortatory or precatory statement is, "In addition, compensation that arises from this contract, such as contracted wages, should be paid by the covered entity directly to the individual contract provider." The Policy Manual cites no authority for such a suggestion. Certainly, it cannot be found in § 233. It is a suggestion—not a requirement—apparently made out of whole cloth by the authors of the Policy Manual. There is also no indication that this Policy Manual itself was subject to notice-and-comment requirements. *See* Policy Manual at 4–5. Indeed, the Policy Manual includes the following caution: "Please note, however, that when FTCA matters become the subject of litigation, the Department of Justice and the federal courts may assume significant roles in certifying or determining whether or not a given activity falls within the scope of employment, for purposes of FTCA coverage." *Id*. at 5. Thus, it follows that this Court has the authority to decline to read as mandatory a merely precatory or hortatory statement in the

Policy Manual suggesting that a contract should provide payment directly to the individual contractor for the contractor to meet the definition of § 233(g)(5)(B).

Thus, as a matter of law, the 2016 PSA was between Dr. Kader individually and CAPWN for the provision of qualifying services. Consequently, Dr. Kader falls within the statutory definition of an "individual" contractor under § 233(g)(5)(B) who may be entitled to § 233 immunity.

### c. Dr. Kader Is Properly "Deemed" an Employee of PHS

With Dr. Kader's "contractor" status resolved, the answer to the question of his "deeming" as an employee of PHS follows. As the Court concluded above in § II.C.2.b., there is no reason to think that a "deeming determination"—deeming a contractor to be a PHS employee—by the Secretary or the Attorney General under § 233(g)(1)(E) and (F) is a prerequisite to immunity under § 233(a). *Cf. Hui*, 559 U.S. at 811 (reaching this conclusion as to a "scoping determination"). Section 233 immunity is contingent upon the alleged misconduct having been done by a defendant deemed a PHS employee, but a defendant may likewise make that proof pursuant to the ordinary rules of evidence and procedure. *Cf. id.* (reaching this same conclusion as to a "scoping determination"). It is undisputed that since at least 2005, CAPWN has been a FQHC deemed eligible for FTCA malpractice coverage under the FSHCAA, 42 U.S.C. §§ 233(g)-(n), and CAPWN receives grant funds pursuant to 42 U.S.C. § 254b. Filing 186 at 2 (¶ 8). It is also undisputed that since at least 2005, and pursuant to the FSHCAA, CAPWN has submitted applications to the HRSA for CAPWN and for its qualified staff to be deemed as PHS employees for the purposes of 42 U.S.C. § 233. Filing 186 at 2–3 (¶ 9). There is also no dispute that since at least 2005, those applications have been approved by HRSA, which

deems CAPWN and qualified staff eligible for FTCA coverage. Filing 186 at 3 (¶ 9). These circumstances plus Dr. Kader's 2016 PSA make him a qualified "individual" contractor and means that he is deemed eligible for FTCA coverage as a qualified staff member of CAPWN.

> ### d. Dr. Kader Satisfies the Scope of Employment Requirements for § 233 Immunity

What remains is for the Court to determine, pursuant to *Hui*, whether Dr. Kader can make the necessary proof of his "scope of employment" to qualify for § 233 immunity "pursuant to the ordinary rules of evidence and procedure." *Hui*, 559 U.S. at 811. More specifically, to obtain summary judgment on his affirmative defense of § 233 immunity, Dr. Kader must show that there is no dispute "that the conduct [giving rise to Valdez's lawsuit] was (1) 'the performance of medical, surgical, dental, or related functions' (2) by an employee 'acting within the scope of his office or employment.'" *Moretti*, 2023 WL 6216279, at *6 (quoting 42 U.S.C. § 233(a)). "Additionally, to be eligible for immunity, the challenged conduct must relate to the grant supported activity on which the Center received its deemed status." *Id.* (citing 42 C.F.R. § 6.6(d)). Dr. Kader has made the required showing, while Valdez has failed to meet his burden to generate a genuine issue of material fact on any of these requirements. *See Jones*, 77 F.4th at 662–63 (stating the burdens on the movant and the nonmovant at summary judgment (quoting *Torgerson*, 643 F.3d at 1042)).

Here, the conduct giving rise to Valdez's lawsuit was the performance of medical or related functions. *Moretti*, 2023 WL 6216279, at *6 (stating this as the first element for immunity under 42 U.S.C. § 233(a)). According to Valdez's Complaint, Dr. Kader was employed by CAPWN to provide medical evaluation and treatment for residents of Monument. Filing 1 at 9 (¶¶ 4, 6). As the Court made clear above, Dr. Kader was actually a qualified

individual contractor providing such services. *See* Filing 184 at 4 (§ 1.1 of the 2016 PSA defining the "services" as "furnish[ing] the full range of primary and preventive health care services provided by private practitioners specializing in family practice medicine . . . at Health Center's Clinic. . . ."). Valdez then alleges that Dr. Kader evaluated and observed Valdez's condition and gave inadequate treatment instructions. Filing 1 at 12 (¶¶ 27–31). Thus, Valdez has expressly alleged circumstances establishing this requirement and he now cites no contrary evidence.

As to the second element of Dr. Kader's § 233 immunity defense, there is also no genuine issue of material fact that the medical services were provided "by an employee 'acting within the scope of his office or employment.'" *Moretti*, 2023 WL 6216279, at *6 (quoting 42 U.S.C. § 233(a)). Dr. Kader argues that "scope of employment" under § 233 is determined by the law of the place. Filing 187 at 13. He asserts that under Nebraska law, he acted within the course and scope of his employment because it is undisputed that his action was of the kind he was employed to perform, within the authorized time and space limits of the contract, and in furtherance of the employer's business. Filing 187 at 13–14. Valdez argues that the case Dr. Kader relies on did not hold that a federal contractor who loses FTCA coverage because he violated the Policy Manual can regain coverage by applying some state-law "scope of employment" test. Filing 199 at 13. Valdez's argument is unpersuasive not least because the Court concluded as a matter of law that Dr. Kader never lost FTCA coverage under the applicable statute.

It is well-settled under Eighth Circuit precedent that for purposes of FTCA coverage, "the federal employee must have been acting within the scope of his employment when the tort was

44

committed" as "governed by the law of the State where the alleged tort was committed." *See Doe v. United States*, 58 F.4th 955, 959 (8th Cir. 2023) (citing 28 U.S.C. § 1346(b)(1)); *Two Eagle v. United States*, 57 F.4th 616, 621 (8th Cir. 2023) (applying South Dakota law to the scope-of-employment issue pursuant to § 1364(b)(1)); *Blais v. United States*, 37 F.4th 502, 503 (8th Cir. 2022) ("Under the FTCA, the law of the place of the alleged tort governs the scope-of-employment question." (quoting *Brown v. Armstrong*, 949 F.2d 1007, 1012 n.7 (8th Cir. 1991), in turn citing *Williams v. United States*, 350 U.S. 857, 857 (1955))); *see also* 42 U.S.C. § 233(a) (incorporating the remedy under 28 U.S.C. § 1346(b)). In a case involving the Nebraska Political Subdivisions Tort Claims Act (PSTCA), a judge of this Court observed,

> "In determining whether conduct falls within an employee's scope of employment, the Nebraska Supreme Court has used the Restatement (Second) of Agency (1958) for guidance." *Pearce v. Werner Enters., Inc.*, 116 F. Supp. 3d 948, 953 (D. Neb. 2015). It provides:
>
>> (1) Conduct of a servant is within the scope of employment if, but only if:
>>
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master, and
>>
>> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Jaso v. Schlemat*, No. 4:19CV3106, 2020 WL 1914941, at *9–10 (D. Neb. Apr. 20, 2020) (quoting *Restatement (Second) Agency* § 228 (1958), and citing *Schicker v. Klenda*, No. 8:20-CV-02, 2020 WL 1043669, at *4 (D. Neb. Mar. 4, 2020)); *see also id.* at *10 (observing that the

standard is slightly different under the *Restatement (Third) of Agency*, § 7.07, but that the Nebraska Supreme Court has not yet adopted the *Restatement (Third)*).

Again, Valdez alleged that Dr. Kader was employed by (in fact, contracted with) CAPWN to provide the kind of services Valdez received from him. Filing 1 at 9 (¶¶ 4, 6); *Jaso, 2020 WL 1914941*, at *9. The Court concluded above that Dr. Kader was properly "deemed" a PHS employee at the time in 2020 when he provided those services to Valdez. *Jaso, 2020 WL 1914941*, at *10. Finally, Dr. Kader's provision of those services was "actuated, at least in part, by a purpose to serve the master," in this case, CAPWN. *Id.* Again, according to Valdez's Complaint, Dr. Kader was employed by CAPWN to provide medical evaluation and treatment for residents of Monument. Filing 1 at 9 (¶¶ 4, 6). Valdez also alleges that Dr. Kader took calls from Monument staff concerning Valdez's need for treatment prompting Dr. Kader to evaluate and observe Valdez and recommend treatment. Filing 1 at 12 (¶¶ 26–31). Valdez has pointed to nothing in the record suggesting that Dr. Kader provided treatment to Valdez for any reason other than to fulfill his 2016 PSA with CAPWN. On this record, no reasonable juror could find that Dr. Kader provided services to Valdez for any reason other than to serve CAPWN. *Liberty Ins. Corp.*, 87 F.4th at 888 ("A factual dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" (quoting *Anderson*, 477 U.S. at 248)).

Finally, there is also no genuine issue of material fact as to the last requirement that, "to be eligible for immunity, the challenged conduct must relate to the grant supported activity on which the Center received its deemed status." *Moretti*, 2023 WL 6216279, at *6 (citing 42 C.F.R. § 6.6(d)). The cited regulation states in pertinent part, "Only acts and omissions related to the grant-supported activity of entities are covered." 42 C.F.R. § 6.6(d). Here, the parties do not

dispute that CAPWN receives grant funds pursuant to 42 U.S.C. § 254b. Filing 186 at 2 (¶ 8). They also do not dispute that Dr. Kader provided medical care to Valdez pursuant to CAPWN's grant-based activity. Filing 186 at 3–4 (¶¶ 12–14).

Thus, there is no genuine issue of material fact that Dr. Kader was acting within the scope of his employment at the time he treated Valdez. Dr. Kader is entitled to summary judgment on his affirmative defense that he is entitled to § 233 immunity.

### III. CONCLUSION

As the Court explained in § II.A.1., if Dr. Kader is entitled to immunity under 42 U.S.C. § 233, there will be no reason to substitute the United States in his place. This is so, because any FTCA claim against him is barred by the two-year statute of limitations for FTCA claims, just as the FTCA claims against the United States in the place of Dr. Packard and CAPWN were barred by that statute of limitations. *See* Filing 173 at 2 (granting summary judgment in favor of the United States on the ground that Valdez's FTCA claims against it were time-barred). The record demonstrates beyond dispute that Dr. Kader is entitled to § 233 immunity. Thus, the proper disposition is summary judgment in favor of Dr. Kader on his affirmative defense of § 233 immunity from Valdez's claims against him.[4] Accordingly,

IT IS ORDERED that

1.     Dr. Kader's Motion to Substitute, or in the Alternative, Motion for Summary Judgment, Filing 182, is granted as to Dr. Kader's Motion for Summary Judgment, but it is denied as moot as to his Motion to Substitute;

---

[4] As the Court also observed in § II.A.1., whether Dr. Kader would have other recourse against the United States for indemnification is not properly before the Court where Dr. Kader's Crossclaim seeking such relief was dismissed for lack of subject-matter jurisdiction. Filing 159.

2.     Summary judgment is granted in favor of Dr. Kader on his affirmative defenses of immunity pursuant to 42 U.S.C. § 233 from Valdez's claims against him;

3.     This case shall proceed only on Valdez's claims against Scotts Bluff Operations, LLC.

Dated this 19th day of August, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge