IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

ISRAEL VALDEZ,

       Plaintiff,

vs.

SCOTTSBLUFF OPERATIONS LLC,
a Nebraska limited liability corporation
doing business as MONUMENT
REHABILITATION & CARE CENTER,
ABDEL KADER LAOUEL KADER,
M.D., and the UNITED STATES OF
AMERICA

       Defendants.

Case No.: 8:22-cv-00289

Appearing on behalf of:
Plaintiff Israel Valdez

**MOTION FOR ORDER TO
SHOW CAUSE**

Plaintiff, by and through counsel, moves this court for an Order to Show Cause as to why Third-Party Defendant Medical Center of the Rockies should not be held in contempt of court for making material misrepresentations to avoid being added to the instant litigation:

## I.     INTRODUCTION

Dismissed Third-Party Defendant Medical Center of the Rockies (MCR) made material misrepresentations and omissions to this Court about its ties to Nebraska when it moved for its dismissal in this case.[1] See **Exhibit 1** . MCR is the product of a joint-venture between parent

---

[1] MCR's Motion to Dismiss was filed on November 1, 2022, and granted on February 24, 2023.

companies in Nebraska and Colorado, with one MCR board member appointed by the Nebraska parent company and MCR paying the Nebraska parent company a percentage of its income.[2] See **Exhibit 2**. Moreover, in 2012, MCR became part of UCHealth, which is registered with the Nebraska Secretary of State as a business in Nebraska, and which owns, operates, and staffs clinics throughout Nebraska, including in Scottsbluff, where Defendant Scottsbluff resides. Secretary of State registration, **Exhibit 3**. Despite this, MCR, in its bid to dismiss itself from this case, represented repeatedly that it had no connections whatsoever to Nebraska. It did so through its counsel and through evidence that was presumably drafted by its counsel.

This misrepresentation was made in bad faith by MCR and its counsel, who has represented MCR, Poudre Valley Health Systems, and UCHealth in countless actions over his career. MCR and its counsel knew the claims regarding no contacts with Nebraska that they made to this Court were half-truths at best. Unfortunately, the full extent of MCR's deception was discovered only recently as a result of a subpoena issued by Plaintiff. Because MCR's deception was only recently discovered, Plaintiff as well as Defendant Scottsbluff, have suffered an unreasonable and vexatious multiplication of procedures in litigating this matter in both Colorado and Nebraska, and this Court's judicial resources have been needlessly exhausted, as have those in Colorado.

## II.    BACKGROUND

### A.    Procedural Background

In February of 2022, Plaintiff sued Defendants in Nebraska state District Court in Scottsbluff County, Nebraska. *See* Filing 38-1 at 1. The case was subsequently removed to this Court. See Filing 1 at 3. At the same time, Plaintiff sued MCR in Colorado state court, unaware of

---

[2] MCR's Nebraska parent company is Regional West Medical Center of Scottsbluff, Nebraska. MCR's Colorado parent company is Poudre Valley Hospital System of Loveland, Colorado.

the extent of MCR's ties to Nebraska to allow for jurisdiction in Scottsbluff County. *See* Filing 19 at 2-3, Filing 51 at 7.

On September 1, 2022, Defendant Scottsbluff Operations LLC d/b/a Monument Rehabilitation and Care Center ("Scottsbluff") filed a third-party complaint against MCR in this Court. *See generally* Filing 19. On November 1, 2022, MCR moved for dismissal of Scottsbluff's Third-Party Complaint, which Scottsbluff opposed. *See generally* Filings 36, 37, 38, 44, 45, 46, 50, 51, and 52. On February 24, 2023, this Court granted MCR's Motion. *See generally* Filing 54.

Since February 2023, the Parties have continued to litigate the claims and defenses in this case as well as in Colorado. Throughout discovery, the lawyers in this case have labored under the understanding that MCR would be, at best, an "empty chair" defendant that does not appear at trial, and that cannot be accountable either as a party-defendant or as a third-party defendant.

There is no question that this case would look different today if MCR were a party. Even if MCR were joined into the case based on the joint venture agreement discovered by Plaintiff, extensive evidence has been developed without MCR having a role in this case. At best, every deposition would have to be reopened; even that remedy would be inefficient and costly and would only generate evidence compromised by the parties' belief that MCR could not be haled into court in this case. MCR's destructive game-playing has rung a bell that cannot be unrung.

**B. Factual Background**

1. *MCR's Representations*

In its Motion to Dismiss, Third Party Defendant Medical Center of the Rockies (MCR) asserted the following, both in its Brief and via an Affidavit signed and sworn to by the COO of MCR, Ryan Rohman:

3

1.  "MCR does not have any contacts with Nebraska, let alone any contacts from which the subject cause of action arises";

2.  "MCR did not purposefully avail itself of the privilege of conducting business in Nebraska";

3.  "MCR is incorporated under the laws of the state of Colorado and maintains its principal place of business in the State of Colorado";

4.  "MCR has never been organized under the laws of the State of Nebraska, nor has MCR ever had its principal place of business in the State of Nebraska";

5.  "MCR is not registered under the laws of the State of Nebraska [sic] and does not have a registered agent for service of process in the State of Nebraska";

6.  "MCR does not hold a license to operate as a hospital in the State of Nebraska";

7.  "MCR does not maintain an office, warehouse, or other physical structure in the State of Nebraska";

8.  "MCR does not own, lease, or possess any real or personal property situated in the State of Nebraska";

9.  "MCR does not maintain any banking, savings, or investment accounts in the State of Nebraska and does not generate any revenue in Nebraska";

10. "MCR does not have an ownership interest in any medical facility, or any other business based in the State of Nebraska";

11. "MCR has no employees, officers, or directors in the State of Nebraska";

12. "MCR does not have pay any taxes to the State of Nebraska";

13. "MCR has no contacts with Nebraska"; and

14.   "The only connection between MCR and Nebraska in this case appears to be that Mr. Valdez resides in Nebraska and returned there following his treatment in Colorado."

*See* Filing 37 at 9, 10, 11, and 12.   In support of these assertions, MCR submitted a screenshot showing the Colorado Secretary of State's "Summary" for "Medical Center of the Rockies" and an affidavit from Ryan Rohman, who identified himself as the "Chief Operating Officer at Medical Center of the Rockies." *See* Filing 38, Exhibits 1 and 2.

2.   *The MCR Joint Venture*

Contrary to all these assertions, however, Plaintiff has recently learned that MCR was the product of a Joint Venture Agreement entered into in July 2003 between Nebraska's Regional West Medical Center of Scottsbluff, Nebraska (RWMC) and Poudre Valley Hospital System of Loveland, Colorado (PVHS). **Exhibit 2**. With investments from RWMC and PVHS, MCR was created as a "nonprofit, tax-exempt organization to construct, own and operate a state-of-the-art tertiary care hospital to be located in the I-25 Corridor of Northern Colorado." **Exhibit 2**, p. 6. The "specific purpose" of the Joint Venture Agreement was to "acquire, construct, own and operate a general acute care hospital and all related facilities and services to provide high quality, stat-of-the-art tertiary health care to serve the residents of northern Colorado, southern Wyoming and western Nebraska." **Exhibit 2**, p. 8.

Nebraska's RWMC, along with Colorado's PVHS, have "membership interest in the Company, including its share of the Company's profits and losses…the right to participate in the management and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision on, or action of, the members of the Company…" **Exhibit 2**, p. 9. RWMC's membership interest in the joint venture was 12%. Id. The Joint Venture was governed

by eleven board members with RWMC appointing one director. **Exhibit 2**, p. 10. Further, "Net distributable Cash Flow," a calculation of distributable income generated at MCR, is distributed to Nebraska's RWMC and Colorado's PVHS. **Exhibit 2**, pg. 12. RWMC remains active in Scottsbluff, Nebraska. See Nebraska Secretary of State Listing, attached hereto as **Exhibit 4**.

MCR concealed the existence of this Joint Venture Agreement in its representations to the Court, including in its Motion to Dismiss. It did not disclose the Joint Venture Agreement and then explain why MCR still lacks minimum contacts with Nebraska; it simply pretended the Joint Venture Agreement did not exist. We, along with counsel for the parties-Defendant and this Court, knew of no reason to not trust MCR's representations.

3. *UCHealth Medical Center of the Rockies*

Pursuant to the Joint Venture Agreement, MCR was a "tax-exempt affiliate" of PVHS and a part of its system. In 2012, PVHS, together with the University of Colorado Hospital Authority formed University of Colorado Health. See Articles of Incorporation of University of Colorado Health, attached hereto as **Exhibit 5**. In February 2012, University of Colorado Hospital and Poudre Valley System merged to create UCHealth. See "Putting on a Public Face: UCHealth's Corporate Branding Initiative," *Healthcare Innovation*, April 2018, attached hereto as **Exhibit 6**. In 2017, University of Colorado Health then trademarked "UCHealth," "UCHEALTH," and "UCHealth Medical Group," and PVHS filed the "Amended and Restated Articles of Organization of Poudre Valley Medical Group, LLC" wherein in identified the two members as PVHS and UCHealth. See **Exhibit 7**. When PVHS and University of Colorado Hospital combined in early 2012, MCR became UCHealth Medical Center of the Rockies, which is part of the "UCHealth Northern Colorado Region." See UCHealth Northern Colorado Region Fact Sheet FY 2023, attached hereto as **Exhibit 8**.

Likewise, Ryan Rohman, who provided MCR's Affidavit in this case and identified himself as the "Chief Operating Officer at Medical Center of the Rockies," was, according to UCHealth, the chief operations officer for "UCHealth Poudre Valley Hospital in Fort Collins and UCHealth Medical Center of the Rockies in Loveland." See "New chief operations officer takes reins at MCR, PVH," Jan. 23, 2018, attached hereto as **Exhibit 9**. He also identifies himself as an employee of UCHealth. See LinkedIn profile, attached hereto as **Exhibit 10**.

Despite these facts, MCR left out any reference to or explanation of UCHealth to this Court in its Motion to Dismiss.

4.  *UCHealth in Nebraska*

UCHealth is registered with the Nebraska Secretary of State. See **Exhibit 3**. It owns and operates four clinics in western Nebraska,  namely the UCHealth Heart and Vascular Clinic in Scottsbluff (located within Regional West Medical Center), the UCHealth Heart and Vascular Clinic in Alliance, the UCHealth Heart and Vascular Clinic in Bridgeport, and the UCHealth Heart and Vascular Clinic in Sidney. See UCHealth list of clinics, attached hereto as **Exhibit 11**. In its description of its clinic in Scottsbluff, UCHealth advertises its extensive ties to the area and acknowledges its ties to RWMC:

7

## The region's best heart and vascular care is in Scottsbluff.

For nearly 15 years, UCHealth Heart and Vascular Clinic has proudly cared for Scottsbluff, making some of the nation's most advanced medicine available to you. As the largest heart program in western Nebraska, Wyoming and northern Colorado, you can be confident that you get the most experienced and skilled heart care around.

Our team of over 50 cardiology, electrophysiology and cardiovascular surgery providers work together to provide quality, compassionate, and accessible care to help with your heart and vascular needs. Through innovative care, medication and lifestyle guidance, we aim to treat you as a person—not just a condition.

Because of the unique partnership between UCHealth and Regional West Medical Center, you have more options for consistent, quality and safe heart care. You see a doctor that's close to home, but if you have advanced heart problems, you will be cared for in our state-of-the-art facility, Medical Center of the Rockies in Loveland, Colorado, co-owned by Regional West. The beauty of this network is that you get exceptional care that starts at home.

See UCHealth's Scottsbluff Clinic Page, https://www.uchealth.org/locations/uchealth-heart-center-scottsbluff/, attached hereto as **Exhibit 12**. Likewise, UCHealth identifies Sidney Regional Medical Center in Sydney, Nebraska as an "affiliated hospital." See UCHealth Fact Sheet FY 2023, attached hereto as **Exhibit 8**.

According to RWMC, in 2018, it entered into a partnership with UCHealth, which it described as "a nine-hospital system based in Aurora Colo., with 21,000 employees, has partnered with Regional West since 2007 when Medical Center of the Rockies (MCR) in Loveland, Colo., opened." See "Regional West Strengthens Partnership with UCHealth and University of Colorado Cancer Center," Feb. 21, 2018, attached hereto as **Exhibit 13**.

In 2021, RWMC announced a further partnership with UCHealth: "The expanded partnership between Regional West and UCHealth will provide medical oncology physicians to practice full-time at Regional West and live in the Scottsbluff/Gering communities. Regional West and UCHealth currently have a similar model for the Cardiology clinic in Scottsbluff." See "Access to Expert Cancer Care Expands for Patients in Western Nebraska," Aug. 10, 2021, attached hereto as **Exhibit 14**. The RWMC president and CEO stated, "Expanding our relationship

with UCHealth for services in Scottsbluff and western Nebraska helps ensure that our patients receive advanced, high-quality care with excellent outcomes." Id.

In 2023, RWMC announced that its cardiology clinic was moving and that "[w]ith professional services provided by UCHealth Heart and Vascular Clinic, Regional West Medical Center's Cardiology Clinic offers many non-invasive cardiology services from one location." See "Regional West Medical Center's Cardiology Clinic Moves to New Suite," Sep. 15, 2023, attached hereto as **Exhibit 15**. Also in 2023, UCHealth was a sponsor for a Regional West Foundation fundraiser. See "2023 Regional West Foundation Roaring 20s Fundraiser Dec. 1," Nov. 21, 2023, attached hereto as **Exhibit 16**. Finally, in August 2024, RWMC announced another partnership with UCHealth, this time regarding electronic medical records systems. See "Regional West Partners with UCHealth to Upgrade to a New Electronic Health Record System," Aug. 22, 2024, attached hereto as **Exhibit 17**.

MCR and its counsel failed to even mention UCHealth in its pleadings and representations to this Court, including in its Motion to Dismiss, let alone UCHealth's extensive ties to Nebraska and its growing relationship with Regional West Medical Center.

### III.        LAW

This Court has authority under F.R.C.P. 11 [see below], 28 U.S.C. § 1927, and pursuant to its inherent powers to sanction Dismissed Defendant MCR for its misconduct, namely submitting a false, misleading, and incomplete Affidavit in its Brief to support its Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) (filed Nov. 1, 2022). The Court should impose sanctions on the Dismissed Defendant to deter future litigation abuse and facilitate this lawsuit's progression towards a fair trial.

**28 U.S.C. § 1927**

Because this matter is in federal court, sanctions are also permitted against Defendant's counsel, Mr. Dickinson, pursuant to 28 U.S.C. § 1927:

> Any attorney…who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under § 1927 may be imposed "irrespective of winners and losers, or between plaintiffs and defendants." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 749 (8th Cir. 2018), quoting *Roadway Express v. Piper*, 447 U.S. 752, 762 (1980). Rather, it is concerned only with limiting the abuse of court processes. See *id.* Sanctions are proper under § 1927 "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Lee v. First Lenders Ins. Services, Inc.*, 236 F.3d 443, 445 (8th Cir. 2001). However, the moving party must show a "causal connection between the objectionable conduct of counsel and multiplication of the proceedings." See *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Even unreasonable and vexatious conduct by an attorney is not sanctionable unless it results in proceedings that would not have been conducted otherwise. See *id.*

Multiple circuits agree that the phrase "unreasonably and vexatiously" demands an objective analysis, and that § 1927 does not require a malicious intent or bad purpose by the filing attorney. See *Amlong & Amlong P.A. v. Denny's Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2007), citing in support *Cruz v. Savage*, 896 F.2d 626 (1st Cir. 1990), *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223 (7th Cir. 1984), *Braley v. Campbell*, 832 F.2d 1504 (10th Cir. 1987), and others. Reckless conduct alone can even support a finding of unreasonable and vexatious conduct, because reckless conduct is that which "grossly deviates" from reasonable conduct. See *id.,* citing *Manax v. McNamara*, 842 F.2d 808, 814 (5th Cir. 1988).

10

## **Inherent Contempt Power**

Independent of and in addition to 28 U.S.C. § 1927, this court, like all courts, has the inherent power "to punish for contempts." See *Chambers v. NASCO*, 501 U.S. 32, 44 (1991). A court may award attorney's fees to the moving party when the responsible party has "acted in baith faith, vexatiously, wantonly, or for oppressive reasons." See *id.* at 45-46. Attorney's fees may be assessed against the responsible party if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." See *id*. It is clear that the inherent power of a court to impose sanctions can be invoked even if procedural rules exist which sanction the same conduct (such as Rule 11 and 28 U.S.C. § 1927). See *Schlafly v. Eagle Forum*, 970. F.3d 924, 936 (8th Cir. 2020). Sanctions can be imposed if the court determines, in its informed discretion, that the Rules "are not up to the task." See *id*.

Further, courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Link v. Wabash R.R.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 632, 8 L.Ed.2d 734 (1962); *United States v. Moss-American, Inc.,* 78 F.R.D. 214, 216 (E.D.Wis.1978); *Quantum Commn'cs Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1277 (S.D. Fla. 2007) (entering default judgment where clear and convincing evidence supported finding that a defendant lied under oath at his deposition, defendants mislead plaintiff by not disclosing key documents relevant to the pivotal issue in the case, defendants stalled litigation, including an Eleventh Circuit appeal, abused the bankruptcy process, and compounded the litigation through outrageous positions); by *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 826 F.2d 915 (9th Cir. 1987) (striking answer and

entering default judgment against defendant as sanction for perjury during depositions and false pleadings filed with court).

"Fraud on the court is not your 'garden-variety fraud.'" *Fox v. Elk Run Coal Co.*, 739 F.3d 131, 135 (4th Cir. 2014) (citation omitted). "Ordinarily, when a party believes that its opponent has obtained a court ruling by 'fraud' or 'misrepresentation,' it may move for relief under Federal Rule of Civil Procedure 60(b)(3)" within "one year following the final judgment." *Id.* (citation omitted). This one-year limit has been described as a means of "balanc[ing] the competing interests of relieving an aggrieved party from the hardships of an unjustly procured decision against the deep '[r]espect for the finality of judgments ... engrained in our legal system.' " *Id.* (citation omitted). "[A]fter a year, the public's powerful interest in leaving final judgments undisturbed generally triumphs and 'ordinary' fraud will not suffice to set aside a ruling." *Id.* (citation omitted).

Federal Rule 60(d)(3) operates as a "savings clause" that "permits a court to exercise its inherent equitable powers to obviate a final judgment after one year for 'fraud on the court.'" *Id.* at 135-36. As the Fourth Circuit has explained, "fraud on the court" " 'should be construed very narrowly' lest it entirely swallow up Rule 60(b)(3)." *Id.* at 136 (citation omitted). "[N]ot only must fraud on the court involve an intentional plot to deceive the judiciary, but it must also touch on the public interest in a way that fraud between individuals generally does not." *Id.* at 136. The doctrine has application to situations such as "improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Id.* (citation omitted).

## Rule 11 Sanctions

Rule 11(b) states: "By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party

certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> …
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on belief or a lack of information."

Rule 11(c)(1) authorizes courts to impose sanctions following a violation of Rule 11(b), "on any attorney, law firm, or party that violated the rule or is responsible for the violation." Possible sanctions include nonmonetary directives, an order to pay a penalty into the court, or upon motion and "warranted for effective deterrence," an order directing payment of part or all of the moving party's reasonable attorney's fees and other expenses "directly resulting from the violation." Rule 11(c)(4).

The central purpose of Rule 11 is to "deter baseless filings in district court" and thus "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990). Before filing any paper with the court, attorneys must certify that they have conducted a reasonable inquiry into the facts and law stated and argued in the filing, and that the filing is "not interposed for any improper purpose." See *id.* Finally, while the interpretation of Rule 11 must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, "any interpretation must give effect to the Rule's central goal of deterrence." See *id*.

There is no doubt that, following the 1983 amendments to Rule 11, the signatures of a party, such as Defendant, on "other papers" such as declarations and affidavits, must satisfy the certification requirement of Rule 11(b) before the paper is filed with the court. See *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 544-45 (1991). Stated

13

differently, all signers, not just attorneys, "are on notice that their signature constitutes a certification as to the contents of the document." See *id.* at 545-46, quoting Wright & Miller § 1331, at 21. Further, the "reasonable inquiry" requirement of Rule 11(b) is one of reasonableness under the circumstances, rather than focused on the attorney's or party's subjective bad faith or specific intent regarding their certification. See *id.* at 551.

## IV.    ARGUMENT

Defendant MCR clearly misrepresented its contacts with the state of Nebraska, for purposes of personal jurisdiction, and in so doing "unreasonably and vexatiously" multiplied the proceedings relating to Plaintiff's claims of negligence. Because Plaintiff was led to believe, by Defendant's misrepresentations, that Defendant did not have sufficient contacts with Nebraska, he filed and pursued a state lawsuit in Colorado, contemporaneous with this federal lawsuit, and both lawsuits have been proceeding in parallel for over two years. Had Defendant disclosed the existence of extensive contacts with Nebraska, including the Joint Venture Agreement with a Nebraska hospital system, Plaintiff would have moved to consolidate these claims, which Defendant Scottsbluff already supported, in Nebraska, so he could proceed against Defendant Scottsbluff and MCR in one court and one proceeding, rather than file a separate lawsuit in Colorado against only Defendant MCR.

### **Material Misrepresentations by MCR and Mr. Dickinson**

MCR's Motion to Dismiss, including the incorporated Affidavit, contains multiple misleading statements, half-truths, and material misrepresentations, as demonstrated below:

**Statement No. 1: "MCR does not have any contacts with Nebraska, let alone any contacts from which the subject cause of actions arises from."**

14

This is a deliberately misleading statement by MCR and its counsel. MCR has been a member of the UCHealth system since the 2012 merger between the University of Colorado and Poudre Valley Health System, and MCR was a member of PVHS before the creation of UCHealth. At the time of Plaintiff's care at MCR in early 2020, MCR was jointly managed/operated, via the Joint Venture Agreement, by UCHealth and RWMC, following the absorption of PVHS into UCHealth. MCR was being managed/operated, in part, by a Nebraska corporation, RWMC. Further, as explained above, UCHealth has extensive contacts with Nebraska through its business partnerships with RWMC and the operation of four separate cardiology and vascular clinics in the state, in partnership with Nebraska hospital systems.

**Statement No. 2: "MCR did not purposefully avail itself of the privilege of conducting business in Nebraska."**

This is another misleading statement. MCR and its counsel cannot dispute that *UCHealth*, of which MCR is a critical part, has purposefully availed itself of the privilege of conducting business in Nebraska, given the operation of four separate clinics in the state and its growing relationship with RWMC. UCHealth does conduct business in Nebraska and is registered with the Nebraska Secretary of State. Defendant's nuanced attempt to narrow the jurisdiction issue to MCR alone misled the Court into believing that MCR was a standalone hospital, when in fact it is part of a burgeoning healthcare system that treats patients throughout Colorado, Wyoming, and Nebraska.

**Statement No. 3: "I serve as Chief Operating Officer at Medical Center of the Rockies." Affidavit of Ryan Rohman, p. 1.**

15

Defendant's trade name is not "Medical Center of the Rockies," but "UCHealth Medical Center of the Rockies." By purposefully distancing Defendant from the UCHealth system, of which Defendant's hospital is an integral part, Mr. Rohman disingenuously narrowed the jurisdiction issue, rather than explaining how Defendant's hospital fits within the larger UCHealth system. MCR has been part of UCHealth since 2012, and Plaintiff was under the hospital's care in early 2020. Further, Mr. Rohman publicly characterizes himself as a *UCHealth* employee, not an employee of MCR. See **Exhibit 7**.

**Statement No. 4: "MCR is a non-profit corporation, incorporated under the laws of the State of Colorado. It maintains its principal place of business in the State of Colorado." Affidavit of Ryan Rohman, p. 2.**

Mr. Rohman and Defendant's counsel Mr. Dickinson were fully aware that UCHealth has places of business in states other than Colorado, namely Nebraska and Wyoming, but Mr. Rohman again narrowed his statements to Medical Center of the Rockies alone, which is a material misrepresentation. MCR is only one cog in the entire UCHealth system which is comprised of "hospitals, clinic locations and health care providers … throughout Colorado, southern Wyoming and western Nebraska." MCR's representation was intentionally misleading to Plaintiff and the Court. Mr. Rohman knew MCR to be a part of UCHealth, which does business in Nebraska, but never acknowledged this fact in his sworn Affidavit. In fact, there is not one mention of "UCHealth" in the entirety of the Affidavit, even though Defendant's proper name in the case caption is clearly "Medical Center of the Rockies d/b/a UCHealth Medical Center of the Rockies."

**Statement No. 5: "MCR has never been organized under the laws of the State of Nebraska nor had its principal place of business in the State of Nebraska." Affidavit of Ryan Rohman, p. 2.**

16

This statement is another misleading half-truth. The UCHealth system is registered in the State of Nebraska, and does business in Nebraska, itself and also through affiliations with Nebraska hospitals in four separate locations in the western portion of the state. The partnership between UCHealth and Regional West Health System continues to grow year after year. There is a clear business relationship between UCHealth and Regional West, even independent of the Joint Venture Agreement, through which UCHealth and Regional West jointly operated/managed MCR until the fall of 2023. Yet, Mr. Rohan failed to mention this relationship in his Affidavit, and Defendant's counsel Mr. Dickinson failed to do so in the Motion to Dismiss, instead repeatedly representing that "MCR has no contacts with Nebraska."

**Statement No. 6: "MCR is not registered under Nebraska's laws and does not have a registered agent for service of process in the State of Nebraska." Affidavit of Ryan Rohman, p. 2.**

However, UCHealth *is* registered with the Nebraska Secretary of State, with an SOS Account Number of 2205125146, and a contact address of "University of Colorado Health, 12401 East 17th Ave, Mail Stop F417, Aurora, CO 80045." This fact was never acknowledged by Mr. Rohman or Mr. Dickinson.

**Statement No. 7: "MCR does not hold a license to operates as a hospital in the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

While true, and while UCHealth does not operate a hospital specifically in Wyoming or Nebraska, MCR was jointly managed/operated by UCHealth and a Nebraska corporation, RWMC, until the fall of 2023, and at the time Plaintiff was treated in early 2020. Further, UCHealth owns and operates four cardiology and vascular clinics in western Nebraska, in partnership with

17

Nebraska hospital systems, including RWMC. Neither Mr. Rohman nor Mr. Dickinson disclosed these facts in the Affidavit or Motion to Dismiss.

**Statement No. 8: "MCR does not operate any hospitals in the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

While true, and while UCHealth does not operate a hospital specifically in Wyoming or Nebraska, MCR was jointly managed/operated by UCHealth and a Nebraska corporation, RWMC, until the fall of 2023, and at the time Plaintiff was treated in early 2020. Further, UCHealth owns and operates four cardiology and vascular clinics in western Nebraska, in partnership with Nebraska hospital systems, including RWMC. Neither Mr. Rohman nor Mr. Dickinson disclosed these facts in the Affidavit or Motion to Dismiss.

**Statement No. 9: "MCR does not maintain an office, warehouse, or other physical structure in the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

While true as written, MCR and its counsel misled the Court into believing that MCR is a standalone hospital, when in fact UCHealth maintains offices in four separate locations in western Nebraska, for the operation of UCHealth heart and vascular clinics. UCHealth also has clinics in southern Wyoming, and proudly advertises that it treats patients in Colorado, Wyoming, and Nebraska.

**Statement No. 10: "MCR does not own, lease, or possess any real or personal property situated in the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

While true as written, MCR and its counsel misled the Court into believing that MCR is a standalone hospital, when in fact UCHealth does own, lease, or possess real property in the state of Nebraska, for the operation of UCHealth heart and vascular clinics. Neither Mr. Rohman nor

Mr. Dickinson disclosed these facts in the Affidavit or Motion to Dismiss, or even the existence of UCHealth facilities outside the State of Colorado, of which there are multiple.

**Statement No. 11: "MCR does not maintain a banking, savings, or investment accounts [sic] in the State of Nebraska and does not generate any revenue in Nebraska." Affidavit of Mr. Rohman, p. 2.**

MCR and its counsel cannot credibly dispute that *UCHealth* generates revenue in Nebraska, through the operation of its heart and vascular clinics. Although UCHealth does not publicly advertise its revenue from its Nebraska operations, given the existence of four specialized clinics in the state, it is likely significant. Furthermore, through the Joint Venture Agreement, there was a revenue-sharing model between UCHealth and RWMC, for patients referred to MCR by Regional West for tertiary care at MCR's "state of the art" hospital. It is also very likely that UCHealth maintains banking, savings, and/or investment accounts in Nebraska, for the operation of its specialized clinics or for its growing partnership with Regional West.

**Statement No. 12: "MCR does not have an ownership interest in any medical facility, or any other business based in the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

As explained above, a Joint Venture Agreement existed between Poudre Valley Health Systems (which became part of UCHealth in 2012) and Regional West from July 2002 through the fall of 2023. The primary purpose of the Agreement was to construct and operate the hospital that is now known as Medical Center of the Rockies (originally known as the Interstate Medical Center), to serve patients in northern Colorado, southern Wyoming, and western Nebraska. Regional West had a 12% ownership stake in the MCR corporation, and Regional West frequently transferred patients to MCR for tertiary care, as it did with Plaintiff in January 2020. There was a

clear business relationship between MCR and Regional West for close to two decades at the time of Plaintiff's treatment in early 2020, a fact which was not disclosed by Mr. Rohman or Mr. Dickinson, and only discovered recently by Plaintiff through a subpoena issued to Regional West.

**Statement No. 13: "MCR has no employees, officers, or directors in the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

However, UCHealth does employ physicians and other providers to staff its four heart and vascular clinics in western Nebraska, including through its partnership with Regional West. Accordingly, Mr. Rohman's deliberate, or at the very least careless, failure to even mention UCHealth in his Affidavit caused litigation proceedings regarding Mr. Valdez's claim of negligence to unreasonably and vexatiously multiply, and his misconduct must be sanctioned by this Court.

**Statement No. 15: "MCR does not pay any taxes to the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

Because UCHealth does business in Nebraska and purposefully avails itself of the privilege to do business there, it does pay taxes to the State. Defendant's attempt to isolate MCR from UCHealth belies the strong relationship between the two, because MCR is not simply an "affiliated" hospital associated with the UCHealth system, but one of only two major hospitals in UCHealth's Northern Colorado Region, and its newest, along with UCHealth Poudre Valley Hospital in Fort Collins. Both MCR and Poudre Valley Hospital were members of PVHS until 2012, as a result of the creation of UCHealth by the University of Colorado and the University of Colorado Hospital Authority. Upon information and belief, PVHS no longer exists as a corporate

entity, but UCHealth is growing healthcare system of which MCR is an integral part, as it was in early 2020.

**Statement No. 16: "MCR does not consent to jurisdiction in the courts of the State of Nebraska." Affidavit of Mr. Rohman, p. 2.**

Plaintiff does not intend to re-litigate the subject matter jurisdiction issue, but must stress that MCR, through its position in the UCHealth system, has consented to jurisdiction in Nebraska state courts, given extensive contacts between UCHealth and Nebraska and the Joint Venture Agreement between UCHealth and RWMC, in effect until the fall of 2023. MCR is one of the largest and most technologically advanced hospitals in the UCHealth system. The material misrepresentations made by Mr. Rohman, a long-time executive in the UCHealth Northern Colorado Region, and Mr. Dickinson, long-time counsel for MCR in multiple matters, caused Plaintiff to file contemporaneous lawsuits in two states in early 2022, when in fact this was entirely unnecessary from the start.

### Misconduct of MCR and Mr. Dickinson Cannot Go Unaddressed

Mr. Rohman's Affidavit failed to include any mention of the Joint Venture Agreement, which entailed an extensive business relationship between UCHealth and Regional West, Colorado and Nebraska corporations, respectively, failed to state that MCR is a major hospital within the UCHealth system, and failed to state that UCHealth operates for distinct clinics in the state of Nebraska. Mr. Rohman did not make a single mention of UCHealth in his Affidavit, despite his role as Chief Operating Officer of *UCHealth* Medical Center of the Rockies, and a self-proclaimed employee of UCHealth. The Affidavit was not signed by a lower corporate representative of MCR, but by one of the chief executives of the hospital (and who has served as president of other

UCHealth hospitals in the preceding years). Indeed, Mr. Rohman publicly promotes himself as a UCHealth employee, a fact which he withheld from the Court. See **Exhibit 10**.

Upon a reasonable inquiry into the facts, as required by Rule 11(b), Mr. Rohman would have discovered the existence of the Joint Venture Agreement, if he was not already aware of the Agreement by virtue of his long career as a UCHealth executive in northern Colorado. Mr. Rohman violated Rule 11 by making representations that he knew or should have known, through a reasonable inquiry, were false, misleading, and/or incomplete, yet signed the Affidavit under penalty of perjury nonetheless.

For his part, Mr. Dickinson is a highly experienced, senior trial attorney who has represented UCHealth in medical malpractice litigation for many years, including UCHealth (the overall corporate entity), UCHealth MCR, and UCHealth Poudre Valley Hospital. He too was likely aware of the existence of the Joint Venture Agreement at the time his signed and filed his client's Motion to Dismiss with this Court, but did not disclose this knowledge to Plaintiff or this Court, nor did he ask Mr. Rohman to revise the Affidavit accordingly.  If the Court was then made aware of the Agreement, it may have been persuaded to dismiss Defendant's Motion to Dismiss, or at least would have given the Agreement weight in its Order.

Mr. Dickinson's omission of MCR's connection to UCHealth in his representations to this Court was deceitful and misleading. Were he to have acknowledged that MCR is part of UCHealth, as he knows or reasonably should have known, then he would have had to have admitted that UCHealth does substantial business, indeed business which it seeks through advertisement and investment, in Nebraska. The revelation of this connection would have substantially changed the arguments and considerations as to UCHealth MCR's Motion to Dismiss, as well as to the parties' consideration as to whether this case should be consolidated in its most judicious forum.

Mr. Dickinson's failure to conduct a reasonable inquiry before filing the Motion to Dismiss, so that the Affidavit signed by Mr. Rohman was true and accurate, violates Rule 11(b). He should be sanctioned accordingly to remedy the impact on this litigation, the deception of this Court and the prejudice suffered by Plaintiff, who had every reason to believe that the Affidavit was true to its word, and that MCR "had no contacts in Nebraska," as it contended multiple times in its Motion.

Mr. Dickinson should also be sanctioned for "unreasonably and vexatiously" multiplying the proceedings relating to Plaintiff's claims. Based on the existence of the Joint Venture Agreement, as well as MCR's connections to UCHealth regarding its care for patients in Nebraska, there is and never has been a ground for litigation in Colorado, alongside litigation in Nebraska. Although Plaintiff may not be able to assert personal jurisdiction over MCR in Nebraska at this time, the fact is that MCR, part of the UCHealth system, did in February 2020 and does now maintain sufficient contacts with Nebraska for personal jurisdiction purposes, and by these contacts, consents to jurisdiction in Nebraska state courts.

Although Mr. Dickinson may argue that this was an innocent mistake or oversight, or that he had no knowledge of the Agreement until the filing of this Motion, a reasonable inquiry of the facts would have revealed its existence, especially considering that the Agreement was in effect for twenty years (July 2003 through the fall of 2023). Further, § 1927 does not require a malicious intent or bad purpose by the filing attorney, although it is hard to imagine any other intent or purpose: MCR did not want to litigate in Nebraska, and was willing to present a deceptive case to avoid this Court. See *Amlong& Amlong P.A. v. Denny's Inc.,* supra.

Further, if this Court believes that 28 U.S.C. § 1927 are "not up to the task" to sanction the misconduct of MCR and Mr. Dickinson, it should nonetheless impose sanctions pursuant to its inherent powers and award attorney's fees to Plaintiff, for the bad faith and vexatious conduct of

both. See *Chambers v. NASCO*, 501 U.S. 32 at 45-46. MCR repeatedly asserted in its Motion to Dismiss that it had "no contacts" in Nebraska, but it failed to disclose the existence of a Joint Venture Agreement between UCHealth and a Nebraska corporation, RWMC, which jointly managed/operated MCR for twenty years. MCR's narrowing of the subject matter jurisdiction issue to MCR alone, rather than acknowledging the hospital's place in the UCHealth system, which does substantial business in Nebraska, was also improper and prejudicial to Plaintiff and to Defendant Scottsbluff.

Taken together, had the Court been made aware of these facts, Plaintiff believes this Court would have dismissed MCR's Motion to Dismiss, or its Order at the very least would have had an more extensive analysis of the jurisdiction issue. There is no reason for Plaintiff to have litigated this case in two states for over two years under a false pretense that the minimum contacts necessary to consolidate these cases did not exist. The "unreasonable and vexatious" multiplication of proceedings by MCR's counsel must be sanctioned, along with the respective Rule 11 violation by the same and MCR's COO, Ryan Rohman.

## V. CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court:

(1) Rule that Defendant Medical Center of the Rockies violated F.R.C.P. 11(b) in its Motion to Dismiss, including the Affidavit of Ryan Rohman;

(2) Rule that Defendant's counsel, Mr. Dickinson, violated Rule 11(b) in the Motion to Dismiss he signed and filed on behalf of his client;

(3) Rule that Defendant's counsel violated 28 U.S.C. § 1927 by "unreasonably and vexatiously" multiplying the proceedings related to Plaintiff's claim of negligence against Defendant MCR;

(4) Find MCR made material misrepresentations to defend its conduct as it relates to Plaintiff;

(5) Award reasonable attorney's fees to Plaintiff for the violations of Rule 11(b) by MCR and Mr. Dickinson;

(6) Award reasonable attorney's fees to Plaintiff for Mr. Dickinson's violation of 28 U.S.C. § 1927;

(7) Award reasonable attorney's fees to Plaintiff for the bad faith and vexatious misconduct of MCR and Mr. Dickinson, pursuant to its inherent powers;

(8) Award default judgment on paragraphs 15-16 of Scottsbluff Operations' Third-Party Complaint vs. MCR; and

(9) Award any other relief to Plaintiff as it deems just and proper.

Respectfully submitted this 18th day of September, 2024.

CHALOUPKA LAW, LLC

By:    */s/ Maren L. Chaloupka*
   Maren Lynn Chaloupka, #20864
CHALOUPKA LAW, LLC
P.O. Box 1724
Scottsbluff, NE 69363-1724
(308) 270-5091 - Phone
(308) 270-5105 – Fax

THOMAS, KEEL & LAIRD

By:    Jennifer L. Marshall
Matthew R. Laird
Michael T. Weinhoffer
950 South Cherry Street, Suite 312
Denver, CO 80246
(303) 372-6130 – Phone
(303) 845-9821 – Fax
*Attorneys for Plaintiff*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of September 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alan T. Fogleman
Spencer A. Low
Martha E. Ravenhill
McAnany, Van Cleave, & Phillips, P.A
10 E. Cambridge Circle Drive, Ste 300
Kansas City, KS  66103
afogleman@mvplaw.com
slow@mvplaw.com
mravenhill@mvplaw.com

Gilbert A. Dickinson
Jackson Kelly PLLC
1099 18th St., Ste. 2150
Denver, CO 80202
gilbert.dickinson@jacksonkelly.com

  /s/ *Maren Lynn Chaloupka*

26