IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ISRAEL VALDEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTTSBLUFF OPERATIONS LLC, a Nebraska limited liability corporation; and UNITED STATES OF AMERICA,<br><br>    Defendants. | **8:22CV289**<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

  Before the Court is Plaintiff's Amended Motion for Order to Show Cause. Filing No. 215. This motion requests the Court for a variety of relief against a dismissed party, Medical Center of the Rockies ("MCR"), as well as counsel for MCR. At its core, the pending motion is a motion for contempt based on MCR's alleged material misrepresentations to the Court and motion for sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and the court's inherent powers. Plaintiff requests relief in the form of attorney's fees and a finding of default judgment to certain portions of Defendant Scottsbluff Operations LLC's ("Scottsbluff") Third Party Complaint in relation to the same alleged misrepresentations.

  The Honorable Brian C. Buescher, United States District Judge referred this motion to the undersigned to conduct an evidentiary or other proceedings and the entry of a recommended disposition, including proposed findings of fact, on the motion at hand. Filing No. 214. As such, the undersigned set forth a briefing schedule and performed an evidentiary hearing on December 6, 2024. Filing No. 232. At the conclusion of the hearing, the undersigned ordered a transcript and deemed the matter submitted upon receipt of the transcript. A transcript has been received and this matter is now ripe for disposition.

1

## BACKGROUND

On February 11, 2022, Plaintiff filed a complaint in the District Court of Scottsbluff County, Nebraska against Scottsbluff, Abdel Kader Laquel Kader, M.D., William Packard, M.D., and Community Action Partnership of Western Nebraska ("Community"). Filing No. 1. This matter was removed to federal court on August 11, 2022. On September 1, 2022, Scottsbluff filed a third-party complaint against MCR alleging a claim for contribution and naming "Medical Center of the Rockies d/b/a UCHealth Medical Center of the Rockies" as a third-party defendant. Filing No. 19.

On November 1, 2022, MCR filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), alleging the above-captioned court did not have personal jurisdiction over MCR. Filing No. 36. On November 15, 2022, Plaintiff filed a short response to this motion stating he "[did] not take a position on the question of whether this Court has jurisdiction over [MCR] in this matter" and, further indicated that he had filed a separate action against MCR in Colorado. Filing No. 41. Scottsbluff opposed MCR's motion. Filing No. 45. On February 24, 2023, this Court granted MCR's motion to dismiss, finding this Court did not have personal jurisdiction over MCR and, further, denied any request for discovery on the jurisdictional matter. Filing No. 54.

The evidence before the Court at the time of the ruling on the motion to dismiss is relevant to the finding at hand. As such, the undersigned will address the relevant portions herein.

When opposing MCR's motion to dismiss, the crux of Scottsbluff's argument was that MCR was subject to personal jurisdiction in Nebraska because of a joint venture agreement in which MCR was involved. Filing No. 45. Scottsbluff argued that joint venture agreement, or at least MCR's relationship with parties involved in such joint venture agreement, resulted in MCR regularly soliciting business in

Nebraska. *Id.* More specifically, Scottsbluff submitted evidence indicating that MCR was opened as a result of a joint venture between the Poudre Valley Health Systems ("PVHS") and Regional West Medical Center ("RWMC") and, further, was specifically designed to offer medical services "complimentary to those that are offered at [RWMC]." Filing No. 45-1, Exhibit A. It also submitted evidence indicating MCR's CEO represented that RWMC and its patients would directly benefit from MCR's existence and, further, that, because of the joint venture, RWMC regularly transferred its patients to MCR. *Id.* In its briefing, Scottsbluff requested personal jurisdiction discovery if the Court needed additional information to assess MCR's contacts with Nebraska. Filing No. 45 at 9. The Court denied such request. Filing No. 54.

In response to this argument, MCR stood firm in its position that Nebraska did not have personal jurisdiction over it. In doing so, MCR advised it was a non-profit corporation, not a joint venture or partnership. Filing No. 51 at 2. In its opposition, MCR advised that RWMC may be a member of MCR and set forth an argument as to why that, in and of itself, was not enough for Nebraska to have personal jurisdiction over it. *Id.* at 3.

On February 24, 2023, this Court granted MCR's motion to dismiss and denied Scottsbluff's request for discovery regarding the personal jurisdiction issue. Filing No. 54. When doing so, the Court noted MCR's relationship with RWMC and its intent to attract Nebraska patients as well as when it is appropriate to find personal jurisdiction exists over a party. The Court then found that "[e]ven if MCR has extensive contacts with [RWMC] – as Scottsbluff contends – the existence of this third-party relationship is not by itself enough to establish specific jurisdiction over MCR in Nebraska in this particular case." Filing No. 54 at 12.

Relevant to the motion at hand are representations and statements made by MCR and its counsel in its briefing on the motion to dismiss and in the evidence submitted in support of its motion to dismiss, more specifically statements in

MCR's briefing that (1) "MCR does not have any contacts with Nebraska, let alone any contacts from which the subject cause of action arises from", Filing No. 37 at 9); (2) ". . . MCR did not purposefully avail itself of the privilege of conducting business in Nebraska . . .", Filing No. 37 at 9; as well as representations made in the Affidavit of Ryan Rohman. Filing No. 38-2. During the evidentiary hearing, Plaintiff also indicated the motion was based upon statements in which MCR downplays an alleged joint venture agreement in which MCR is involved, calling it, among other things, a "so-called 'joint venture' relationship between MCR and Regional West."[1] Filing No. 51 at 2.

## CERTIFIED FINDINGS OF FACT

The credible evidence before the Court includes the joint venture agreement at issue ("the Agreement"), which was received as evidence in support of the present motion. Filing No. 233.[2] This is an agreement between Regional West Health Services[3] ("RWHS") and Poudre Valley Health System ("PVHS"). Filing No. 213-2. The purpose of the joint venture between PVHS and RWHS, which is memorialized in the Agreement, was to create:

> a nonprofit, tax-exempt organization (the "Company") to construct, own and operate a state-of-the-art tertiary care hospital to be located in the I-25 Corridor of Northern Colorado (the "Hospital"), which once, operationalized, is expected to support and further their common and unifying charitable health care missions and to better serve their respective communities while maintaining each of their unique histories, cultures, missions, values, and traditions.

---

[1] This also includes the following statements: "[i]t is not a joint venture and it is not a partnership", Filing No. 51 at 2; "so-called 'joint venture' to MCR", Filing No. 51 at 4; "'joint venture' ", Filing No. 51 at 4; and "alleged 'joint venture'", Filing No. 51 at 6.

[2] For clarity, any exhibit that was received into evidence that is also filed on the Court docket will be referenced at the ECF filing number.

[3] RWMS is an affiliate of RWHS. Filing No. 213-2 at 5.

Filing No. 213-2 at 5. The agreement between PVHS and RWMC further indicates the purpose of the company, in part, is to "serve the residents of northern Colorado, southern Wyoming and western Nebraska." *Id.* at 7. The Company created was MCR. *See* Filing No. 213-2; Filing No. 233, Exhibit 101 and Exhibit 102.

The Agreement indicates that "[s]ubject to the members' exercise of their Reserved Powers, [MCR's] Board of Directors shall oversee and manage the tasks necessary to operationalize [MCR]." Filing No. 213-2 at 12. The Agreement further indicates the parties to the Agreement are "independent contractors" and "[n]othing contained in this Agreement shall be deemed to create a partnership or agency relationship between the Parties." Filing No. 213-2 at 28.

Jessie Willard, chief nursing officer at MCR, testified at the hearing. The undersigned finds the following testimony relevant and credible. Filing No. 239 at 10. Mr. Willard has worked with MCR since it opened. *Id.* Prior to working at MCR, Mr. Willard worked at PVHS. *Id.* at 17. Mr. Willard's roles at MCR are as follows: manager of one of the ICUs (2007 to 2013); clinical director over all critical care units at MCR (2013 to 2017); and chief nursing officer at MCR (2017 to present). *Id.* at 11-16.

Mr. Willard is familiar with the corporate structure of MCR and its operations given his current role. Filing No. 239 at 11. According to Mr. Willard's testimony, MCR is, and has always been, a nonprofit corporation incorporated in Colorado with its principal place of business in Loveland, Colorado. Filing No. 239 at 14-15. MCR is a part of UCHealth System and is one of the hospitals in the UCHealth System. Though being a part of this system entitles it to certain benefits like lower supply costs, MCR has its own board of directors. Filing No. 239 at 14. In addition, MCR does not operate any hospitals in Nebraska, does not have a license to operate any hospitals in Nebraska, does not operate any clinics in Nebraska, and does not have any operations in Nebraska. *Id.* Mr. Willard testified he agrees with the factual representations made in Ryan Rohman's affidavit, which was offered in

support of MCR's motion to dismiss for lack of personal jurisdiction. *Id.*; Filing No. 38-2. Mr. Willard has not had any interactions with Nebraska regulators or surveyors regarding MCR's work. Filing No. 239 at 13. Mr. Willard admitted that he was not familiar with the Agreement and had not seen it until it was presented as an exhibit in this case. Filing No. 239 at 19.

Plaintiff submitted, and the undersigned received, evidence including articles and/or fact sheets which contain information regarding MCR. These articles contain statements that UCHealth has "partnered with Regional West since 2007, when [MCR], in Loveland, Colorado, opened", Filing No 213-13, that MCR is included in UCHealth's "Northern Colorado Region", Filing No. 213-8, and that Ryan Rohman was the new chief operations officer for UCHealth Poudre Valley Hospital and MCR in 2018. Filing No. 213-10; Filing No. 239 at 26. These articles also indicate: MCR is to offer medical services "complimentary" to RWMC, who provides services to the western Nebraska communities (among others), Filing No. 45-1, and UCHealth has "partnered" with RWMC since MCR opened. Filing No. 45-2. None of these articles make representations that appear inconsistent with the Agreement. In addition, no evidence directly contradicted the statements made in the Affidavit of Ryan Rohman. Filing No. 38-2.

Plaintiff also attested to filing a civil lawsuit based on the same series of events in Larimer County District Court, Colorado. *See generally*, Filing No. 233, Exhibit 3. This lawsuit included claims against MCR and Jennifer Levy Woelk, M.D. *Id.*

## ANALYSIS

Plaintiff's motion could be construed as either a motion for contempt or motion for sanctions. Given the lack of clarity, the undersigned addresses both standards. [4]

### I. Motion for Contempt

The court's contempt power "is a most potent weapon, and therefore it must be carefully and precisely employed." *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998) (quoting *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir. 1994)). Therefore, "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce [a party] into compliance with the court's order, and to compensate the complainant for losses sustained." *United Mine Workers*, 330 U.S. 258, 303-04 (1947); *see also Bernard v. Am. Cyanimid Co. (In re Tetracycline Cases)*, 927 F.2d 411, 413 (8th Cir. 1991) (stating the same two purposes for civil contempt). If a compensatory sanction is appropriate, the purpose would be to "restor[e] [the injured] party to the position it would have had the court's order been obeyed." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989).

A party bringing a contempt action must prove, "by clear and convincing evidence, that the alleged contemnors violated a court order." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). If the party seeking contempt meets the clear and convincing evidentiary standard, the burden shifts

---

[4] MCR sets forth an argument that Plaintiff does not have standing to bring a sanctions motion against it and, further, that this Court does not have jurisdiction to determine this matter due to the dismissal of MCR and the impending dismissal of the remaining claims. First, it is well established that a federal court can consider collateral issues, such as sanctions, after an action is no longer pending. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). As such, this Court does have jurisdiction. Moreover, given the Court's rulings herein, the undersigned assumes, without deciding, that Plaintiff has standing to bring these collateral matters to the Court.

to the alleged contemnor to assert any defenses, including inability to comply." *Chi. Truck Drivers,* 207 F.3d at 505. When exercising its contempt power, a court may exercise discretion in determining the proper remedy for a contempt violation. *Hartman v. Lyng,* 884 F.2d 1103, 1107 (8th Cir. 1989). This discretion includes determining what "relief . . . is necessary to effect compliance with its decree." *Id.*

Plaintiff does not contend MCR violated a court order.[5] Thus, this avenue for sanctions is foreclosed. Moreover, there is not sufficient evidence to show Plaintiff sustained losses. While Plaintiff contends he suffered monetary losses because he had to litigate two parallel actions, one in Nebraska and one in Colorado, MCR's co-defendant in the Colorado litigation, Jennifer Levy Woelk, M.D., appears to be a resident of Colorado and there is no evidence before the Court that this defendant would have been subject to personal jurisdiction in Nebraska. Furthermore, there is not sufficient evidence to illustrate that, but for the alleged misrepresentations at issue, all proceedings would have proceeded in Nebraska, especially when considering the Court's denial of the jurisdictional discovery request. Filing No. 233, Exhibit 3 at 15.

For the reasons set forth herein, the undersigned would recommend any motion for contempt be denied.

## II. Motion for Sanctions

Plaintiff also appears to request sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and the court's inherent powers. The undersigned will address each request in turn.

---

[5] To the extent Plaintiff is arguing a motion for contempt is appropriate because MCR allegedly violated a court "process" by making misrepresentations in briefing and affidavits, the undersigned does not believe Plaintiff has sufficiently proven by clear and convincing evidence such violation occurred for the reasoning set forth in the motion for sanctions section.

### A. Rule 11

Rule 11 of the Federal Rules of Civil Procedure requires all parties who file pleadings, motions and other papers in federal court to ensure "that to the best of the person's knowledge . . . formed after an inquiry reasonable under the circumstances," that the claims and arguments presented "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law," that the "allegations and other factual contentions have evidentiary support," and that the filing was not made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. Proc. 11(b).

Fed. R. Civ. P. 11(c)(2) requires that a Rule 11 motion for sanctions "must not be filed or presented to the court if the challenged paper, claim, defense, contention or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." The credible evidence before the Court indicates Plaintiff did not provide MCR the opportunity to withdraw or correct the contentions at issue prior to filing the pending motion. While the timing in this case makes the use of the "safe harbor" provision of Rule 11 unusual, the Court cannot assume MCR complied with such. Rather, the safe-harbor provision is a strict procedural requirement and "assumptions do not excuse compliance with the text of Rule 11." *Caranchini v. Nationstar Mortgage*, LLC, 97 F.4th 1099, 1102 (8th Cir. 2024) (citing *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory*, Ltd., 682 F.3d 170, 175 (2d Cir. 2012)). As such, any motion for sanctions pursuant to Rule 11 will be denied.

### B. 28 U.S.C. § 1927

The Court next considers Plaintiff's request for sanctions pursuant to 28 U.S.C. § 1927. That statute provides:

9

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Thus, the language of § 1927 limits sanctions to MCR's counsel and, according to the Eighth Circuit, sanctions are permitted "when an attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Clark v. United Parcel Serv. Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (internal quotation marks omitted (quoting *Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003)).

First, as previously discussed, Plaintiff's primary argument for prejudice or damages relates to the multiplication of proceedings based on two parallel lawsuits – one in Colorado and the present litigation. However, MCR was not the only defendant in the Colorado action. Plaintiff also filed suit against Jennifer Levy Woelk, M.D., who was dismissed from the lawsuit over a year after its inception. Filing No. 233, Exhibit 3 at 15. There has been no indication, either way, as to whether Nebraska would have personal jurisdiction of Dr. Woelk, and thus, whether the Colorado lawsuit would have had to occur regardless of whether Nebraska had personal jurisdiction over MCR and/or despite MCR's alleged misrepresentations in its briefing.

This is further supported by the fact that, at the time of the motion to dismiss, the Court was aware of a joint venture agreement and, not only made its ruling granting MCR's motion to dismiss for lack of personal jurisdiction while aware of such facts but, further, issued a ruling indicating no further discovery on the personal jurisdiction issue was needed. Though the Court did not have the Agreement before it at the time of ruling, the Court did have the arguments and

critical facts set forth in the Agreement before it when it ruled on the motion to dismiss and the motion for discovery regarding personal jurisdiction.[6]

Therefore, it cannot be said that MCR's counsel is solely responsible for a multiplication of proceedings. Nonetheless, the Colorado litigation is ongoing against MCR and the parties have apparently expended a large amount of time litigating the action. *See generally*, Filing No. 233, Exhibit 3. Thus, the undersigned will analyze the statements attributed to MCR's counsel to determine whether they meet the standard required to impose sanctions pursuant to § 1927.

The statements attributed to MCR's counsel are statements in MCR's briefing that (1) "MCR does not have any contacts with Nebraska, let alone any contacts from which the subject cause of actions arises from", Filing No. 37 at 9; (2) ". . . MCR did not purposefully avail itself of the privilege of conducting business in Nebraska . . .", Filing No. 37 at 9; and (3) statements which characterize MCR's joint venture as an "alleged joint venture". Filing No. 51 at 2-6.

The first two statements relate to MCR's argument that this court lacked specific personal jurisdiction over MCR and are found in what can be characterized as MCR's "conclusion" paragraph for this section. The paragraph, in whole, reads as follows:

> Put simply, MCR's treatment of Mr. Valdez was confined to Colorado. MCR does not have any contacts with Nebraska, let alone any contacts from which the subject cause of action arises from. Because the treatment and care was provided by MCR in Loveland, Colorado, not in Nebraska, and because MCR did not purposefully avail itself of the privilege of conducting business in Nebraska, this litigation does

---

[6] It is clear, through the undersigned's review of the briefing and the Court's order on the motion to dismiss that, at the time of the ruling on the motion to dismiss, the Court was aware of a potential joint venture agreement concerning MCR, this joint venture agreement resulted in MCR obtaining business from Nebraska due to this joint venture agreement, and that RWMC (which had a location in Nebraska and treated Plaintiff) and its patients would benefit from MCR's existence.

not "arise out of" any alleged contacts with Nebraska, and this Court lacks specific personal jurisdiction over MCR.

Filing No. 37 at 9.

Despite Plaintiff's suggestion, when considered in context, the Court does not find these statements justify § 1927 sanctions. Rather, MCR's counsel is attempting to advance his client's legal theory in a conclusory and self-serving manner – one that is consistent with most brief conclusions.

Finally, as to MCR's characterization for the joint venture as an "alleged joint venture", it is important to note MCR was not a party to the Agreement – RWHS and PVHS were the parties to the Agreement.  Moreover, in the same brief counsel for MCR acknowledges some relationship stating, "[w]hile Regional West may be a member of MCR, . . ." Filing No. 51 at 3. It is also worthwhile to note that none of the articles submitted to the Court appear to be articles MCR published but, instead, were published by RWMC or UCHealth. Thus, the statements made by counsel do not directly conflict with statements of his client. In hindsight, MCR's counsel could likely have been more precise in his language, but the Court does not find the evidence demonstrates an intentional or reckless disregard for the attorney's duties to the court.

Though the undersigned understands the reason Plaintiff filed this motion, given the credible evidence at hand, the undersigned does not find MCR's statements constitute the type of intentional or reckless disregard that warrant sanctions pursuant to § 1927.

**C. Inherent Powers**

"A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pacific Railroad Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). The Eighth Circuit has advised that

"inherent authority is a broad and powerful tool. As such, it should be used sparingly." *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 899-900 (8th Cir. 2009) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."). In general, "courts first should turn to specific rules tailored for the situation at hand . . . to justify sanctions. Then, as an alternative basis for support or in circumstances where specific rules are insufficient, . . . it may be appropriate to invoke their inherent authority." *Id.* at 900.

For the reasons addressed in the Court's analysis regarding the propriety of 28 U.S.C. 1927 sanctions, the Court also finds it inappropriate to award sanctions based upon its inherent powers against MCR's counsel. Moreover, based upon the credible evidence presented to the Court, none of the statements presented in Mr. Rohman's affidavit are misrepresentations. Though Plaintiff may believe the affidavit at issue should have included *additional* facts, that does not require an award of sanctions pursuant to this Court's inherent powers.[7]

For the reasons stated herein,

IT IS HEREBY RECOMMENDED to the Honorable Brian C. Buescher, United States District Judge, that Plaintiff's motion for contempt, which is set forth in Plaintiff's Amended Motion to Show Cause, Filing No. 215, be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this Court may be held to be a waiver of any right to appeal the Court's adoption of the recommendation.

---

[7] Plaintiff pointed the undersigned to two cases it found comparable to the present situation during the evidentiary hearing. Upon review, the undersigned has reviewed such cases and found them to be distinguishable from the situation at hand. *See J.C. Penney Corp., Inc. v. Oxford Mall, Inc.*, 2021 WL 3421394 (N.D.Ala. Aug, 5, 2021) (warranting sanctions due to "egregious bad faith.") and *Jones v. Arcadia Nursing and Rehabilitation Ctr., LLC*, 2017 WL 1193735 (W.D.La Mar. 29, 2017) (not determining propriety of sanctions but determining personal jurisdiction).

13

IT IS FURTHER ORDERED

The Plaintiff's motion for sanctions, which is set forth in her Amended Motion to Show Cause, Filing No. 215, is denied.

Dated this 21st day of January, 2025.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge